NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**GAVIN W. BRUCE, OSB # 113384**
Assistant United States Attorney
Gavin.Bruce@usdoj.gov
**KELLY A. ZUSMAN, OSB #891843**
Assistant United States Attorney
Kelly.Zusman@usdoj.gov
405 E 8th Avenue, Suite 2400
Eugene, OR 97401
Telephone: (541) 465-6771
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **6:22-cr-00317-MC** |
| **v.** | **GOVERNMENT'S RESPONSE TO MOTION TO DISMISS** |
| **ANNE HANKINS,** | |
| **Defendant.** | |

**Introduction**

Defendant Anne Hankins pleaded guilty to a scheme to defraud that resulted in a $1.5 million payment from her victim to Hankins. She then used the proceeds of this fraud to pay off restitution stemming from her previous fraud conviction.

/ / /

Although the government's press release included inartful language regarding the fraud, dismissing the information due to a post-plea press release is improper and unprecedented. Hankins' motion to dismiss should be denied.

**Factual Background**

***a. Anne Hankins' Fraud***

The factual basis in the plea agreement, the content of which Hankins agreed was true and undisputed, accurately reflects the background of this case.

Hankins, acting as president of Willamette Country Music Concerts, LLC (WCMC), deliberately altered bank statements and falsified financial records that she sent to Endeavor, a company that owned the controlling interest in WCMC. Hankins concealed massive liabilities from Endeavor and painted a rosy picture of the financial operation of the company. Her deception was not fleeting: she started in September 2016 and continued through March 2018, when she pocketed $1.5 million from the sale of her share of the company.

Defense went to great lengths, both in its pleading and in its pre-plea negotiations, to stress that Hankins put a substantial portion of the money she received from the victim in this case back into WCMC after March 2018. She did. But that infusion of money was used to cover up the significant financial inaccuracies Hankins fed to the company. Because when Endeavor purchased the company, it believed it was purchasing a company with $1.1 million in its bank accounts. But in reality, as Hankins has admitted in her plea, that bank account contained just $16,000. Hankins was attempting to cover up her fraud, while remaining employed by Endeavor as WCMC's president.

/ / /

After receiving the $1.5 million, she used over a quarter-million dollars to pay off a particular personal debt: her restitution obligation from her previous fraud case. That previous fraud case stemmed from a false loan application Hankins submitted to obtain a loan for her former company. The loan included a $350,000 line of credit that was completely drawn within a week of being issued. Shortly thereafter, the Internal Revenue Service filed a lien against the company for delinquent taxes, and Hankins' company ultimately filed for bankruptcy with over two million dollars in liabilities. The victim in that case suffered a loss of $350,000 on the fraudulently obtained loan.

Hankins pleaded guilty to bank fraud in 2001. Defense was aware that, while the government agreed that the previous fraud did not enhance the guidelines, nor was it the government's intention to "dwell significantly on a 2002 conviction," the conviction was "relevant to the defendant's history and characteristics for purposes of sentencing under 18 U.S.C. § 3553 and 18 U.S.C. § 3661." *Marchant Decl.*, Ex 10 (ECF No. 15).

***b. Pre-Plea Negotiations***

The government agrees that there were significant pre-indictment negotiations over 18 months. After over a year of negotiations, the defense sent the government its proposed resolution. *See Marchant Decl.,* Ex. 4.

It's evident from the government's response that it did not agree with the proposal outlined in the agreement, which would have resulted in a no-loss fraud guideline calculation. *See Marchant Decl., Ex. 5.* The government offered two options: an agreed-to $1.5 million loss

or a fully-contested loss hearing.[1] When defense sought clarification from the government as to how it was viewing her payments back into the WCMC bank account, the government stated that it "disagree[d] that these amounts Ms. Hankins paid back reduce the $1.5 million. They were deposited into an account that was short $1.1 million because of her fraud." *See* Ex. A.

Hankins took the agreed-to loss plea deal. That plea allows her to seek a departure or variance from the agreed-to loss amount to account for her position – and specifically states that the government reserves the right to oppose the request. The fact that the government intends to oppose that request should not surprise the defense. Nor should it be a surprise that the government does not agree with the facts as outlined by counsel in her May 2022 letter. The government stated that those facts did not constitute a defense and were instead appropriate arguments for Hankins to raise at sentencing. As the government stated in its response to Hankins' counsel on October 4, 2022:

> "I continually stated during our plea negotiations that we did not agree on some of the underlying facts and law you outlined in your letter or in our conversations on the phone. The disagreements were not, however, material to her guilty plea and her uncontested admission to the charged fraud. We understood that your efforts to resolve the case were made to mitigate her exposure. The plea allows you to make the case to the court for a probationary sentence, but nothing in the plea or our discussions has ever indicated that the government agrees with your position."

*Marchant Decl.,* Ex. 10.

---

[1] As part of a fully-contested loss hearing, defense could proffer its no-loss fraud position to the court. The government, however, was free to argue that the loss attributable to Hankins' conduct included not only the $1.5 million from the proceeds of the sale, but also the underreporting of promissory notes Hankins took out on behalf of WCMC, which were edited out of the bank statements. By September 2018, the underreported notes totaled approximately $6.5 million. Defense has maintained that Hankins was authorized to borrow the funds and therefore those notes should not constitute a loss in this case. Because, pursuant to the terms of the plea agreement, the parties agreed to the $1.5 million loss amount, the government will not argue that the promissory notes should be considered by the court in its loss determination.

*c. Press Release*

The government issued a press release following Hankins' change of plea hearing. In it, the government set out the factual basis of the plea, which was pulled nearly verbatim from the plea agreement. In addition, it provided two quotes:

> "With today's guilty plea, Ms. Hankins has proven herself to be a serial fraudster," said Craig Gabriel, Criminal Chief for the U.S. Attorney's Office. "Falsifying bank statements and laundering money to fraudulently inflate the value of a company are serious federal crimes."
>
> "Ms. Hankins blatantly deceived her business associate and stole money that never belonged to her. However, today the curtains have come down and Ms. Hankins is facing the music for her fraud," said Special Agent in Charge Bret Kressin, IRS Criminal Investigation (IRS:CI), Seattle Field Office.

In response, defense counsel first requested a retraction; next, requested the government agree that Hankins could withdraw her guilty plea; and finally requested the government agree to a probationary sentence. The government, while agreeing that the quoted language used in the press release was unfortunate, refused these requests.

**Argument**

Dismissing the information because of a press release would be unprecedented and improper for several reasons.

Dismissal is the "most drastic" remedy, and one that any trial court must approach with "caution and with a view toward balancing the interests involved." *United States v. Bundy,* 968 F.3d 1019, 1031 (9th Cir. 2020). Dismissal to preserve "judicial integrity" does not, however, give district courts "the authority to supervise out-of-court executive procedures in the absence of a constitutional or statutory violation." *United States v. Struckman,* 611 F.3d 560, 576 (9th

Cir. 2010).[2] To successfully invoke the dismissal remedy under this Court's supervisory powers, Hankins must show both "substantial prejudice" and "flagrant misconduct." *Id.* at 1037. She has done neither.

First, she fails to identify or prove substantial prejudice. Hankins alludes to witnesses who were prepared to testify favorably on her behalf at sentencing and are now no longer willing to do so because of the government's press release. She fails to name any of these witnesses or the favorable information they would have shared. Thus, her theory of prejudice at sentencing is vague and speculative at best. To the extent she also relies on harm she claims to suffer because her victim has cited the press coverage in a civil proceeding, she fails to cite any authority supporting the notion that harm in a separate civil proceeding constitutes the kind of substantial prejudice contemplated under the rigorous standard the Ninth Circuit has imposed for the dismissal-sanction remedy Hankins seeks. Nor has she produced any evidence that her victim's references to the press coverage had any bearing on any court ruling.

Next, Hankins fails to identify any flagrant misconduct. The press release's reference to Hankins as a "serial fraudster," although harsh, is accurate. She now stands convicted in two separate federal fraud cases. The first was many years ago, but it is nevertheless relevant to this case because she used proceeds from this fraud to pay the victims of her previous fraud. The fact

---

[2] The defense's reliance on *United States v. Lopez,* 4 F.3d 1455 (9th Cir. 1993) for the sweeping proposition that courts may use their supervisory power to "police ethical misconduct by prosecutors," must be tempered by *Struckman's* recognition that judicial supervision generally does not extend beyond the courthouse. In *Lopez,* the court found that a prosecutor had violated California ethics rules when he misrepresented facts to a magistrate judge to secure a meeting with a represented defendant outside the presence of his lawyer. *Lopez,* 4 F.3d at 1461-62. That case did not address judicial ethical policing of prosecutorial conduct outside the courtroom, i.e., a challenge to the form of a press release.

that the prior conviction is too old to count towards her criminal history score does not render it irrelevant. The statutes governing sentencing, including 18 U.S.C. § 3661, provide that no limitation shall be placed on information the court may consider at sentencing. And 18 U.S.C. § 3553(a) directs the court to consider a defendant's history. Someone with a spotless prior record stands in different shoes than someone with an older, similar, prior offense. The court may properly consider the prior conviction's failure to deter a defendant when fashioning a sentence, particularly when the current offense is factually linked to the prior case as it was here.

Hankins' reliance on Ninth Circuit cases affirming trial court dismissals under the court's inherent authority is misplaced. Both *Bundy* and *Chapman* involved mid-trial *Brady* violations coupled with "flagrant misrepresentations to the court," *United States v. Chapman,* 524 F.3d 1073, 1085 (9th Cir. 2008), and "repeated material misrepresentations" to the trial court, *United States v. Bundy,* 968 F.3d 1019, 1042-43 (9th Cir. 2020). Neither involved extra-judicial press releases that use strong, but accurate language to describe Hankins' conduct.

Hankins also erroneously relies on regulations that explicitly apply to pre-adjudication public statements. The rules are designed to protect the presumption of innocence and avoid tainting the fact-finder before a defendant is adjudged guilty. The regulations Hankins cites, 28 CFR 50.2, say they apply "until any proceeding resulting from such investigation has been terminated by trial or otherwise." 28 CFR 50.2(b)(1). Because the press release followed her guilty plea, these regulations are inapplicable. And the U.S. Attorney Manual provisions and ethics rules she cites provide broad proscriptions against prejudicial commentary about a defendant's "character" USAM 1-7.401, MRPC 3.8(f), but the press release included no

references to Hankins' character, instead describing Hankins' criminal activity.[3] And Hankins fails to identify any case to support exercise of inherent judicial authority to sanction the government based on violations of internal DOJ rules.

In sum, although the agent's puns were cringe-worthy, there is nothing about the government's press release that constitutes misconduct, flagrant or otherwise. And defendant has not and cannot show substantial prejudice to her criminal case; the court will select her sentence, and nothing in her brief argues or suggests that the court cannot sentence her fairly.

**Conclusion**

The court should deny defendant's motion to dismiss and move forward to sentencing on February 2, 2023.

Dated: November 18, 2022

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

*/s/ Kelly A. Zusman*
KELLY A. ZUSMAN
GAVIN W. BRUCE
Assistant United States Attorneys

[3] Hankins cites *United States v. Smith,* 985 F. Supp. 2d 506, 541 (SDNY 2013) and suggests it supports her arguments that the press release violates DOJ guidance. It does not. *Smith* involved a pending case prior to adjudication, and it involved DOJ commentary far more incendiary than here. *Id.* at 540 (prosecutors described the pending case as one involving "dirty" and "corrupt" politicians, and an "unappetizing smorgasbord of graft and greed."). Moreover, the court suggested that the remarks might run afoul of DOJ guidelines, but it never actually made a finding because it was unnecessary since, even if the comments violated policy, the court found that they were irrelevant to the pending request for a protective order. *Id.*

**From:** Bruce, Gavin (USAOR)
**To:** Janet Hoffman
**Cc:** Katherine Marchant; Boyer, Joseph (USAOR)[Contractor]
**Subject:** Re: [EXTERNAL] RE: Hankins: Plea Outline
**Date:** Tuesday, May 17, 2022 9:36:58 AM

---

Janet -

I disagree that these amounts Ms. Hankins paid back reduce the $1.5 million. They were deposited into an account that was short $1.1 million because of her fraud.

If your legal argument carries the day, then in scenario 2, the court will find this to be a no-loss situation and the guidelines will be as you'd like them (0-6 months). But I cannot agree to that. I would agree to the $1.5 million loss and you can request the reductions outline below, and I would agree to a variance.

**Gavin W. Bruce**
Assistant United States Attorney
United States Attorney's Office
District of Oregon

On May 17, 2022, at 8:55 AM, Janet Hoffman <Janet@jhoffman.com> wrote:

Gavin
I need a clarification. What is your position factually as to the amount Anne paid back. We believe her payments reduce the loss amount to well below the 1.5 million. I'm not sure how you are analyzing or taking into account the payments we outlined in our letter.
Thanks
Janet

---

**From:** Bruce, Gavin (USAOR) <Gavin.Bruce@usdoj.gov>
**Sent:** 17 May 2022 08:42
**To:** Katherine Marchant <katie@jhoffman.com>; Janet Hoffman <Janet@jhoffman.com>
**Cc:** Boyer, Joseph (USAOR)[Contractor] <Joseph.Boyer@usdoj.gov>
**Subject:** Hankins: Plea Outline

External Sender: This email came from outside of the firm. Exercise caution with any attachments or links.

Hi Janet and Katie,
Thanks for sending me your letter and loss calculation. Here are my thoughts. I see two options moving forward that would be acceptable to the government.

1. The parties agree to the guidelines outlined in your letter and on the $1.5 million loss amount. I will agree to a three-level variance under 3553, which would put the guidelines at 27-33 months. I will recommend the low end of the guideline range. In the plea, the government will permit defense to request a downward departure under 2B1.1 cmt n.20(C) or under 3553. You can then request whatever sentence you deem appropriate; or

1. The parties agree on the base (7), sophisticated means (+2) and ML conviction (+1), and we leave loss to be determined by the court at sentencing. We can both provide evidence and argument to the court on loss, and the government will recommend a guideline sentence based on the loss the court determines. You'd be free to argue for a departure or variance, and any sentence you deem appropriate.

These are also subject to supervisory approval, per usual. Please let me know how you'd like to move forward.
Thanks,
Gavin

**Gavin W. Bruce**
ASSISTANT UNITED STATES ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
DISTRICT OF OREGON
405 E. 8th Avenue | Suite 2400 | Eugene, Oregon 97401
**(541) 465-6839 | gavin.bruce@usdoj.gov**