IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**UNITED STATES OF AMERICA**,

        Plaintiff,

        v.

**ANNE HANKINS**,

        Defendant.

        Case No. 6:22-cr-317-MC

        **OPINION AND ORDER**

**MCSHANE, Judge:**

On September 28, 2022, the Court accepted Defendant's guilty plea to Wire Fraud and Money Laundering. ECF No. 11. In that petition, Defendant admitted the following facts as true:

> I was president of Willamette Country Music Concerts, LLC ("WCMC"), located in Eugene, Oregon. Hankins' sole-member limited liability company, WCMC, Inc., owned 49% of WCMC. William Morris Endeavor Entertainment, LLC and/or its related entities (hereinafter referred to as "Endeavor"), owned a 51% controlling interest in WCMC.
>
> As president of WCMC, I was responsible for preparing monthly financial statements, which I provided to Endeavor by email.
>
> Starting on or around September 2016, and continuing until on or around March 1, 2018, I began providing altered bank statements and false financial summaries. These altered bank statements and false financial summaries concealed the true financial condition of WCMC. I admit that I intended to defraud Endeavor as to the accurate financial condition of WCMC.

1 – OPINION AND ORDER

> On or around November 2017, Endeavor approached me about purchasing WCMC Inc.'s 49% interest in WCMC and having me continue to serve as WCMC's president.
>
> On or about February 7, 2019, I sent an email to Endeavor that contained a financial summary of WCMC as of January 30, 2018. The summary falsely reported that WCMC had approximately $1.1 million in cash in its operating account, when, in reality, there was approximately $16,000 in the account. I admit that the statement was capable of influencing Endeavor's decision to purchase my interest in WCMC.
>
> On March 1, 2018, Endeavor purchased my remaining 49% interest in WCMC. As part of that transaction, Endeavor paid me $1,500,000. The false financial statement provided on February 7, 2018, was a material factor in Endeavor's decision to purchase my remaining interest in WCMC.
>
> Following receipt of the $1,500,000 payment from Endeavor, on March 26, 2018, I knowingly engaged in a monetary transaction with the proceeds of the fraud, causing SELCO Community Credit Union to issue a $251,444.70 cashier's check from my account in Oregon to the Clerk of Court for the U.S. District Court for the District of Oregon, to satisfy restitution in Case No. 6:01-CR-600100.

ECF No. 11, 7-8.

That same day, the United States Attorney's Office issued a press release. The portion relevant to Defendant's pending motion consisted of:

> The former president and minority owner of Willamette Country Music Concerts, LLC, who planned, managed, and promoted the annual Willamette Country Music Festival in Linn County, Oregon, pleaded guilty today after she falsified bank statements and financial summaries to influence the sale of her stake in the company.
>
> Ann Hankins, 53, a resident of Springfield, Oregon, pleaded guilty to one count each of wire fraud and money laundering.
>
> "With today's guilty plea, Ms. Hankins has proven herself to be a serial fraudster," said Craig Gabriel, Criminal Chief for the U.S. Attorney's Office. "Falsifying bank statements and laundering money to fraudulently inflate the value of a company are serious federal crimes."
>
> "Ms. Hankins blatantly deceived her business associate and stole money that never belonged to her. However, today the curtains have come down and Ms.

Hankins is facing the music for her fraud," said Special Agent in Charge Bret Kressin, IRS Criminal Investigation (IRS:CI), Seattle Field Office.

Defendant argues the statements flagrantly misrepresent the scope of her conduct and prejudice her ability to present mitigating evidence at sentencing. Defendant argues the proper remedy for this alleged abuse of the criminal justice proceedings is dismissal of the charges, with prejudice. The Court disagrees.

Dismissal of an indictment is proper under one of two theories: "First, a district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. Second, if the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008) (cleaned up) (quoting *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). The Court (1) does not view the Government's conduct here as "outrageous," (2) does not agree that Defendant's due process rights have been violated, and (3) firmly disagrees with Defendant's view that dismissal with prejudice is an appropriate remedy under the circumstances present here.

Defendant stands convicted of two federal fraud cases. Although the convictions are separated by two decades, the passage of time does not render the first conviction meaningless. Although the Government agrees that the use of "serial fraudster" is "unfortunate," it is not inaccurate. The Court agrees.

While the Court agrees with Defendant that in some egregious cases, dismissal of charges is the proper remedy for unconscionable conduct by the Government that severely prejudices a Defendant, the Court is aware of no case imposing such a drastic sanction in response to a press release following entry of a guilty plea. Defendant cites to cases involving egregious

3 – OPINION AND ORDER

Government conduct, typically involving *Brady* violations. But no cited case remotely approaches the facts here. Dismissal of these charges, with prejudice, does not approach a reasonable response considering the nature of the Government's actions here.[1] Instead, in the Court's view, dismissal would result in a windfall for Defendant while depriving the Government from arguing at sentencing that the 3553(a) sentencing factors justify a sentence of imprisonment.

The Court does not agree with Defendant's contention that the press release violated her due process rights. The parties have different versions of Defendant's motivations and conduct. These disagreements are laid out in the emails discussing or negotiating the plea agreement. Ultimately, the parties agreed that those disputes should be resolved by the Court following the presentation of evidence and argument at sentencing. Nothing prevents Defendant from presenting any evidence she feels is relevant to sentencing. Although Defendant requests a hearing on this motion, all of the evidence she seeks to present at such a hearing may be presented at sentencing. Defendant may call witnesses to inquire if the press release impacted their decision to testify on Defendant's behalf.[2] The Government will be allowed ample opportunity to rebut that testimony via cross examination. Defendant will be permitted to exercise her due process rights to have a fair hearing and present mitigating evidence.

---

[1] The Court has a different view (than Defendant) of the ethical regulations cited by Defendant. The Court generally views those regulations as applying to a Prosecutor's actions that could taint a jury. Here, the Government's press release came after the Court entered Defendant's guilty plea.

[2] Defendant argues the press release "appears to have influenced potential witnesses . . . . Some potential witnesses, who were willing to speak on Ms. Hankins' behalf prior to the press release, are no longer willing to cooperate. At least one will no longer speak with the defense, and others have indicated that they may have changed their minds." Motion, 21; ECF No. 14.

In the alternative, Defendant argues that "an alternative remedy, should the Court agree, would be to preclude the Government from introducing inculpatory evidence in support of a sentence of incarceration. Ms. Hankins should be permitted to provide a statement of the witness testimony that she would have otherwise been able to obtain." Reply, 6; ECF No. 18. The Court does not agree. Pursuant to the plea agreement, the Government will be permitted to argue the sentencing factors here point to a term of imprisonment. Defendant will not be permitted to introduce "a statement of the witness testimony that she would have otherwise been able to obtain." Instead, as detailed above, Defendant will be permitted to call any witness it chooses to call and elicit testimony about the press release's role in changing that witness's willingness to testify on Plaintiff's behalf.[3] As noted, the Government will be permitted to cross any witness Defendant calls and, additionally, call its own witnesses to elicit testimony relevant to the Government's arguments under 3553(a). The Court agrees that Defendant is entitled to a fair sentencing. A one-sided sentencing, where the Government is barred from arguing its own interpretation of the facts along with the 3553(a) factors, is not a fair hearing.

/ / / /

/ / / /

/ / / /

---

[3] Defendant's attorney submitted a declaration stating she "intends to present expert testimony regarding the capacity of the government's statements to influence the public perception of Ms. Hankins, which would include potential witnesses. And how the language of the press release creates bias in the minds of those exposed to it. This evidence is relevant to the question of whether Ms. Hankins suffered prejudice as a result of the Government's misconduct." Marchant Decl. ¶ 5; ECF No. 19. The Court fails to see the relevance of such testimony. Again, the Defendant is free to call a potential witness to inquire as to the effect of the press release on the witness. An expert's opinion on the press release's ability to create bias is unnecessary when the Court will hear from a specific witness as to how the press release actually influenced the witness. Again, the Court will also have the benefit of cross examination to inquire whether factors other than the press release influenced the witness's motivation to testify on Defendant's behalf.

5 – OPINION AND ORDER

## **CONCLUSION**

Defendant's Motion to Dismiss, ECF No. 14, is DENIED.

IT IS SO ORDERED.

DATED this 14th day of December, 2022.

/s/ Michael McShane
**Michael J. McShane
United States District Judge**
