JANET LEE HOFFMAN, OSB No. 781145
E-mail: janet@jhoffman.com
KATHERINE MARCHANT, OSB NO. 161147
E-mail: katie@jhoffman.com
Janet Hoffman & Associates LLC
1000 SW Broadway, Ste. 1500
Portland, OR 97205
Telephone: (503) 222-1125

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ANNE HANKINS,<br><br>    Defendant. | Case No. 6:22-cr-00317-MC<br><br>**DEFENDANT ANNE HANKINS'S MOTION TO RECONSIDER DENIAL OF EVIDENTIARY HEARING ON MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT**<br><br>**Oral Argument Requested** |

  Defendant Anne Hankins respectfully moves this Court to reconsider its denial of an evidentiary hearing on Ms. Hankins's Motion to Dismiss. There is no genuine dispute that the Government engaged in professional misconduct. Nor is there a genuine dispute regarding the Court's authority to fashion a remedy. And there is no allegation that Ms. Hankins' claims are frivolous. There is, however, a factual dispute as to whether the Government's conduct rose to the level of flagrant misconduct and whether Ms. Hankins was prejudiced by it. Ms. Hankins' prior pleadings, and attached declaration of counsel, describe the lay and expert testimony that Ms. Hankins will introduce at an evidentiary hearing to establish the facts necessary to the Court's disposition of this issue. Pursuant to Ninth Circuit case law, this showing is sufficient to

warrant an evidentiary hearing. *See United States v. Oaks*, 508 F.2d 1403, 1404 (9th Cir. 1974) (holding that a district court is required to hold an evidentiary hearing on a defendant's claim of prosecutorial misconduct "when enough facts are alleged to take the question past the frivolous stage").

I.  **Statement of Facts**

Ms. Hankins filed a Motion to Dismiss for Prosecutorial Misconduct on November 4, 2022. In it, she requested that the Court exercise its supervisory powers to dismiss the Superseding Information with prejudice. In Reply, she proposed an alternative remedy: that the Court preclude the Government from offering evidence in support of a sentence of incarceration. Ms. Hankins recognizes that courts are not bound by a defendant's requested remedy and retain the authority to tailor one appropriate to the circumstances. *See United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020) (explaining the "various options" district courts have when "considering an exercise of its supervisory powers"). In both filings, Ms. Hankins described the facts that she intended to develop at an evidentiary hearing in order to satisfy the requisite elements — *i.e.,* that the government engaged in "flagrant conduct" and that Ms. Hankins was prejudiced as a result.

The Government's Response demonstrates that there is an ongoing factual dispute with respect to both elements. With respect to flagrancy, Ms. Hankins argued that the circumstances of the press release's publication, including its headline-grabbing quotes from senior-level government officials and the ample time that an experienced prosecution team, well-versed in its legal and ethical duties, had to review it, evidenced a reckless disregard for their duties. Ms. Hankins' filings further explained that additional evidence, such as testimony from the prosecution team, would be helpful in establishing whether the Government's misconduct

amounted to negligence or reckless, or even intentional, disregard of its obligations. This would include, for example, testimony from government agents regarding their motive for drafting the unusually salacious statement.

The Government's Response did not address, much less foreclose, Ms. Hankins' factual allegations. Instead, the Government baldly claimed that its conduct was not flagrant because its description of Ms. Hankins as a "serial fraudster" while "harsh" was accurate. The Government never put forth facts demonstrating a factual connection between the more then 20-year old conviction and the current one. Instead, the Government simply claimed that her prior conviction was "relevant" because it formed the basis of the money laundering charge. But relevancy does not demonstrate a serialized pattern of behavior. More to the point, the Government's "no harm, no foul" argument is not dispositive. The relevant legal and ethical rules preclude the Government from publicly disparaging a defendant or commenting on her criminal background. And this prohibition applies regardless of whether the statement is true or false. In addition, Government's argument fails to address its other false and salacious statements, as well as the circumstances surrounding their drafting. In short, there is an outstanding factual dispute as to whether the Government's misconduct was flagrant.

Similarly, there is a factual dispute as to whether the press release prejudiced Ms. Hankins. In her Motion and Reply, as well as in the accompanying Declaration of Counsel, Ms. Hankins argued that witnesses who were once favorable to Ms. Hankins have been influenced by the Government's press release. The potential for a prosecutor's statements to shape public perception is well established. *See United States v. Bowen,* 799 F.3d 336, (5th Cir. 2015) ("A prosecutor's status, moreover, enhances the credibility of public comments and magnifies the adverse consequences of the commenter's inappropriate remarks."). Courts recognize that the

potential damage that such out-of-court statements can cause extends beyond polluting the jury pool. The Fifth Circuit made this clear in *Bowen*, where the appellate court dismissed an indictment following prosecutorial misconduct, including a prosecutor's online commentary against defendants:

> Moreover, the government overlooks that potential harm extends not just to jurors but others involved in the case...Only a naïf would think that these people, and their families and friends, were not avidly consuming all available sources of information from the inception of the prosecution through trial. Inflammatory and biased online comments to news articles must have affected the participants' approaches to their defense, testimony, or decisions to testify.

799 F.3d at 358.

In line with the Fifth Circuit's uncontroversial observation, Ms. Hankins has put forth expert testimony applying these principles to this case. *See* Decl. of Counsel in Support of Motion for Reconsideration, Ex. 1.  Defense counsel has also proffered that witnesses' feelings toward Ms. Hankins, and their willingness to testify on her behalf, were impacted by the Government's statements.

At an evidentiary hearing, the defense would introduce witness testimony regarding their efforts to obtain witnesses on Ms. Hankins' behalf and to ascertain the impact of the publicity on their willingness to testify.  The anticipated testimony would describe the results of the investigation, in which some witnesses expressed an unwillingness to speak with the investigator, while others reported an awareness of negative community sentiment toward Ms. Hankins following the press release; and other witnesses who indicated that their opinions of Ms. Hankins were impacted by the Government's statements.

The Government's Response argues that this evidence does not rise to the level of prejudice and discounts it as speculative. A hearing in which witnesses can testify renders Ms.

MOTION FOR RECONSIDERATION – 1
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

Hankins' proposed evidence no longer speculative and would allow the Court to resolve the open question as to whether the degree of witness influence has prejudiced Ms. Hankins.

## II.     Legal Standard

The law of this Circuit requires that a district court, upon the defendant making a *prima facie* showing of prosecutorial misconduct, allow the defendant to present evidence of prosecutorial misconduct in an evidentiary hearing. *See Oaks*, 508 F.2d at 1404. To make a showing of prosecutorial misconduct sufficient to warrant an evidentiary hearing, a defendant need only allege enough facts "to take the question past the frivolous stage." *Id.*; *see also United States v. Erne*, 576 F.2d 212, 216 (9th Cir. 1978) (following *Oaks* rule). This is a low bar.

In *United States v. Oaks*, the Ninth Circuit reversed a district court's denial of an evidentiary hearing on defendant's claim of selective prosecution and remanded for hearing on the question of discriminatory prosecution. 508 F.2d at 1404. The defendant, Oaks, was charged with failing to file a tax return and willfully supplying a false withholding certificate. *Id.* During a pre-trial motions hearing, Oaks contended that he was selected for prosecution solely because he protested publicly against federal tax policies. *Id.* To support his position, Oaks pointed to publicity generated by his efforts to publicize his novel monetary theory that, he claimed, warranted non-compliance with the tax laws. *See id.* (describing coverage in the *Los Angeles Times* of his attempt to pay a filing fee so we could run for political office with 384 silver half-dollars). Oaks does not appear to have made any further allegations of specific acts by prosecutors.

On appeal, the Ninth Circuit reversed and remanded for an evidentiary hearing. *See id.* Declining to express an opinion on the merits of Oaks's claim, the Ninth Circuit observed that "the law in this circuit requires the district court, upon a proper offer of proof, to allow [the

defendant] to present evidence, if any, that he has been singled out for discriminatory prosecution." *Id.* After discussing the standard for selective prosecution claims set forth in *United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972), the court wrote the following about the defendant's argument:

> Oaks argues that under this circuit's *Steele* rationale he has alleged facts sufficient to require a hearing on his claim of discriminatory selective prosecution. ***Hearings on similar pretrial objections are usually in order when enough facts are alleged to take the question past the frivolous stage.*** See, e.g., *Lawn v. United States*, 355 U.S. 339, 346-50 (1958); *Nardone v. United States*, 308 U.S. 338, 342 (1939); *United States v. Fujimoto*, 102 F. Supp. 890, 893 (D. Hawaii 1952).

*Id.* (emphasis added). The Ninth Circuit further determined that "Oaks has alleged enough facts to require an evidentiary hearing." *Id.*

Other circuits are in accord with the Ninth Circuit's rule. *See United States v. Berrigan*, 482 F.2d 171, 181 (3rd Cir. 1973) (holding a defendant is entitled to a hearing when there is a "colorable basis" for the allegation); *United States v. Saade*, 652 F.2d 1126, 1135 (1st Cir. 1981) (defendant entitled to a hearing if the defendant "alleges some facts a) tending to show that he has been selectively prosecuted, and b) raising a reasonable doubt about the propriety of the prosecution's purpose"); *United States v. Catlett*, 584 F.2d 864, 866 (8th Cir. 1978) (evidentiary hearing required "when the motion alleges sufficient facts to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose").

In sum, in order to be entitled to an evidentiary hearing here, Ms. Hankins need only have alleged some facts tending to show that prosecutorial misconduct has occurred, such that her claim is not "frivolous." This standard is met here.

///

///

MOTION FOR RECONSIDERATION – 1
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

### III. Ms. Hankins is entitled to an evidentiary hearing on the issue of prosecutorial misconduct.

Ms. Hankins has set forth enough facts to establish a non-frivolous claim of prosecutorial misconduct and warrant an evidentiary hearing. As a threshold matter, there is no dispute that the Government violated its obligations when it published its false and inflammatory statements immediately following Ms. Hankins' guilty plea. The legal and ethical rules set forth in Ms. Hankins' prior filings make clear that the Government cannot publicly disparage a defendant's character or comment on his or her criminal background. The Government's statements plainly do both. The Government's Response offered no defense otherwise. Instead, the Government merely suggested that the limitations set forth in 28 C.F.R. 50(b) did not apply because Ms. Hankins did not go to trial. The Government offered no support for this proposition, which, as explained in Ms. Hankins's Reply, ignored the plain text of the regulation. *See* 28 C.FR. 50.2(b)(1) (regulation applies until a proceeding terminates in trial or otherwise).

Furthermore, the Government's position runs contrary to a prosecutor's "overarching duty to do justice"— a crucial underpinning of the limits placed on prosecutorial extra-judicial statements. *See Bowen,* 799 F.3d at 353 (so stating). And it ignores the well-established fact that a prosecutor's public statements have the capacity to influence not only jurors but witnesses as well. *See id.* at 355 ("[T]he [prosecutor's] online comments could have affected not only the venire panel and actual jurors but also cooperating defendants and defense witnesses). In short, there is no plausible claim that the Government did not violate its duties with respect to its extra-judicial statements.

MOTION FOR RECONSIDERATION – 1
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

### A. Ms. Hankins set forth sufficient facts regarding the Government's flagrant misconduct to warrant an evidentiary hearing

The Government engages in "flagrant misconduct" when it recklessly disregards its legal and ethical violations. *See Bundy,* 968 F.3d at 1031 (so stating). To support this claim, Ms. Hankins, in her filings, pointed to the language of the press release itself: that such salacious statements, which plainly serve no law enforcement purpose, appeared engineered for the purpose of influencing public opinion against Ms. Hankins. Ms. Hankins also noted that the press release was deliberately, not accidentally, published, and that the statements had been in the possession of experienced prosecutors — well-versed in their ethical and legal duties— for at least 24 hours prior to release. Taken together, these circumstances indicate more than accidental or negligent misconduct, none of which the Government's Response even addressed, much less demonstrated was frivolous. Moreover, as Ms. Hankins previously explained, an evidentiary hearing is necessary to further establish the Government's intent. She intends to call members of the prosecutor's office to elicit direct evidence regarding the motives behind the Government's drafting and publication decisions, which is relevant to the question of flagrancy. *See* Decl. of Counsel in Support of Motion to Reconsider. In short, Ms. Hankins has put forth a good faith argument that the Government engaged in flagrant misconduct and she has demonstrated the need for an evidentiary hearing to elicit evidence that is otherwise unavailable to her.

### B. Ms. Hankins's claim of prejudice is not frivolous

Ms. Hankins has also alleged sufficient facts to establish a non-frivolous claim of prejudice caused by the Government's misconduct. As previously stated in her Reply, "Ms. Hankins intends to present witness testimony to demonstrate the impact of the government's statements and the loss of likely favorable evidence." Reply at 2. Additionally, "Ms. Hankins intends to offer expert opinion as to how the language of the press release creates bias in the

MOTION FOR RECONSIDERATION – 1
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

minds of those exposed to it." *Id.* The expert report accompanying this Motion summarizes the testimony that Ms. Hankins would offer.

Under the *Oaks* standard, these facts, as alleged, are sufficient to warrant an evidentiary hearing. Indeed, Ms. Hankins has made a greater factual showing than the defendant in *Oaks*. In *Oaks*, the defendant, had merely alleged —orally and at a hearing on a different motion— that he had been targeted for his public statements on taxation. There is no evidence in the opinion that Oaks had set forth any facts beyond his claim that he was only charged after publicizing his novel monetary theory. Here, Ms. Hankins has exceeded the minimal showing required by *Oaks* to merit a hearing. She has set forth, for example, that the circumstances surrounding the publication of the press release evidences flagrant misconduct, and she has detailed the manner in which the Government's statements have harmed her ability to defend herself at sentencing. These are not "frivolous" allegations; they are quantifiable facts that she should be permitted to establish at an evidentiary hearing.

IV. **The evidence necessary to establish Ms. Hankins' claim of government misconduct cannot reasonably be presented at a sentencing hearing**

The evidence described above, and in the prior filings, cannot reasonably be set forth at a sentencing hearing for practical reasons. As a preliminary matter, the Government's concession that Ms. Hankins can introduce evidence of damage to her reputation at sentencing is not an adequate substitute. Such evidence does not fully address the issues of flagrant government misconduct and prejudice to Ms. Hankins in terms of lost evidence.

Beyond proving reputational damage as a form of punishment already meted out by the government, the actual change in witnesses' opinions from favorably to negatively disposed toward Ms. Hankins does not provide an accurate picture of Ms. Hankins' positive contributions to the community and to the festivals. Under 18 U.S.C. §3553, courts must consider evidence

related to the defendant's history and characteristics, as well as to the offense conduct. But. in effect, calling witnesses who now believe that she is a thief or a serial fraudster and do not trust her would only prejudice Ms. Hankins at sentencing.

Therefore, as a practical matter, it would not be feasible for Ms. Hankins to introduce evidence that potential witnesses were influenced by the Government's misconduct at a sentencing hearing. To do this, Ms. Hankins would have to call witnesses who harbor unfavorable attitudes towards her, elicit such unhelpful testimony, and then impeach that testimony with arguments (or extrinsic evidence, such as the attached expert report) that their testimony is not credible in light of the undue government influence. This puts Ms. Hankins in an untenable position: she can either choose to introduce testimony to support her Motion to Dismiss, which would likely be unhelpful to her sentencing presentation; or she can ignore the harm created by the Government, which would deprive her of the ability to fill in gaps in the evidentiary record. In short, the evidence needed to establish her claim of prosecutorial misconduct cannot be adequately presented and heard at a sentencing hearing.

## IV. Conclusion

For the reasons described above, Ms. Hankins has alleged sufficient facts to warrant an evidentiary hearing to determine whether the prosecution engaged in flagrant misconduct and whether that misconduct prejudiced Ms. Hankins. The parties' pleadings demonstrate that there are outstanding factual disputes as to both issues, and the evidence relevant to these claims cannot feasibly be presented at a sentencing hearing. Accordingly, Ms. Hankins respectfully requests that the Court reconsider its denial of an evidentiary hearing.

//

DATED: December 16, 2022

                                      Respectfully submitted,

                                      _s/Janet Hoffman_____
                                    JANET HOFFMAN, OSB No. 781145
                                    KATHERINE MARCHANT, OSB No. 161147
                                    Janet Hoffman & Associates LLC
                                    1000 SW Broadway, Ste. 1500
                                    Portland, OR 97205
                                    Phone: (503) 222-1125
                                    Email: janet@jhoffman.com
                                    Attorneys for Defendant Anne Hankins