JANET LEE HOFFMAN, OSB No. 781145
E-mail: janet@jhoffman.com
KATHERINE MARCHANT, OSB NO. 161147
E-mail: katie@jhoffman.com
Janet Hoffman & Associates LLC
1000 SW Broadway, Ste. 1500
Portland, OR 97205
Telephone: (503) 222-1125

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>ANNE HANKINS,<br><br>      Defendant. | Case No. 6:22-cr-00317-MC<br><br>**DEFENDANT ANNE HANKINS' MOTION TO CONTINUE SENTENCING IN ORDER TO RESPOND TO VICTIM IMPACT STATEMENT** |

Defendant Anne Hankins respectfully moves this Court to continue the sentencing hearing in the above-captioned matter.

**I. Introduction**

On January 17, 2023, Endeavor submitted its victim impact statement, which, as further explained below, contains a host of inflammatory and misleading factual allegations that it argues are relevant to the Court's sentencing determination. For example, the victim impact statement claims that, in addition to Endeavor, WCMC is also a victim, and that Ms. Hankins misappropriated WCMC funds for her personal use. These factual claims go to the heart of Ms. Hankins' position at sentencing and stand in direct opposite to what the Government represented

MOTION TO CONTINUE SENTENCING – 1
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

to Ms. Hankins throughout negotiations: that there is no evidence that she stole or otherwise misappropriated festival funds.

The victim impact statement purports to rely on a significant number of documents, including bank statements, income statements and balance sheets, general ledger entries, artist and vendor contracts, invoices and payment records, promissory notes and several months of email communications. The statement also claims to rely on the findings of a forensic accounting investigation. None of this material has been provided to counsel in this case.

Pursuant to the Due Process Clause of the United States Constitution, 18 U.S.C. § 3664(a)-(b), (e) and Federal Rule of Criminal Procedure 32(d)(2)(B) and (D), Ms. Hankins has a right to challenge Endeavor's facts and arguments that may be used to deprive her of liberty. She cannot do so, however, without access to the materials Endeavor relies on. Given the breadth and complexity of the underlying documents, she cannot reasonably obtain them and incorporate them into her sentencing materials before the currently scheduled sentencing hearing.

Unless a reasonable continuance is granted, Endeavor's factually unsupported allegations will chill Ms. Hankins' ability to present mitigating evidence under § 3553(a) by denying her the opportunity to meaningfully confront Endeavor's claims. Sentencing is a critical stage of a criminal proceeding. In the case of a plea bargain, where a defendant gives up her valuable right to a jury trial in exchange for the opportunity to present favorable evidence in support of a probationary sentence, the sentencing hearing becomes the most critical stage of the criminal prosecution. In short, there is good cause for a continuance to protect Ms. Hankins' right to respond to the evidence against her.

In an effort to minimize the length of any continuance, Ms. Hankins has already identified and requested from the Government the specific documents referenced in the victim

impact statement that she needs in order to respond to Endeavor's factual claims.[1] That request is attached as Exhibit 1 to the accompanying Declaration of Counsel. As of the date this filing, Ms. Hankins has not heard back from the Government regarding production. To the extent necessary, Ms. Hankins will seek Court authorization to serve a subpoena *duces tecum* for production sufficiently in advance of the hearing to allow counsel to analyze the materials and prepare a response, as well as for cross examination of Endeavor.

Ms. Hankins has conferred with the Government regarding a continuance, and the Government objects.

## II.     Procedural background

On December 29, 2022, the parties received a draft copy of the presentence report pursuant to Federal Rule of Criminal Procedure 32. Neither side objected to the offense conduct described in the report, which mirrored the conduct set forth in the plea agreement. The draft report stated that the Government intended to request restitution in the amount of $1,500,000. The draft report further stated that the Government reported that it had not received a victim impact statement or any restitution requests.

On January 12, Ms. Hankins submitted her objections to the draft report. The Government did not submit any objections.

On January 17, the Government emailed the Court, the Probation Office and Ms. Hankins a victim impact statement. The statement claims that both Endeavor and WCMC should be deemed victims, and it sets forth a series of factual allegations and arguments, which are further

---

[1] It is Ms. Hankins' understanding that the requested documents are in the Government's possession based on the victim impact statement's assertion that it produced more than one million pages of materials at the Government's request.

MOTION TO CONTINUE SENTENCING – 3
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

described below, that it claims justify a sentence of incarceration. The victim impact statement also requests more than $13 million in restitution for both Endeavor and WCMC. [2]

On January 19, the Probation Office submitted its final presentence report, which notes Endeavor and WCMC's restitution request.

### III.   Relevant factual background

As the Court is aware, Ms. Hankins and the Government engaged in thoughtful, and thorough, negotiations for more than 18 months prior to the entry of her guilty plea on September 28, 2022. From the outset, the Government's theory of prosecution was premised on the inflation of assets, not the misappropriation of funds, and that Ms. Hankins altered a bank statement from WCMC's operating account to make it appear that, as of February 7, 2018, WCMC had approximately $1.1 million in cash on hand, when, in reality, as of that date, WCMC only had approximately $16,000 in cash on hand.

The Government's theory did not involve any allegation of theft or the misappropriation of festival funds. Now, Endeavor is claiming that funds are missing and asks the Court to attribute those missing funds to Ms. Hankins.  Without an opportunity to review Endeavor's actual analysis, however, it is impossible to analyze and rebut its claims. For example, Endeavor's analysis appears to be based on books that were admittedly altered to show that there was more cash in WCMC's operating account than there was in reality. The altered bank statement and related financials reports from February 2018 showed a balance of $1.1 million. However, Ms. Hankins did not take $1.1 million and WCMC did not lose $1.1 million — that money never existed. It was a false statement that, according to the Government's theory of

---

[2] Ms. Hankins objects to this restitution request. It is unsupported, without merit and untimely. As it goes beyond the scope of this continuance request, Ms. Hankins will address it in a separate pleading.

prosecution, served as an inducement to Endeavor in its decision to purchase Ms. Hankins' minority interest in WCMC. In other words, the false bank statement was the underlying conduct that contributed to the agreed-upon loss amount (for Guideline purposes) of $1.5 million.

Moreover, throughout the entirety of the plea negotiations, there was never any indication from the Government that it considered WCMC to be a victim of Ms. Hankins' conduct. In fact, the Government agreed that Ms. Hankins worked hard to make WCMC a success. But Ms. Hankins cannot impeach Endeavor's analysis or disprove its factual assertions without reviewing its purported evidence.

As further described in Ms. Hankins' prior pleadings, the fact that the Government recognized that Ms. Hankins did not steal, embezzle or otherwise misappropriate WCMC's funds was central to her decision to accept a guilty plea. This mitigating fact is reflected in the Government's recommended 3-level variance, and its refusal — both in its pleadings and when confronted directly by counsel — to defend the misleading statements in its press release that implied that Ms. Hankins stole money. *See* Gov't Resp. to Motion to Dismiss (ECF No. 15). So important is this fact to Ms. Hankins that immediately following the issuance of the Government's press release, defense counsel notified the prosecution that had Ms. Hankins anticipated that she would have to defend against allegations of theft, she would have chosen to go to trial. But the Government, again, reaffirmed the fact that its case did not involve evidence or allegations that Ms. Hankins misappropriated festival funds for her benefit.

Based on this course of conduct, it was Ms. Hankins' understanding that she would not have to defend against claims of theft and the like at sentencing. The victim impact statement has unexpectedly introduced factual allegations to the contrary. Ms. Hankins objects to these

inflammatory and misleading assertions but, for the reasons further described herein, cannot reasonably do so without a continuance.

## IV.  There is good cause for a continuance

There is good cause to reset the sentencing hearing. A defendant has a constitutional due process right to notice and the opportunity to challenge the facts and arguments that may be used to deprive them of life, liberty or property. *See Rita v. United States,* 441 U.S. 338, 351 (2007) (observing that each defendant's sentence be subject to "thorough adversarial testing") (citing *Burns v. United States*, 501 U.S. 129, 137-38 (recognizing importance of notice and meaningful opportunity to be heard at sentencing)); *Gardner v. Florida,* 430 U.S. 349, 351, 358 (1977); *United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948) (stating that it is "a requirement of fair play that a criminal sentence is not predicated on misinformation"); *accord United States v. Mannino,* 212 F.3d 835, 845-46 (3d Cir. 200) ("Obviously, a criminal defendant must be afforded due process at sentencing").

To protect these rights, the rules require notice in the presentence report; an opportunity to investigate, object and present contrary evidence and argument to the Probation Officer; an opportunity to file a sentencing memorandum with the court and to argue orally to the court; an opportunity for a hearing; the right to obtain witness' statements, to have witnesses placed under oath and to question witnesses at any such hearing; and a right to have the court resolve any disputed matter. *See* Fed. R. Crim. P. 32(e)(2), (f), (g)-(i); 26.2(a)-(d), (f). These protections apply to information contained in victim impact statements and restitution, just as they apply to information provided by the government or any other witnesses. *See* Fed. R. Crim. P. 32(d)(2)(B), (D); 18 U.S.C. § 3664(a)-(b), (e). A crime victim's right "to be reasonably heard" does not allow a victim to circumvent the constitutional requirements and rules designed to

ensure notice and adversarial testimony by presenting unsworn and untestable allegations that may impact the sentencing decision. *See United States v. Ausburn,* 502 F.3d 313, 322-23 (3d Cir. 2007) (recognizing defendants' "due process right to be sentenced based upon accurate information"). Where, as here, a victim submits factual allegations in support of its desired sentence, defendants necessarily have the right to offer a meaningful response. *See e.g., United States v. Endsley*, 2009 WL 385864, *7 (D. Kan. Feb. 17, 2009) (rejecting the government's argument that the defendant lacked the right to counter information provided by a victim and observing that "the defendant certainly has the right to challenge the reliability of [the victim's] causation opinion by argument or evidence").

In order to protect a defendant's right to respond, and to ensure that all sentencing information be subjected to thorough adversarial testing, continuances are warranted when new information comes as a surprise to defendant. *See United States v. Eberhard,* 525 F.3d 175, 178 (2d Cir. 2008) (recognizing that a continuance may have been warranted to allow the defendant an opportunity to prepare a more thorough response to the victim's statements but, as the defendant failed to ask for a continuance, holding that it was not plain error for the district court to impose sentence immediately thereafter); *accord* Fed. R. Crim. P. 32(b) (authorizing continuances for "good cause"); Criminal Local Rule 32-1 (providing for "sufficient time between adjudication and sentencing" to allow the parties to adequately prepare their presentations).

In *United States v. Khan*, 701 Fed. App'x 592, 595-6 (9th Cir. 2017), the Ninth Circuit implicitly approved of the district court's allowance of multiple continuances for the purpose of ensuring that the defendant had a reasonable opportunity to gather evidence for sentencing. In *Khan*, the defendant argued on appeal that the trial court abused its discretion by not providing

him with an evidentiary hearing on the loss calculation at sentencing. The Court disagreed with the contention regarding the evidentiary hearing, but wrote as follows:

> Finally, the district court did not abuse its discretion when it denied the Khans' request for an evidentiary hearing on the loss amounts. "There is no general right to an evidentiary hearing at sentencing." *United States v. Laurienti*, 731 F.3d 967, 972 (9th Cir. 2013) (alteration omitted) (quoting *United States v. Real-Hernandez*, 90 F.3d 356, 362 (9th Cir. 1996)). A district court may refuse to hold one as long as the defendant is allowed an opportunity to rebut the findings and recommendations of a PSR through oral or written submissions. *Sarno*, 73 F.3d at 1502-03 (citing *United States v. Baker*, 894 F.2d 1083, 1084-85 (9th Cir. 1990)). <u>Here, the Khans were provided extensive discovery months in advance of their sentencings and were given ample opportunities to present both written and oral sentencing submissions. Indeed, continuances of their sentencing hearings were granted by the district court for this very purpose</u>. It was therefore well within the district court's discretion to conclude that the Khans had been given an ample opportunity to present their arguments.

*Id.* at 596 (emphasis added).

Here, Endavor's victim impact statement contains a host of factual allegations, which are relevant to the factors set forth in 18 U.S.C. § 3553(a). These claims present a markedly different version events than that contemplated by either the specific facts set forth in the plea agreement or even the prosecution's representations as to its theory of the case, as described above.

Unlike the Government, Endeavor claims that there is a significant amount of evidence that Ms. Hankins misappropriated festival funds for her own use. For example, Endeavor states that bank records and other corporate documents show that in 2017 she paid herself more than $100,000 above her salary and made more than $20,000 in unauthorized car payments to herself and her family. Endeavor also claims that she used more than $2.64 million of $7 million in third-party loans for her own purposes, and that there are cash collection sheets and bank records evidencing $250,000 of missing cash that was collected from merchants and vendors at the 2018 festivals. Endeavor's victim impact statement further implies that, based on its review of general

ledger entries, bank statements, artist contracts and payments, as well as income statements and balance sheets, Ms. Hankins misappropriated another $600,000 from WCMC's accounts.

Ms. Hankins strenuously objects to these claims, which, importantly, the Government never put forth to her. As an important aside, this is why Ms. Hankins included, among her discovery requests, communications between the Government and Endeavor regarding her use of festival funds, as well as the results of the Government's investigation into the same. Evidence that the Government developed (and statements that it has made) that impeach Endeavor's factual allegations are exculpatory, and Ms. Hankins is constitutionally entitled to review and present them at sentencing. In light of the parties' negotiations discussed above, Ms. Hankins had no reason to anticipate needing to obtain such evidence until Endeavor's belated submission.

To that point, and as indicated above, Endeavor's impact statement suggests that there is extensive documentation supporting its factual allegations. In addition to the financial records, artist and vendor contracts, cash collection sheets, bank statements, promissory notes and the like, Endeavor further claims that its factual assertions are supported by the opinion of the forensic accountant Exiger, which conducted a full-scale investigation of WCMC's books.

In order to meaningfully respond to this expert evidence, Ms. Hankins must be afforded a reasonable opportunity to review the report, the materials Exiger relied upon and the associated communications between Endeavor and Exiger, all of which she has requested from the Government. One of the reasons that this information is crucial to Ms. Hankins' ability to respond is that Exiger's conclusions presume — and ask the Court to presume as well — that any loss to WCMC is attributable to Ms. Hankins and that any missing or unaccounted-for cash is the result of Ms. Hankins pocketing the money. For example, with respect to the purportedly missing $2.64 million in loan proceeds, the victim impact statement states that it "assumes the

funds were taken by Hankins for her own purposes." Ms. Hankins cannot challenge such a presumption without access to the underlying documents and Endeavor's communications with Exiger.

Ms. Hankins has a good faith basis to believe that a review of Exiger's work will yield exculpatory evidence and enable her to meaningfully confront the version of facts set forth in the victim impact statement. For example, as indicated above, access to these materials will enable Ms. Hankins to understand the assumptions underlying Exiger's opinions and conclusions. It is important to know whether Endeavor biased Exiger's investigation from the outset by believing that Ms. Hankins engaged in criminal conduct and then instructing the auditors to find evidence of it. This could help explain why the purportedly missing cash and unexplained discrepancies that Exiger is said to have found were assumed to be the result of nefarious conduct by Ms. Hankins, as opposed to another explanation.

Exiger's findings could also have relied upon an incorrect understanding of how to treat the $1.1 million in overstated cash. As noted above, that was a false statement that was a cause of Endeavor's $1.5 million loss. It does not represent a $1.1 million loss to WCMC because that money never existed. But if Exiger assumed that there should have been $1.1 million in WCMC's operating account as of February 7, 2018, then its purported findings regarding missing or unaccounted-for cash could be erroneous. In other words, Exiger's retracing of cash proceeds may have begun at the wrong starting point. But, again, without an opportunity to review Exiger's analysis, Ms. Hankins cannot meaningfully present such arguments. And given the breadth of Exiger's investigation, and the complexity inherent in audit investigations and reports, Ms. Hankins cannot reasonably digest the necessary materials (and consult with her own expert, if necessary) without a continuance.

The allegations in the victim impact statement substantially chill Ms. Hankins' ability to present evidence of her law-abiding, productive activities since her last prosecution, as suggested by the Court in its prior Order denying Ms. Hankins' Motion to Continue. Now, Ms. Hankins is facing claims to the contrary that she cannot refute because she has neither the time nor the raw materials. For example, Ms. Hankins is proud of the work she produced growing the festivals and their significant contributions to the local schools and non-profits. The victim impact statement, however, impeaches her track record by laying out a story of theft and diversion of funds from WCMC, and that she engaged in long-term fraudulent conduct over a period of time that far exceeds the time period set forth in the Superseding Information and plea agreement.

According to the Superseding Information and plea agreement, the scheme to which Ms. Hankins pled guilty began around September 2016 and continued until March 1, 2018. This is the same period of time the parties discussed during negotiations, and accords with Ms. Hankins' timeline of events, as described in her prior pleadings.

According to the victim impact statement, however, Ms. Hankins formed the intent to defraud Endeavor in 2013, when she initially agreed to the creation of a joint venture, and then began engaging in improper conduct, such as taking out loans on behalf of WCMC without the authority to do so. The victim impact statement cites, as a specific example, a promissory note that Ms. Hankins signed in July 2016.

The victim impact statement then suggests that Ms. Hankins' fraudulent conduct continued until her termination around late September 2018, even after she sold her minority interest in March 2018. The victim impact statement misleadingly claims that between July and September 2018 Ms. Hankins fraudulently induced Endeavor to loan $3.172 million to WCMC to cover festival obligations. The statement further implies that the festival obligations were not

MOTION TO CONTINUE SENTENCING – 11
UNITED STATES V. ANNE HANKINS, Case No. 6:22-cr-00317-MC

actually as high as Ms. Hankins was reporting. Moreover, the victim impact statement asserts that Ms. Hankins hid more than $5 million in obligations to vendors. Endeavor references financial statements, vendor agreements, artist contracts, payment records, and receipts from ticket sales, along with Exiger's findings, in support of these purported facts. Endeavor further claims that it reviewed more than 600 invoices to reach its conclusions

     Ms. Hankins objects to this inflammatory and misleading portrayal of events. None of this was part of the prosecution's theory of the case, as Ms. Hankins understood it. It was not discussed during plea negotiations, it was not part of the draft presentence report, and it was not part of the plea agreement. In preparing for sentencing, Ms. Hankins had no reason to believe that she would need to develop facts in response to these assertions, and she does not currently have access to the materials needed to do so.

     It is defense counsel's belief that the purportedly unauthorized third-party loan that Ms. Hankins took out on behalf of WCMC in July 2016 was both authorized and known to Endeavor. Ms. Hankins cannot, however, fully develop this objection without access to the referenced promissory note, bank records and other materials that Endeavor's factual claim relies upon. Similarly, Ms. Hankins objects to Endeavor's factual allegations regarding her post-sale conduct. A variety of factors, all outside of Ms. Hankins' control and of which Endeavor was fully aware, resulted in reduced revenue from the 2018 festivals, which, in turn, required Endeavor to provide additional funding. The money Endeavor extended to WCMC was necessary to cover short-term liabilities and was used accordingly. But, again, Ms. Hankins cannot adequately support her position and fully respond to these allegations without access and a reasonable opportunity to review the materials on which Endeavor relied. In other words, Ms. Hankins should not be

placed in a position to simply deny the truth of the factual allegations without an opportunity to directly confront and refute these claims with evidence that supports her position.

The same goes for Endeavor's false claims that Ms. Hankins "stiffed" vendors following the 2018 festivals. Endeavor purports to have email communications and payment records to support its assertions, none of which Ms. Hankins has been provided, and which she needs an opportunity to review in order to meaningfully respond. The question of vendor payments, and Ms. Hankins' focus on supporting local businesses and non-profits and making sure they were paid, is an important component of her mitigation evidence, as described in her prior pleadings. It is also relevant to issues the Court left open in its rulings on Ms. Hankins' Motion to Dismiss. Ms. Hankins had argued that she was unable to marshal mitigating evidence on this front following the Government's inflammatory press release, which rekindled the false narrative that she was the reason vendors were not paid following the 2018 festival. Endeavor's materials regarding vendor payments is relevant to these issues, and Ms. Hankins is entitled to review them in order to refute Endeavor's contrary narrative.

Finally, a continuance is warranted not only to protect Ms. Hankins' right to respond to the factual allegations, but also to ensure that the Court is able to make a reasoned determination as to whether WCMC is a "victim" at all. This is important because only persons that meet the statutory definition of "crime victim" under the Crime Victims Rights Act have the right to be "reasonably heard" at a defendant's sentencing. *See* 18 U.S.C. 3771(a) (so stating). If WCMC does not meet the statutory definition, then it is not a "victim" and its statements in the victim impact statement cannot be used at Ms. Hankins' sentencing.

The Crime Victims' Rights Act defines "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense[.]" 18 U.S.C. 3771(e).

The question of whether an entity is a victim is often complex and cannot be reliably determined on the spot, but only with advance notice and input from the parties. *See e.g., United States v. Sandhu*, 462 F. Supp. 2d 663 (E.D. Pa. 2006) (where defendant commercial truck driver was convicted for false statements in his daily logbook, family members of persons killed in an accident caused by the defendant would be allowed to address the court at sentencing because there was a nexus between the falsifications and the accident); *United States v. Sharp,* 463 F. Supp. 2d 556, 565 (E.D. Va. 2006 (woman who wished to testify at sentencing based on her claim that her boyfriend's abuse of her was the result of smoking marijuana that he bought from the defendant was not a "victim" within the meaning of the CVRA).

Here, the victim impact statement claims that WCMC is a victim because it was harmed by Ms. Hankins' misappropriation of festival funds and that she "saddled" it with unauthorized debt. Ms. Hankins objects to this assertion: the conduct to which she pleaded guilty did not harm WCMC, only Endeavor. She had the authority to take out loans on behalf of WCMC, all of which were to WCMC's benefit, and there is no reliable evidence that she misused festival funds. Ms. Hankins, however, cannot fully support her position without an opportunity to review the materials relied upon in the victim impact statement.

**V.     Conclusion**

In sum, Ms. Hankins objects to the allegations set forth in Endeavor's victim impact statement and WCMC's claim that it meets the statutory definition of "crime victim" for the purposes of being heard. Ms. Hankins cannot provide an adequate response unless she has an opportunity to obtain and review the underlying materials, which she cannot reasonably do without a continuance. Accordingly, good cause exists to reset the currently scheduled sentencing hearing.

//

DATED: January 22, 2023

                                                    Respectfully submitted,

                                                    s/Janet Hoffman
                                                    JANET HOFFMAN, OSB No. 781145
                                                    KATHERINE MARCHANT, OSB No. 161147
                                                    Janet Hoffman & Associates LLC
                                                    1000 SW Broadway, Ste. 1500
                                                    Portland, OR 97205
                                                    Phone: (503) 222-1125
                                                    Email:  janet@jhoffman.com
                                                    Attorneys for Defendant Anne Hankins