AO 89B (07/16) Subpoena to Produce Documents, Information, or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. |
|  | ) |
| *Defendant* | ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CRIMINAL CASE**

To:

_____
*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following books, papers, documents, data, or other objects:

| Place: | Date and Time: |
|---|---|

Certain provisions of Fed. R. Crim. P. 17 are attached, including Rule 17(c)(2), relating to your ability to file a motion to quash or modify the subpoena; Rule 17(d) and (e), which govern service of subpoenas; and Rule 17(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

*(SEAL)*

Date: _____

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____, who requests this subpoena, are:

**Notice to those who use this form to request a subpoena**

Before requesting and serving a subpoena pursuant to Fed. R. Crim. P. 17(c), the party seeking the subpoena is advised to consult the rules of practice of the court in which the criminal proceeding is pending to determine whether any local rules or orders establish requirements in connection with the issuance of such a subpoena. If no local rules or orders govern practice under Rule 17(c), counsel should ask the assigned judge whether the court regulates practice under Rule 17(c) to 1) require prior judicial approval for the issuance of the subpoena, either on notice or ex parte; 2) specify where the documents must be returned (e.g., to the court clerk, the chambers of the assigned judge, or counsel's office); and 3) require that counsel who receives produced documents provide them to opposing counsel absent a disclosure obligation under Fed. R. Crim. P. 16.

Please note that Rule 17(c) (attached) provides that a subpoena for the production of certain information about a victim may not be issued unless first approved by separate court order.

Case No.

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Criminal Procedure 17 (c), (d), (e), and (g) (Effective 12/1/08)

**(c) Producing Documents and Objects.**

    **(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

    **(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

    **(3) Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

**(d) Service.** A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance. The server need not tender the attendance fee or mileage allowance when the United States, a federal officer, or a federal agency has requested the subpoena.

**(e) Place of Service.**

    **(1) In the United States.** A subpoena requiring a witness to attend a hearing or trial may be served at any place within the United States.

    **(2) In a Foreign Country.** If the witness is in a foreign country, 28 U.S.C. § 1783 governs the subpoena's service.

**(g) Contempt.** The court (other than a magistrate judge) may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district. A magistrate judge may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by that magistrate judge as provided in 28 U.S.C. § 636(e).

**Attachment A**

**DEFINITIONS AND INSTRUCTIONS**

As used in this Subpoena to Produce Documents, Information, or Objects in a Criminal Case:

1. This subpoena requires the production of "documents." As used in this subpoena, the term "documents" means documents, materials, records, reports, electronically stored information, notes, communications, memorandum, or written items in your possession, custody, and/or control or that are in the possession, custody, and/or control of your officers, directors, agents, employees, accountants, attorneys, representatives or other persons who have "documents" deemed to be in your possession, custody, and/or control.

2. A document "relating to," "regarding," "in connection with," or "evidencing" a given subject matter means any document or communication that constitutes, contains, embodies, comprises, reflects identifies, states, refers to, comments on, responds to, describes, analyzes, and/or pertains in any way to that subject.

3. These requests shall be deemed to be continuing, and any additional documents included in any way in these requests that you acquire subsequent to the date of producing the documents requested, up to and including the time of sentencing and any appeals thereof, shall be furnished promptly after such documents are acquired as supplemental responses to these requests.

4. If it is contended that any of the documents described below are privileged, or otherwise protected against disclosure, describe the basis of the objection to disclosure, the number of documents, the general nature of each document, the date, subject matter and number of pages of each document, and a list of all persons who participated in the preparation of the document and to whom the document was circulated or its contents communicated or disclosed.

5. File folders with tabs or labels identifying documents responsive to these requests should be produced intact with the documents.

6. Documents attached to each other should not be separated. Documents shall be produced as they are kept in the usual course of business or shall be organized and labeled in order to correspond with the categories in this request.

7. Words in the singular form include their plural meaning, and words in the plural form include their singular meaning.

8. The conjunction "and" and the disjunction "or" shall be individually interpreted in every instance as meaning "and/or," i.e., "and" and "or" and shall not be interpreted to exclude any information otherwise within the scope of these requests.

9. "Communication" and "communications" refer to any means of transfer of information, ideas, opinions, thoughts, questions or answers by any means, at any time or place,

under any circumstances, including but not limited to correspondence, records, and memoranda to file, as well as any notes or other record of such communication.

10. The term "Victim Impact Statement" means the document titled Victim Impact Statement that was submitted to the United States District Court by attorney Matthew Kalmanson dated January 16, 2023.

11. The term "Endeavor" has the same meaning as that set forth in the Victim Impact Statement, *i.e.,* "Endeavor" refers collectively to the following entities: WCMC Holdings, LLC, William Morris Endeavor Entertainment, LLC, and WME IMG, LLC.

12. The term "Exiger" refers to Exiger, LLC, as identified in the Victim Impact Statement.

13. The term "WCMC" refers to WCMC, LLC, as identified in the Victim Impact Statement.

14. Any reference to "Endeavor," "Exiger," and/or "WCMC" includes agents, employees, contractors, and representatives of the referenced entity.

15. The term "investigation" refers to the forensic investigation that, in or around September 2018, Endeavor engaged Exiger to conduct into either or both Anne Hankins or WCMC, as identified in the Victim Impact Statement.

## DOCUMENTS UNDER SUBPOENA

1. Exiger's final report, as well as any drafts that Exiger prepared, based on its investigation.

2. Documents and communications that Exiger reviewed during its investigation and/or that Exiger relied upon in formulating its conclusions.

3. Documents reflecting any questions posed by Endeavor to Exiger as part of the scope of work that Exiger was retained to undertake relating to its investigation.

4. Documents reflecting notes, summaries, analyses, and/or internal memoranda taken or created by Exiger during its investigation.

5. Internal communications, including emails and text messages, within Endeavor and/or WCMC regarding Exiger's investigation and/or its findings. This request includes communications between Endeavor and WCMC. This request further includes, but is not limited to, communications regarding the decision to retain Exiger, the terms of Exiger's engagement, the scope of Exiger's review, Exiger's reports and drafts thereof, and any assumptions that Endeavor asked Exiger to make in connection with its investigation and report.

6. Communications between or among Endeavor and/or WCMC, on the one hand, and Exiger, on the other hand, relating to Exiger's investigation and/or findings, to the extent that this request is not covered by the above.

7. Documents used to support the claim set forth in the Victim Impact Statement that WCMC is a victim of Ms. Hankins' conduct.

8. Documents used to support the allegations set forth in the Victim Impact Statement that Ms. Hankins stole money from or otherwise misappropriated money from WCMC for her personal benefit, or for any other purpose. This includes, but is not limited to, the documents relied on to support the following claims described in the Victim Impact Statement:

   a. That Ms. Hankins used WCMC money to pay for the personal expenses of herself and her family, as stated on page 5;
   b. That Ms. Hankins paid herself approximately $385,000 between January 2017 and February 2018, and that she was not authorized to receive that amount of money during that time period, as described on page 7;
   c. That Ms. Hankins and her family received auto payment checks totaling $22,571 between January 2017 and September 2018, as described on page 7

9. The promissory note that Ms. Hankins signed in July of 2016, which is identified on page 3 of the Victim Impact Statement, as well as documents evidencing loans or other advancement(s) pursuant to that note.

10. Documents, including emails, that were created and/or dated between March 1, 2018, and September 30, 2018, that relate to the allegation described on page 4 of the Victim Impact Statement that Ms. Hankins "began to raise suspicions" by "requesting additional infusions of funds to pay vendors, discrepancies in her financial reporting, and her wish to begin selling tickets for the 2019 festival earlier than expected."

11. Documents, including emails, that were created and/or dated between March 1, 2018 and September 30, 2018, that relate to the claim described on page 6 of the Victim Impact Statement that Endeavor transferred $3,172,000 to WCMC at Ms. Hankins' request. This includes, but is not limited to, "the financial reporting from Ms. Hankins" regarding ticket sales and vendor obligations, as well as the "financial statements from Ms. Hankins," that the Victim Impact Statement referenced in support of this claim.

12. Documents, including emails, between or among Endeavor, WCMC, and/or Ms. Hankins that were created and/or dated between July 1, 2018 and September 30, 2018, regarding requests for money to pay vendors and other festival-related expenses, to the extent that this request is not covered by the above.

13. Documents, including bank records and cash collection sheets, that Exiger and/or Endeavor reviewed in connection with the allegation described on page 7 of the Victim

3

Impact Statement that $250,000 of cash collected during the 2018 festivals was missing, as well as documents to support the assumption that the funds were misappropriated or otherwise used for an improper purpose.

14. Documents related to the claim regarding a $600,000 journal entry, as described on page 7 of the Victim Impact Statement. This request includes, but is not limited to, the general ledger, income statement and other financial documents, as well as bank statements and records of artist payments and expenses, which the Victim Impact Statement referenced in connection with this claim. This request further includes documents and communications that support the conclusion that the journal entry was unsupported and an indication of fraud.

15. WCMC's bank statements between March 1, 2018 and September 30, 2018, to the extent that these documents are not covered by the requests above.

16. The promissory notes relating to the allegation on pages 6 and 7 of the Victim Impact Statement that Ms. Hankins obligated WCMC to approximately $7 million in loans from third parties, as well as the documents evidencing loans or other advancement(s) pursuant to those notes.

17. Documents that were analyzed, relied upon and/or used to support the claim on page 7 of the Victim Impact Statement that $2.64 million of the $7 million in third-party loans that Ms. Hankins caused WCMC to incur could not be accounted for, as well as documents that support the assumption that Ms. Hankins used the unaccounted-for funds for her own purposes.

18.  Documents(s) reflecting the "list of actual vendor obligations resulting from the 2018 festivals" that the Victim Impact Statement identified on page 7.

19. Documents that were relied on in compiling the list of vendor obligations referenced in request 18 above.

20. Documents relating to the Victim Impact Statement's claim on page 7 that Ms. Hankins did not report "over $5 million in obligations" to Endeavor. This request further includes, but is not limited to, the 600 invoices referenced in connection with this claim, as well as the documents showing Ms. Hankins's duty to report such obligations.

21. Documents, including emails, relating to the claim on pages 6 and 7 of the Victim Impact Statement that Ms. Hankins misrepresented payment obligations, including an obligation for $460,000. This further includes, but is not limited to, documents related to the underlying obligation and any payments on it.

22. Documents reflecting communications that Endeavor and/or WCMC received from vendors regarding payment in connection with the 2018 festivals. This includes, but is not limited to, documents reflecting "pleas from local vendors who had been stiffed by

4

Hankins and were struggling to pay employees and rent," as identified on page 6 of the Victim Impact statement.

23. Documents that show that some of the vendors requesting payment from the 2018 festivals had already been paid, as described on page 7 of the Victim Impact Statement.

24. Communications, including emails, between or among Endeavor, WCMC, and/or Anne Hankins regarding the need for funding to pay vendors and other providers of goods and services to the 2018 festivals, to the extent that these documents are not covered by the requests above.

25. Communications, including emails, reflecting internal discussion within Endeavor and/or WCMC, regarding funding of the payments to vendors and other providers of goods and services to the 2018 festivals requested by Ms. Hankins, to the extent that these documents are not covered by the requests above.

26. Communications between Endeavor, either directly or through its counsel, to agents of the Government regarding the prosecution of Ms. Hankins, including the allegations set forth in the Victim Impact Statement, supporting evidence of such allegations, losses incurred, the status of plea negotiations, and the wording of public statements (including statements contained within press releases) about her case. This request includes information regarding plea discussions and positions taken by the Government with the defendant.