JANET LEE HOFFMAN, OSB No. 781145
E-mail: janet@jhoffman.com
KATHERINE MARCHANT, OSB NO. 161147
E-mail: katie@jhoffman.com
Janet Hoffman & Associates LLC
1000 SW Broadway, Ste. 1500
Portland, OR 97205
Telephone: (503) 222-1125

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>ANNE HANKINS,<br><br>                Defendant. | Case No. 6:22-cr-00317-MC<br><br>**DEFENDANT ANNE HANKINS' MEMORANDUM IN SUPPORT OF MOTION FOR ISSUANCE OF RULE 17(C) SUBPOENAS** |

I. **Preliminary Statement**

Defendant Anne Hankins ("Ms. Hankins") moves under the Due Process Clause of the Fifth Amendment, the Compulsory Process Clause of the Sixth Amendment, and Federal Rule of Criminal Procedure 17(c) for the issuance of a subpoena *duces tecum* directing pre-sentencing production of documents from WCMC Holdings, LLC, William Morris Endeavor Entertainment, LLC, and WME IMG, LLC (collectively "Endeavor"), as well as documents from WCMC, LLC ("WCMC").[1]

---

[1] These are the entities identified in the Victim Impact Statement that the Government submitted to the Court, defense, and Probation Office on January 17, 2023, on behalf of Endeavor and WCMC. According to the Victim Impact Statement, Endeavor and WCMC are jointly represented by the same counsel. The Victim Impact Statement does not

The documents sought by subpoena relate to the matters underlying the Victim Impact Statement that the Government submitted on behalf of Endeavor and WCMC on January 17, 2023. The documents requested are both necessary and relevant to the defense because they will enable Ms. Hankins to fully respond to the factual allegations set forth in the Victim Impact Statement, as further described in Ms. Hankins' Motion to Continue Sentencing (ECF No. 30).

## II.    Documents requested

Ms. Hankins moves under Federal Rule of Criminal Procedure 17(c) to serve subpoenas on Endeavor and WCMC for the materials and data that it reviewed and relied upon in reaching the conclusions and arguments set forth in its Victim Impact Statement. The Victim Impact Statement contains a host of factual allegations, which it argues are relevant to the Court's sentencing determination under 18 U.S.C. § 3353(a) and support a sentence of incarceration. The facts alleged extend beyond the scope of the facts set forth in the plea agreement and Ms. Hankins' understanding of the Government's theory of prosecution, as further described in the Motion to Continue. Among other claims, the Victim Impact Statement alleges that Ms. Hankins stole or otherwise misappropriated funds from WCMC for her own personal use and further claims that WCMC is also a victim of her conduct. As set forth in Ms. Hankins' Motion to Dismiss and Motion to Continue, these allegations go to the heart of her defense at sentencing.

The Victim Impact Statement purports to base its factual allegations and conclusions on documentary evidence, including WCMC records, such as bank statements, monthly financial reports prepared by Ms. Hankins, promissory notes, journal entries, cash collection sheets, promissory notes, artist and vendor contracts, invoices and payment records, as well as email

---

specify which allegations or materials belong to which specific entity, therefore, Ms. Hankins is seeking authorization to serve each of the entities named in the Victim Impact Statement.

MEMO IN SUPPORT OF MOTION FOR ISSUANCE OF RULE 17(C) SUBPOENAS – 2
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

communications. The Victim Impact Statement also relies upon a forensic audit of WCMC conducted by Exiger, LLC. According to the Victim Impact Statement, Endeavor engaged Exiger in or around September 2018 to conduct a forensic investigation of WCMC after Ms. Hankins "began to raise suspicions at Endeavor by requesting additional infusions of funds to pay vendors, discrepancies in her financial reporting, and her wish to begin selling tickets for the 2019 festival earlier than expected."

Accordingly, Ms. Hankins seeks the documents and data on which Endeavor and WCMC relied in preparing their Victim Impact Statement, as well as the relevant communications between Endeavor, WCMC and Exiger regarding Exiger's investigation and findings. Ms. Hankins further seeks communications between the Government and Endeavor regarding Endeavor's allegations. Specifically, Ms. Hankins wishes to obtain the following:

1. Exiger's final report, as well as any drafts that Exiger prepared, based on its investigation.

2. Documents and communications that Exiger reviewed during its investigation and/or that Exiger relied upon in formulating its conclusions.

3. Documents reflecting any questions posed by Endeavor to Exiger as part of the scope of work that Exiger was retained to undertake relating to its investigation.

4. Documents reflecting notes, summaries, analyses, and/or internal memoranda taken or created by Exiger during its investigation.

5. Internal communications, including emails and text messages, within Endeavor and/or WCMC regarding Exiger's investigation and/or its findings. This request includes communications between Endeavor and WCMC. This request further includes, but is not limited to, communications regarding the decision to retain Exiger, the terms of Exiger's engagement, the scope of Exiger's review, Exiger's reports and drafts thereof, and any assumptions that Endeavor asked Exiger to make in connection with its investigation and report.

6. Communications between or among Endeavor and/or WCMC, on the one hand, and Exiger, on the other hand, relating to Exiger's investigation and/or findings, to the extent that this request is not covered by the above.

7. Documents used to support the claim set forth in the Victim Impact Statement that WCMC is a victim of Ms. Hankins' conduct.

8. Documents used to support the allegations set forth in the Victim Impact Statement that Ms. Hankins stole money from or otherwise misappropriated money from WCMC for her personal benefit, or for any other purpose. This includes, but is not limited to, the documents relied on to support the following claims described in the Victim Impact Statement:

    a. That Ms. Hankins used WCMC money to pay for the personal expenses of herself and her family, as stated on page 5;
    b. That Ms. Hankins paid herself approximately $385,000 between January 2017 and February 2018, and that she was not authorized to receive that amount of money during that time period, as described on page 7;
    c. That Ms. Hankins and her family received auto payment checks totaling $22,571 between January 2017 and September 2018, as described on page 7

9. The promissory note that Ms. Hankins signed in July of 2016, which is identified on page 3 of the Victim Impact Statement, as well as documents evidencing loans or other advancement(s) pursuant to that note.

10. Documents, including emails, that were created and/or dated between March 1, 2018, and September 30, 2018, that relate to the allegation described on page 4 of the Victim Impact Statement that Ms. Hankins "began to raise suspicions" by "requesting additional infusions of funds to pay vendors, discrepancies in her financial reporting, and her wish to begin selling tickets for the 2019 festival earlier than expected."

11. Documents, including emails, that were created and/or dated between March 1, 2018 and September 30, 2018, that relate to the claim described on page 6 of the Victim Impact Statement that Endeavor transferred $3,172,000 to WCMC at Ms. Hankins' request. This includes, but is not limited to, "the financial reporting from Ms. Hankins" regarding ticket sales and vendor obligations, as well as the "financial statements from Ms. Hankins," that the Victim Impact Statement referenced in support of this claim.

12. Documents, including emails, between or among Endeavor, WCMC, and/or Ms. Hankins that were created and/or dated between July 1, 2018 and September 30, 2018, regarding requests for money to pay vendors and other festival-related expenses, to the extent that this request is not covered by the above.

13. Documents, including bank records and cash collection sheets, that Exiger and/or Endeavor reviewed in connection with the allegation described on page 7 of the Victim Impact Statement that $250,000 of cash collected during the 2018 festivals was missing, as well as documents to support the assumption that the funds were misappropriated or otherwise used for an improper purpose.

14. Documents related to the claim regarding a $600,000 journal entry, as described on page 7 of the Victim Impact Statement. This request includes, but is not limited to, the general ledger, income statement and other financial documents, as well as bank statements and records of artist payments and expenses, which the Victim Impact Statement referenced in connection with this claim. This request further includes documents and communications that support the conclusion that the journal entry was unsupported and an indication of fraud.

15. WCMC's bank statements between March 1, 2018 and September 30, 2018, to the extent that these documents are not covered by the requests above.

16. The promissory notes relating to the allegation on pages 6 and 7 of the Victim Impact Statement that Ms. Hankins obligated WCMC to approximately $7 million in loans from third parties, as well as the documents evidencing loans or other advancement(s) pursuant to those notes.

17. Documents that were analyzed, relied upon and/or used to support the claim on page 7 of the Victim Impact Statement that $2.64 million of the $7 million in third-party loans that Ms. Hankins caused WCMC to incur could not be accounted for, as well as documents that support the assumption that Ms. Hankins used the unaccounted-for funds for her own purposes.

18. Documents(s) reflecting the "list of actual vendor obligations resulting from the 2018 festivals" that the Victim Impact Statement identified on page 7.

19. Documents that were relied on in compiling the list of vendor obligations referenced in request 18 above.

20. Documents relating to the Victim Impact Statement's claim on page 7 that Ms. Hankins did not report "over $5 million in obligations" to Endeavor. This request further includes, but is not limited to, the 600 invoices referenced in connection with this claim, as well as the documents showing Ms. Hankins's duty to report such obligations.

21. Documents, including emails, relating to the claim on pages 6 and 7 of the Victim Impact Statement that Ms. Hankins misrepresented payment obligations, including an obligation for $460,000. This further includes, but is not limited to, documents related to the underlying obligation and any payments on it.

22. Documents reflecting communications that Endeavor and/or WCMC received from vendors regarding payment in connection with the 2018 festivals. This includes, but is not limited to, documents reflecting "pleas from local vendors who had been stiffed by Hankins and were struggling to pay employees and rent," as identified on page 6 of the Victim Impact statement.

23. Documents that show that some of the vendors requesting payment from the 2018 festivals had already been paid, as described on page 7 of the Victim Impact Statement.

24. Communications, including emails, between or among Endeavor, WCMC, and/or Anne Hankins regarding the need for funding to pay vendors and other providers of goods and services to the 2018 festivals, to the extent that these documents are not covered by the requests above.

25. Communications, including emails, reflecting internal discussion within Endeavor and/or WCMC, regarding funding of the payments to vendors and other providers of goods and services to the 2018 festivals requested by Ms. Hankins, to the extent that these documents are not covered by the requests above.

26. Communications between Endeavor, either directly or through its counsel, to agents of the Government regarding the prosecution of Ms. Hankins, including the allegations set forth in the Victim Impact Statement, supporting evidence of such allegations, losses incurred, the status of plea negotiations, and the wording of public statements (including statements contained within press releases) about her case. This request includes information regarding plea discussions and positions taken by the Government with the defendant.

The proposed subpoenas are attached to this Motion as Exhibit 1 (WCMC Holdings, LLC), Exhibit 2 (William Morris Endeavor Entertainment, LLC), Exhibit 3 (WME IMG, LLC), and Exhibit 4 (WCMC, LLC).

### III. Standard for Rule 17(c) Subpoena

Rule 17(c) of the Federal Rules of Criminal Procedure implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor. *California v. Trombetta*, 467 U.S. 479, 485 (1984). The Rule provides a defendant with an opportunity to obtain evidentiary material by subpoena before sentencing. *United States v. Krane*, 625 F.3d 568, 574 (9th Cir. 2010) (citing *United States v. Winner*, 641 F.2d 825, 833 (10th Cir. 1981)). Rule 17(c)(1) states:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.

The material subpoenaed need not actually be used in evidence, but the court may issue a subpoena on a party's good faith effort to obtain evidence. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). For the reasons explained in Section IV below, defendant is making this good faith request to obtain the above-requested documents for use as evidence in her defense.

In *United States v. Nixon*, 418, U.S. 683, 698 (1974), the Supreme Court outlined the standard that a movant for a subpoena duces tecum must meet in criminal cases. Fundamentally, "[a] subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise." *Id.* The Supreme Court observed that a Rule 17(c) subpoena, while not intended to provide a means of discovery, is designed to expedite the trial by providing a time and place before trial for the inspection of subpoenaed evidentiary materials. *Id.* at 698-99 (internal citations omitted). Under the governing standards for a Rule 17(c) subpoena, a moving party must show:

> (1) that the information is evidentiary and relevant; (2) that it is not otherwise procurable in advance through the exercise of due diligence; (3) that the party seeking production cannot properly prepare for post-trial motions or sentencing without advance inspection; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Krane*, 625 F.3d at 574 (citing *Winner*, 641 F.2d at 833). In short, a movant for a subpoena, "in order to carry his burden, must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Nixon*, 418 U.S. at 700.

The records Ms. Hankins seeks here are specific and narrow in scope. Ms. Hankins asks to obtain those records that Endeavor and WCMC reviewed or relied upon in preparing its Victim Impact Statement, as well as the relevant communications in connection with the same.

Moreover, as shown below, the documents are relevant to the outcome of the sentencing proceedings.

### IV.   Relevancy of information sought

The specific information requested is relevant to Ms. Hankins sentencing proceeding, as further explained in the Motion to Continue Sentencing (ECF No. 31). The allegations set forth in the Victim Impact Statement are relevant to the Court's assessment of the factors set forth in 18 U.S.C. § 3553(a). In order to meaningfully confront Endeavor and WCMC's facts and arguments, Ms. Hankins needs access to the materials that Endeavor and WCMC relied upon. This includes WCMC's business records, as well as the materials related to Exiger's forensic investigation of WCMC, the conclusions of which the Victim Impact Statement references in support of its claims. In order to assess the validity of Exiger's conclusions, Ms. Hankins needs to review the report, the materials that Exiger relied upon and the associated communications between Endeavor and/or WCMC and Exiger.[2]

For example, the Victim Impact Statement claims that Ms. Hankins used WCMC funds for her own purposes — an allegation that is not part of the plea agreement and was not raised during negotiations. The Victim Impact Statement references Exiger's findings that there were several million dollars of missing or unaccounted-for cash and that Exiger presumed that such discrepancies were due to Ms. Hankins pocketing money. Ms. Hankins cannot challenge such a conclusion without access to the documents on which Exiger relied and the communications between Endeavor and Exiger regarding assumptions that Endeavor asked Exiger to make.

In addition to the materials underlying the Victim Impact Statement, communications between Endeavor and the Government are also relevant. Ms. Hankins has requested communications related to the allegations set forth in the Victim Impact Statement. Statements that the Government made, or evidence that it developed, that impeach Endeavor's claims would

be exculpatory and helpful to Ms. Hankins' ability to respond. Communications between the Government and Endeavor are also relevant to issues left open following the denial of Ms. Hankins' Motion to Dismiss. In the Motion to Dismiss and related pleadings, Ms. Hankins asserted that the false and inflammatory statements in the Government's press release aligned with Endeavor's claims in its civil suit against Ms. Hankins, not the Government's theory of prosecution. *See* Motion to Dismiss at 11 (ECF No. 14). Endeavor has used the Government's quotes from the press release as evidence in its civil proceeding against Ms. Hankins (*see id.*), and the Victim Impact Statement similarly relies on the Government's false characterization of Ms. Hankins as a "serial fraudster." The *Brady* obligation applies to constitutional motions, and evidence that Endeavor or WCMC impacted the drafting or distribution of the Government's press release would be an improper influence — and further relevant to the collateral consequences, including reputational damage, that Ms. Hankins has already suffered. *See e.g., United States v. Lopez*, 106 F.3d 309, 311 (9th Cir. 1997) (affirming three-level downward departure where prosecutor's misconduct in dealing with defendant without his counsel present prejudiced his opportunity to possibly obtain a better plea bargain).

V.     **Admissibility of information sought**

The Federal Rules of Evidence do not strictly apply at sentencing. Fed. Rules Evid. R. 1101(d)(3). Thus, for example, hearsay evidence is admissible at sentencing, so long as it is "accompanied by some minimal indicia of reliability." *United States v. Littlesun*, 444 F.3d 1196, 1199, 1200 (9th Cir. 2006) (citing *United States v. Berry*, 258 F.3d 971, 976 (9th Cir. 2001)). Furthermore, a court is entitled to exercise wide discretion as to what types of evidence may be used to determine a defendant's sentence. *See Pepper v. United States*, 562 U.S. 476, 487-88 (2011). The evidence in question here would be reliable and helpful in determining Ms. Hankins' sentence because it would help the Court reach an accurate determination as to the accuracy of the allegations set forth in the Victim Impact Statement, including whether WCMC meets the

statutory definition of a "crime victim" for purposes of the Crime Victims Rights Act; it would, therefore, be admissible at sentencing.

## V.     Conclusion

Based on the foregoing, Ms. Hankins requests that the Court grant her motion to issue a Rule 17(c) subpoena *duces tecum* to WCMC Holdings, LLC, William Morris Endeavor Entertainment, LLC, WME IMG, LLC, and WCMC, LLC for the pretrial production of the above-described documents and communications.

//

DATED this 25th day of January, 2023.

Respectfully submitted,

s/Janet Hoffman
JANET HOFFMAN, OSB No. 781145
KATHERINE MARCHANT, OSB No. 161147
Janet Hoffman & Associates LLC
1000 SW Broadway, Ste. 1500
Portland, OR 97205
Phone: (503) 222-1125
Email: janet@jhoffman.com
Attorneys for Defendant Anne Hankins