**Matthew J. Kalmanson,** OSB No. 041280
E-mail:  mjk@hartwagner.com
**Blake H. Fry,** OSB No. 100128
E-mail:  bhf@hartwagner.com
**HART WAGNER LLP**
1000 SW Broadway, Twentieth Floor
Portland, OR 97205
Telephone:  (503) 222-4499
Facsimile:  (503) 222-2301

      Of Attorneys for Non-Parties WCMC Holdings, LLC,
      William Morris Endeavor Entertainment, LLC,
      WME IME, LLC, and WCMC, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 6:22-cr-00317-MC |
| Plaintiff, | |
| v. | NON-PARTIES (1) WCMC HOLDINGS LLC; (2) WILLIAM MORRIS ENDEAVOR ENTERTAINMENT LLC; (3) WME IME, LLC; AND (4) WCMC, LLC'S OPPOSITION TO HANKINS'S REQUEST FOR RULE 17(c) SUBPOENAS |
| ANNE HANKINS, | |
| Defendant. | |

WCMC Holdings, LLC; William Morris Endeavor Entertainment, LLC; and WME IME, LLC (collectively, "Endeavor"); and WCMC, LLC (collectively with Endeavor, the "Victims") oppose Hankins's Motion for Rule 17(c) subpoenas (the "Motion").

### 1. Introduction

Following Defendant Anne Hankins's ***admission that she defrauded Endeavor out of $1.5 million*** in a scheme that lasted at least ***18 months*** and involved ***numerous*** instances of fraudulent conduct, Victims exercised their statutory right to submit a victim impact statement (the "VIS"). The Crime Victims' Rights Act (the "CVRA") gives Victims substantive rights to be heard at sentencing and also "to be reasonably protected from the accused." 8 U.S.C. § 3771(a)(1). This Court has a statutory obligation to enforce those rights. *Id.* at § 3771(b).

Yet Hankins now asks this Court to allow broad, unspecific discovery from the victims of her crimes, supposedly to rebut the VIS. She belligerently argues that she needs discovery to argue ***at sentencing*** that she did not steal money. (Dkt. 34 at 2.) But what possible difference is there between stealing and separating a victim from their money based on an 18-month fraudulent scheme? There is none. Hankins plainly has not accepted responsibility and feels no remorse, and her Motion is an attempt to inflict further harm on Victims. The Motion is nothing but another side-show, meant to distract from the serious crimes that Hankins committed and their impact on Victims, akin to the "dispute" over whether she is a fraudster or serial fraudster.

Hankins fails to provide ***any*** authority that supports her Motion, because discovery from a victim to rebut a VIS is not appropriate. An unsworn VIS is not testimony, and the Court may consider it for whatever the Court believes it to be worth. Hankins may also be heard at sentencing, but she has no "due process" right to discovery from a victim to rebut a VIS. Courts are unanimous that there is no constitutional right to cross-examine a victim about a VIS, and

they have refused to allow a defendant to chill rights guaranteed under the CVRA in this manner. Hankins's subpoenas are no different.

Perhaps the most surprising part of Hankins's Motion is that she did not disclose that **she already received from Victims over 1,700,000 pages of documents**, after serving almost identical discovery requests on Victims in a pending arbitration. Not only did Hankins receive the primary documents that show her fraud, she also received over a million and a half pages of documents from WCMC's computers, as well as internal documents from Endeavor.

**At Hankins's insistence**, the arbitrator entered a protective order allowing her to use those documents in this case. Then, days after Hankins filed this Motion, Hankins designated the exhibits she intends to use for the arbitration, which **included documents she now claims to need**. If Hankins has sufficient documents to begin trial in a much broader civil arbitration, it necessarily follows that she has what she needs for sentencing. If she really needs more—and she does not—she should get those documents from the Government, who also received millions of pages of documents from Victims.

These undisclosed facts provide reason alone to deny Hankins's Motion. There are additional reasons, described *infra*, including that her subpoenas do not come close to satisfying the applicable Rule 17 standard. Victims request that this Court deny the Motion.

**2. Hankins is Harassing Victims for Exercising their Rights Under the CVRA.**

Hankins's attempt to silence the victims of her crimes cannot be squared with the CVRA. Before enactment of the CVRA, the criminal justice system "functioned on the assumption that crime victims should behave like good Victorian children—seen but not heard." *Kenna v. U.S. Dist. Ct. for C.D.Cal.,* 435 F.3d 1011, 1013 (9th Cir. 2006); *see also U.S. v. Turner,* 367 F. Supp. 2d 319, 322 (E.D.N.Y. 2005) (noting CVRA enacted because "courts, prosecutors and law

NON-PARTIES (1) WCMC HOLDINGS LLC; (2) WILLIAM MORRIS ENDEAVOR ENTERTAINMENT LLC; (3) WME IME, LLC; AND (4) WCMC, LLC'S OPPOSITION TO HANKINS'S REQUEST FOR RULE 17(c) SUBPOENAS – 2

enforcement officers too often ignored or too easily dismissed the legitimate interests of crime

victims"). The CVRA changed this by "making victims independent participants in the criminal

justice process" and guaranteeing crime victims a number of substantive rights that they may

enforce. *Kenna,* 435 F.3d at 1013.

Those rights include the "right to be reasonably protected from the accused," the "right to

be reasonably heard at any public proceeding in the district court," including sentencing, the

"reasonable right to confer with the attorney for the Government," the "right to full and timely

restitution" and the "right to be treated with fairness and with respect for the victim's dignity and

privacy." 18 U.S.C. § 3771(a). The CVRA also requires this Court to "ensure that the crime

victim is afforded" those rights. *Id.* § 3771(b). The Federal Rules of Criminal Procedure

similarly requires the Court to "permit the victim to be reasonably heard." Rule 32(i)(B).

Based on those substantive rights in the CVRA, Victims provided this Court their VIS.

*See Kenna,* 435 F.3d at 1013-14 (noting CVRA grants victims right to be heard, in writing or in

person, depending on how victims "choose to express" themselves). It describes Victims' view

of their experience with Hankins, and the impact of her conduct on them and others.

The VIS is not sworn testimony, however, and numerous courts have held that defendants

have no right to cross-examine or confront a victim based on statements made for sentencing.

*See, e.g.*, *U.S. v. Grigg,* 434 F. App'x 530, 533–34 (6th Cir. 2011) ("Every court that has

examined this issue has held that there is no requirement to swear in CVRA victims."); *U.S. v.*

*Shrader,* 2010 WL 4781625, at *3 (S.D.W.V. Nov. 16, 2010) (denying request for subpoena for

information about victim because "a victim has the right to speak at sentencing about the impact

a defendant's criminal conduct"); *United States v. Dearing*, 2021 WL 672987, at *3 (E.D. Cal.

/ / /

NON-PARTIES (1) WCMC HOLDINGS LLC; (2) WILLIAM MORRIS ENDEAVOR
ENTERTAINMENT LLC; (3) WME IME, LLC; AND (4) WCMC, LLC'S OPPOSITION TO
HANKINS'S REQUEST FOR RULE 17(c) SUBPOENAS – 3

Feb. 22, 2021) ("Defendant has not cited to a single case, nor does the Court find any case,

holding that a victim's statement must be given under oath and subject to cross examination.").

Hankins is not even entitled to "full disclosure of all the information relied on by a court

at sentencing." *United States v. Eyraud,* 809 F.3d 462, 471 (9th Cir. 2015). As one court noted:

> Allowing the defendant to cross examine the victim on her
> statement is contrary the rights provided under the CVRA that the
> victim be "treated with fairness and with respect for the victim's
> dignity and privacy." . . . [T]he Senate sponsors of the law were
> clear in their articulation of the overall import of [this] provision:
> to promote a liberal reading of the statute in favor of
> interpretations that promote victims' interest in fairness, respect,
> and dignity. 'It is not the intent of this bill that its significance be
> whittled down or marginalized by the courts or the executive
> branch. This legislation is meant to correct, not continue, the
> legacy of the poor treatment of crime victims in the criminal
> process.' . . . . The Ninth Circuit has advised district court to give
> full effect to the CVRA and encourages "district courts to modify
> their own procedures so as to give full effect to the CVRA."
> *Kenna*, 435 F.3d at 1018. Requiring the victim to be subject to
> cross examination would be likely to inhibit victims from
> exercising their rights under the CVRA and would be contrary to
> the Act.

*Dearing*, 2021 WL 672987, at *3 (internal quotations and citations omitted).

The issues here are no different, as Hankins wants to issue broad, intrusive subpoenas to

her victims, supposedly to rebut their VIS. Requiring compliance would "be likely to inhibit

victims from exercising their rights under the CVRA," *id.,* and is ***not*** required by the

Constitution or any rule of procedure. This Court may consider the VIS for whatever it believes

it to be worth, but this Court should not allow Hankins to harass or retaliate against the victims

of her crimes for exercising rights guaranteed under the CVRA.

/ / /

/ / /

/ / /

NON-PARTIES (1) WCMC HOLDINGS LLC; (2) WILLIAM MORRIS ENDEAVOR
ENTERTAINMENT LLC; (3) WME IME, LLC; AND (4) WCMC, LLC'S OPPOSITION TO
HANKINS'S REQUEST FOR RULE 17(c) SUBPOENAS – 4

### 3.    Hankins Failed to Satisfy the Standard for a Subpoena at Sentencing.

Hankins argues that *United States v. Krane,* 625 F.3d 568 (9th Cir. 2010), allows her to subpoena a victim for documents to rebut a VIS.  That case says nothing of the sort.  In *Krane,* the government sought to subpoena the defendant's former tax lawyers for documents about crimes involving a tax shelter relevant to sentencing.  The Ninth Circuit did not rule on the propriety of the subpoena, but did note that a Rule 17(c) subpoena ***may*** be permissible for sentencing, although any right is not "unfettered."  *Id.* at 574.

The court said nothing, however, about authorizing a subpoena to a ***victim*** for documents supposedly relevant ***only to a VIS***.  Hankins did not provide one example of a court approving such a subpoena.  Instead, as stated in *Krane,*

> the party seeking production must show: (1) that the information is evidentiary and relevant; (2) that it is not otherwise procurable in advance through the exercise of due diligence; (3) that the party seeking production cannot properly prepare for post-trial motions or sentencing without advance inspection; and (4) that the application is made in good faith and is not simply intended as a general "fishing expedition."

*Id.* (quoting *United States v. Winner,* 641 F.2d 825, 833 (10th Cir. 1981)).

Hankins's subpoenas do not meet this standard.

> *(i.)    Hankins did not disclose that she received an incredible number of documents from Victims.*

The most glaring omission from Hankins's motion is her failure to disclose the sheer magnitude of discovery that she already has received from Victims.  This undisclosed information is relevant to whether the documents requested are "not otherwise procurable in advance through the exercise of due diligence," and she "cannot properly prepare for post-trial motions or sentencing."  *Id.*  It is also relevant to whether her Motion was made in "good faith."  *Id.*  It plainly was not.

NON-PARTIES (1) WCMC HOLDINGS LLC; (2) WILLIAM MORRIS ENDEAVOR
ENTERTAINMENT LLC; (3) WME IME, LLC; AND (4) WCMC, LLC'S OPPOSITION TO
HANKINS'S REQUEST FOR RULE 17(c) SUBPOENAS – 5

Victims and Hankins are parties in an arbitration in Los Angeles, which is on hold pending sentencing in this proceeding.  (Declaration of Matthew J. Kalmanson, ¶ 2.)  In that arbitration, Hankins received initial disclosures on the allegations of fraud, and then Hankins served document requests on Victims on the same subjects as in her subpoenas.  (*Id.*, ¶¶ 5-7, 10.)  When negotiating a protective order, Hankins insisted that she be able to use in the criminal matter the documents she received in the arbitration, and Victims and the arbitrator agreed.  (*Id.*, ¶ 4.)  The arbitrator entered an order allowing Hankins to use documents from the arbitration "in her defense of the Criminal Proceedings."  (*Id.*, Exhibit 8, ¶ 8.)

Victims then produced to Hankins an incredible amount of material, far more than necessary to make whatever argument she wishes to make at a criminal sentencing.  (*Id.*, ¶¶ 5-13.)  While there was litigation over the scope of the requests, Victims ultimately produced over ***1,700,000 pages of documents to Hankins.***  (*Id.*, ¶ 14.)  Then, days after filing this Motion, Hankins designated her exhibits for the arbitration, even though the arbitration is currently off the calendar.  (*Id.*, at ¶ 16.)  Those exhibits included documents Hankins claims to need in ***this*** case, such as communications with Victims' forensic fraud examiner, Exiger.  (*Id.*)

Given that Hankins received enough documents to be ready for a much broader civil arbitration, she plainly has enough for sentencing.  Indeed, pages 4 through 7 of the VIS describes Victims' experience with Hankins.  Documents relevant to those issues were produced to Hankins:

- Section 1(A) explains the fraud began when Victims purchased 51% of the company in 2013, when Hankins falsely represented that she had no criminal convictions.  Victims produced the 2013 agreement with the false representation.

- Section 1(B)(i) states Hankins tried to cover up her fraud by deleting documents, and it quotes emails between her and her IT consultant on this subject.  Victims produced those emails to Hankins.

- Section 1(B)(ii) describes Hankins's 18-month scheme to defraud using doctored bank statements. Victims produced the bank statements they received from Hankins during that period, and the real ones from the bank. The real bank statements also show any checks to Hankins and her family, and whether they were omitted from the statements sent to Victims.

- Section 1(B)(iii) describes millions of dollars of undisclosed promissory notes. Victims produced the notes they possess, including from 2016.

- Section 1(B)(iv) describes a ticket sale scheme. Victims produced at least one email on it.

- Section 1(B)(v) describes Endeavor's provision of short-term funding to WCMC at Hankins's request, as well as WCMC's payments to vendors using loans from Endeavor after the 2018 festivals. Victims produced an innumerable amount of emails between Hankins and Victims from this period, promissory notes between Victims and WCMC, and settlement agreements with vendors.

- Section 1(B)(vi) describes Exiger's investigation into missing cash and unauthorized payments. Victims produced the documents that Exiger provided to Victims on its 2019 investigation, including the cash collection sheets from the 2018 festivals and the vendor receipts believed to be false, as well as communications between Victims and Exiger.

(*Id.*, ¶¶ 6, 8, 9, 12.)

This is only a ***fraction*** of the documents produced to Hankins. The total production to Hankins and the Government was incredibly expensive and time-consuming.[1] But the result is that Hankins has ***much*** more information available to her at sentencing than the average criminal defendant who pleads guilty pre-indictment.

At a minimum, it is enough to allow Hankins to make whatever argument she wishes to make based on that production. If she wants to falsely tell this Court that she received no evidence to support the statements made in the VIS, she can do that. While Victims want to

---

[1] The Government executed a search warrant on WCMC on or around August 21, 2019, and it removed boxes of material from WCMC and copied some or all of the hard-drives of WCMC's computers. (Kalmanson Dec, ¶ 15.) WCMC produced over a million pages of emails. (*Id.*) The Government then issued a subpoena to Endeavor, which resulted in another production. (*Id.*)

NON-PARTIES (1) WCMC HOLDINGS LLC; (2) WILLIAM MORRIS ENDEAVOR ENTERTAINMENT LLC; (3) WME IME, LLC; AND (4) WCMC, LLC'S OPPOSITION TO HANKINS'S REQUEST FOR RULE 17(c) SUBPOENAS – 7

exercise their rights under the CVRA, they are not interested in "proving" their case against Hankins in this proceeding.

Hankins's failure to disclose the magnitude of discovery that she received from Victims is reason alone to deny the Motion. It proves that her Motion was not made in good faith, and that she cannot satisfy the standard for a Rule 17(c) subpoena.

### (ii.) The subpoenas are impermissible requests for discovery.

This Court should deny Hankins's Motion for the additional reason that it does not comply with the general standards that govern criminal subpoenas, certainly when applied to the limited issues that remain to be decided at sentencing. There is no right to discovery in criminal cases, and Rule 17 is not a discovery rule. *U.S. v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) (noting Rule 17(c) "is not intended to serve as a discovery tool"). Rather, it is a procedural device meant to expedite a criminal proceeding by expediting the production of documents or witnesses the moving party will use at that proceeding. *U.S. v. Nixon*, 418 U.S. 683, 698–99 (1974). Courts therefore "must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases . . . ." *Id*.

To ensure that Rule 17 is not misused as a discovery device, a party requesting a Rule 17 subpoena must meet her burden of showing the (1) relevancy, (2) admissibility, and (3) specificity of the requested materials. *Id*. at 700. Hankins's memorandum identifies these standards, but fails to apply them. She instead proclaims that her ***26 requests*** (with subparts and compound phrases) are "specific and narrow in scope," when they are nothing of the sort.

Other than a few exceptions for documents that she already has (specific bank statements and notes), the requests do not describe the specific documents she seeks or their content with any specificity. That failure makes it impossible for Hankins to explain why the specific

NON-PARTIES (1) WCMC HOLDINGS LLC; (2) WILLIAM MORRIS ENDEAVOR ENTERTAINMENT LLC; (3) WME IME, LLC; AND (4) WCMC, LLC'S OPPOSITION TO HANKINS'S REQUEST FOR RULE 17(c) SUBPOENAS – 8

documents requested would be relevant and admissible at sentencing. *United States v. Arditti*, 955 F.2d 331, 345–46 (5th Cir. 1992) (noting without information on the documents, a court is only left "to speculate as to the specific nature of their contents and its relevance").

The requests follow a similar structure. With a few exceptions, Hankins requests documents "regarding," "relating to" or "reflecting" a broad topic or category, which is defined to mean "constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, comments on, responds to, describes, analyzes, and/or pertains in any way to that subject." This is not "specific." Words and definitions of this sort are typically used in civil litigation, specifically to sweep in every possible document on a given topic. They are not appropriate in a criminal matter where the only remaining issues are sentencing and restitution.[2]

Courts that have examined this issue when ***the merits*** remain to be decided have found such requests improper, because requests for documents that "relate to" certain topics fail the specificity requirement. *See, e.g., U.S. v. Heine*, 2016 1270907 at *4 (D. Or. March 31, 2016) (noting request for "all documents relating to" certain categories does not satisfy specificity requirement); *U.S. v. Kipp*, 2016 WL 7209581 at *2 (W.D.N.C. Dec. 9, 2016) (quashing

/ / /

---

[2] Other than a few examples that reference specific documents that she already has, the requests seek documents "relating to" or "evidencing" some topic, or words of that nature, and therefore are unspecific discovery requests. Requests No. 5, 6, 9, 10, 11, 12, 14, 16, 18, 20, 21, 22, 24, 25, and 26 seek unidentified documents "relating to" or "regarding" or "evidencing" or "reflecting" certain topics. Requests No. 2, 3, 4, 7, 8, 13, 16, 17, 19, and 23 seek unidentified documents "relied on," supporting or "reflecting" certain conclusions. Requests No. 5, 8, 11, 20, 21, 22, and 26 use the unbounded phrase, "including" or "including but not limited to." Many of the requests are vague, and for others there is no connection between the request and even the VIS. One egregious example is the demand for ***all*** communications with the Government regarding Hankins's prosecution (Request No. 26). That request proves conclusively that Hankins is using Rule 17(c) for impermissible purposes. If Hankins really is entitled to such documents, she should demand them from the Government.

NON-PARTIES (1) WCMC HOLDINGS LLC; (2) WILLIAM MORRIS ENDEAVOR
ENTERTAINMENT LLC; (3) WME IME, LLC; AND (4) WCMC, LLC'S OPPOSITION TO
HANKINS'S REQUEST FOR RULE 17(c) SUBPOENAS – 9

subpoena for "all" documents "relating to" certain topics because such requests "cast a wide net in what appears to be a quest for pretrial discovery outside the Rule 16 framework"); *U.S. v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (affirming denial of subpoena because "not only is [the defendant] unable to specify what the items he requests contain, he is also unable to verify whether the requested material even exists").

Hankins only offers speculation that she ***might*** find relevant and admissible information that she ***might*** use to rebut the VIS. This is legally insufficient, particularly when she already received an incredible amount of material that she fails to describe to this Court. *See, e.g., U.S. v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996) (stating that the "specificity and relevance elements require more than the title of a document and conjecture as to its contents"); *U.S. v. RW Professional Leasing Services Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005) ("The fact that [the requested documents] are potentially relevant or may be admissible is not sufficient.").

Any number of cases illustrate that Hankins is not entitled to her subpoenas. In *United States v. Reed*, 726 F.2d 570 (9th Cir. 1984), for example, the defendant moved for a Rule 17(c) subpoena to an investigator (not the victim) for reports that might reveal other suspects. The court denied the request because speculation about what the reports ***might*** reveal did not satisfy the relevancy requirement. *See also, e.g., U.S. v. Mason*, 2008 WL 1909115 (D. Or. Apr. 25, 2008) (denying request for subpoena to an informant, which sought documents "related to" the government's investigation, because defendant's "speculation" that the information "might" help impeach the informant's credibility was a "fishing expedition"); *U.S. v. Ail*, 2007 WL 1229415, at *6 (D. Or. Apr. 24, 2007) ("The mere hope that the documents, if produced, may contain evidence favorable" to the defendant is not sufficient); *U.S. v. Caro*, 597 F.3d 608, 620 (4th

/ / /

Cir. 2010) ("The hope of obtaining favorable evidence does not justify" a subpoena when the movant "can only speculate as to what the requested information would have shown").

Those cases provide that a Rule 17(c) subpoena request must identify the *specific* document being sought, describe its *contents*, and *explain* why it would be relevant and admissible to the dispute before the Court. *Arditti*, 955 F.2d at 345–46. But Hankins's memo contains only generalities, and she does not try to connect her overbroad requests to the issues left to be determined. She instead only cites "18 U.S.C. § 3553(a)" (Dkt. 34 at 8), which is just the general sentencing statute. It is unknown why *any*—much less all—of the documents swept up by these requests are relevant to sentencing.

Because the requests are unspecific, and there is no attempt to connect them to the remaining sentencing issues, Hankins necessarily failed to show "admissibility." It is similarly impossible for Victims to lodge any objections based on admissibility given these broad, unspecific requests. Hankins's response is that *everything* is admissible at sentencing, so it must follow that there is *no* limitation on what she can request. That cannot possibly be true, or it would mean that Hankins is entitled to an unlimited amount of discovery at sentencing from the victims of her crimes, far beyond what she could get had she not pleaded guilty.

Hankins's request should be denied.[3]

/ / /

/ / /

/ / /

---

[3] It is important to Victims that the Court consider the VIS at sentencing, but Victims would rather withdraw it, other than Section 2 ("Endeavor's and WCMC's Losses"), if the Court concludes that the cost of its consideration is Victims' participation in protracted litigation with Hankins over discovery in this proceeding. Victims have asked only that this Court adopt the Government's recommended sentence. The admitted facts should be enough for those purposes, whether or not this Court hears from Victims.

**4.  Hankins is Not Entitled to Discovery on Restitution.**

Finally, even if the Court decides not to consider the VIS other than its statements about

loss, Victims are entitled to restitution, and Hankins has cited no authority that might allow her

discovery on that issue.  Hankins requests discovery on whether WCMC is a victim, but that is

another distraction because Hankins's conduct had the same impact whether or not WCMC—the

company left mired in debt and unable to meet its obligations—is considered a victim.

Most of the money that WCMC paid to vendors and others to make things right was

loaned to it by Endeavor, because WCMC could not pay those obligations without borrowing

money or using revenue from future festivals.  Victims' losses directly related to the scheme are

**$13,173,871.08,** whether or not WCMC is considered a victim.[4]  For that reason only, this Court

need not consider WCMC a victim, if doing so would require Victims to engage in expensive,

time consuming discovery with Hankins in this proceeding.

If the Court does not wish to consider anything in the VIS about money provided to

WCMC by Endeavor, restitution still should be the **$1,500,000** that Hankins stole, plus the

**$800,000** paid in 2013, the settlements with note-holders of **$331,000**, and the attorney fees/costs

spent due to the Government's investigation of **$135,070.93**.  That total would be **$2,766,070.90**.

**5.  Conclusion**

Victims request that the Court deny the Motion, sentence Hankins in accordance with the

Government's recommendation, and award an appropriate amount of restitution.

/ / /

/ / /

---

[4] The civil claims against Hankins do not provide a basis to reduce a restitution award.  *See, e.g.,*
*In re Morning Star Packing Co., LP*, 711 F.3d 1142, 1144 (9th Cir. 2013) (so stating).

Respectfully submitted this 3rd day of February, 2023.

HART WAGNER LLP

By:  */s/ Matthew J. Kalmanson*

Matthew J. Kalmanson, OSB No. 041280
Blake H. Fry, OSB No. 100128
Of Attorneys for Non-Parties WCMC
Holdings, LLC, William Morris Endeavor
Entertainment, LLC, WME IME, LLC, and
WCMC, LLC