JANET LEE HOFFMAN, OSB No. 781145
E-mail: janet@jhoffman.com
KATHERINE MARCHANT, OSB NO. 161147
E-mail: katie@jhoffman.com
Janet Hoffman & Associates LLC
1000 SW Broadway, Ste. 1500
Portland, OR 97205
Telephone: (503) 222-1125

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>    v.<br><br>ANNE HANKINS,<br><br>               Defendant. | Case No. 6:22-cr-00317-MC<br><br>DECLARATION OF HOWARD M. LEVINE In Support of Defendant Anne Hankins' Response to Non-Parties (1) WCMC Holdings, LLC; (2) William Morris Endeavor Entertainment, LLC; (3) WME IME, LLC; and (4) WCMC, LLC's Opposition to Ms. Hankins' Request for Rule 17(c) Subpoenas |

I, Howard M. Levine, hereby declare to the best of my belief and knowledge:

1.      I am an attorney and Special Counsel at Sussman Shank LLP in Portland, Oregon.

2.      I make this declaration based on my personal knowledge, and I am competent to testify to the matters stated herein.

//

//

//

Page 1 of 11 - DECLARATION OF HOWARD M. LEVINE In Support of Defendant Anne Hankins' Response to Non-Parties (1) WCMC Holdings, LLC; (2) William Morris Endeavor Entertainment, LLC; (3) WME IME, LLC; and (4) WCMC, LLC's Opposition to Ms. Hankins' Request for Rule 17(c) Subpoenas

3.    Our office is counsel to Anne Hankins and Willamette Country Music Concerts, Inc. (collectively, the "Respondents") in the arbitration pending before JAMS in Los Angeles, California styled as:

JAMS ARBITRATION

| | |
|---|---|
| WCMC HOLDINGS, LLC, a Delaware limited liability company; and WCMC, LLC, a Delaware limited liability company, | JAMS Arbitration No. 1220070904 |
| Claimants, | |
| v. | |
| ANNE HANKINS, an individual; and WILLAMETTE COUNTRY MUSIC CONCERTS, INC., an Oregon corporation, | |
| Respondents. | |

(the "Arbitration").

4.    On July 30, 2020, WCMC Holdings, LLC, WCMC, LLC, WME IMG, LLC and William Morris Endeavor Entertainment, LLC sued the Respondents in Lane County, Oregon Circuit Court (Case No. 20CV26779). Judge Suzanne Chanti of the Lane Court Circuit Court granted Respondents' Motion to Dismiss that case because the parties' contracts required that all disputes be resolved in arbitration before the arbitration and mediation service, JAMS, with the arbitration to be held in Los Angeles, California.

5.    On July 30, 2021, the Claimants in the Arbitration (WCMC Holdings, LLC, WCMC, LLC) (collectively, "Claimants"), through their counsel Jeremiah Reynolds of Eisner, LLP in Beverly Hills, California, filed a Demand for Arbitration with JAMS commencing the Arbitration. The arbitrator in the Arbitration is Richard Chernick.

6.    On June 13, 2022, Claimants produced their initial production of documents to

Respondents consisting of documents identified as Bates Nos.: CLAIMANTS_0000001 – CLAIMANTS_0001568.

7.     On June 13, 2022, Respondents served Requests for Production of Documents on Claimants seeking document production on multiple topics, including documents relating to Claimants' investigation of Anne Hankins and Claimants' communications with law enforcement regarding their claims against Ms. Hankins.

8.     On or about July 6, 2022, the undersigned received from Claimants additional production of 558,856 documents, consisting of approximately 1,290,151 pages.

9.     In a letter dated July 5, 2022 to the undersigned from Jeremiah Reynolds, Mr. Reynolds identified search terms his clients utilized in their production search, and stated on page 3 of his letter, that any requests directed to related non-parties William Morris Endeavor Entertainment, LLC, WME IMG, LLC, and its employees were not searched for or produced, as they are not parties to the Arbitration.  A copy of Mr. Reynolds' July 5, 2022 letter is attached as Exhibit 1.

10.     In order to process the volume of documents Claimants produced, Sussman Shank LLP utilized the cloud-based e-discovery platform Everlaw to allow for searches of large volumes of documents.

11.     On October 3, 2022, Arbitrator Chernick signed an Arbitration Summons for third-party production of documents directed to William Morris Endeavor Entertainment, LLC, WME IMG, LLC, and WME IMG Holdings, LLC (collectively, "Endeavor").  These Endeavor entities are related to the Claimants and are all part of a publicly traded company called Endeavor Group Holdings, Inc. (NYSE symbol "EDR").

12.     According to the "MarketWatch" website, as of February 9, 2022, Endeavor Group Holdings, Inc.  has a market capitalization of $15.43 billion, annual "Sales/Revenue" as of

December 31, 2021 of $5.08 billion, quarterly "Sales/Revenue" as of September 30, 2022 of $1.22 billion, and quarterly pre-tax income as of September 30, 2022 of $80.48 million.

13.    Claimants and Endeavor objected to the Respondents' document production requests.  At the instruction of Arbitrator Chernick, on November 1, 2022, Respondents filed Respondents' Combined Statement for Order to Compel Production of Documents that contained Claimants' and Endeavor's brief and supporting documents, as well as Respondents' brief and supporting documents.

14.    After conducting hearings on November 3 and November 9, 2022, on November 11, 2022, Arbitrator Chernick entered Rulings on Motions to Compel Documents (Order No. 9).  A copy of the November 11, 2022 Ruling is attached as Exhibit 2 (the "Chernick Ruling").

15.    The result of the Chernick Ruling was to narrow significantly the scope of Respondents' document production requests to Claimants and to Endeavor in at least the following ways that are relevant to the issues before this Court.  The Chernick Ruling:

a.    Limited document production to the narrow scope of production under the JAMS Discovery Protocols (see ruling on Request No. 1 on page 2, applied to other Requests in the Chernick Ruling).  The JAMS Discovery Protocols are generally narrower than the scope of discovery permitted under the Federal Rules of Civil Procedure;

b.    Limited production as follows:

i.    Respondents' Request No. 13 to Endeavor that requested production of documents on the investigation of Ms. Hankins was ordered, but was limited by the Chernick Ruling to a computer search of the following terms proposed by Claimants: "Investigat! and (Anne or Hankins)," and only covered the time period from January 1, 2016 to July 31, 2021; and

Page 4 of 11 - DECLARATION OF HOWARD M. LEVINE In Support of Defendant Anne Hankins' Response to Non-Parties (1) WCMC Holdings, LLC; (2) William Morris Endeavor Entertainment, LLC; (3) WME IME, LLC; and (4) WCMC, LLC's Opposition to Ms. Hankins' Request for Rule 17(c) Subpoenas

ii.     Respondents' Request No. 26 to Endeavor that requested production of documents on communications regarding Ms. Hankins with law enforcement was ordered, but was limited by the Chernick Ruling to a computer search of the following search terms proposed by Claimants: "("law enforcement" or FBI or "United States Attorney" or "AUSA") and (Anne or Hankins)," and only covered the time period from January 1, 2016 to January 1, 2019.

16.     On November 1, 2022, Respondents received from Mr. Reynold's office a "privilege log" for the document production received on July 6, 2022. The privilege log contained 2,915 entries regarding documents Claimants purportedly withheld based on a claim of privilege.

17.     Thereafter, the undersigned notified Claimants' counsel that the privilege log was deficient under California law because, among other things, the privilege log did not contain a brief description of the withheld documents for Respondents to determine if the privilege applies.

18.     On December 15, 2022, Respondents' counsel received from Mr. Reynolds' office approximately 17,000 pages of documents designed as Bates: WME 0000001-WME00016877.

19.     Despite my requests, neither Claimants nor Endeavor have identified which entity or entities' servers or locations were searched to produce documents (see January 4, 2023 email to Mr. Reynolds attached as Exhibit 3). Furthermore, none of Claimants' or Endeavor's document production identified which documents or categories of documents were responsive to Respondents' specific document requests, the Chernick Ruling, or how the production was organized, if at all.

20.     On December 22, 2022, Respondents' counsel received a privilege log for the December 15, 2022 document production. It contained 770 entries, for a total of 3,685

documents purportedly withheld on the basis of privilege. Like the first privilege log, Respondents assert the second privilege log is insufficient under California law.

21.     On January 4, 2023, the undersigned wrote to Mr. Reynolds regarding, among other things, the incomplete document production, the insufficiency of the privilege logs, and to schedule deposition in preparation for the Arbitration hearing that was then scheduled for February 27 to March 3, 2023.  Ex. 3.

22.     On January 6, 2023, the undersigned and Joshua Flood, also of Sussman Shank LLP, had a lengthy telephone conversation with Claimants' and Endeavor's attorneys Jeremiah. Reynolds, and Matthew Kalmanson of Hart Wagner LLP, regarding the issues in the January 4, 2023 letter.  The telephone call was inconclusive, but the parties agreed to follow up on the unresolved issues. However, the follow-up did not occur because, on January 9, 2023, JAMS notified the parties that the February 27 to March 3, 2023 Arbitration hearing was removed from the JAMS calendar. The disputes over the sufficiency and propriety of Claimants' document production,  privilege logs, and deposition scheduling are unresolved.

23.     Respondents and their counsel used Everlaw to search the more than 1.7 million pages of documents produced using a variety of search terms and key work searches.  Of the documents produced, Everlaw estimates that 100,000 or more documents are duplicates. In addition, based on our review, it appears thousands of other documents are near duplicates. After the July 6, 2022 production from Claimants, but before the December 15, 2022 production from the Endeavor, we removed some documents that were either duplicative or clearly non-responsive from the database to reduce costs. Given the overwhelming number of documents produced, it is not possible to have reviewed every document produced. Everlaw reports that Respondents and their counsel have expended more than 250 hours of in-system time searching for and reviewing documents.

24.     Based on our searches of production documents undertaken to date, we have not located:

a.     Any communication between Claimants or Endeavor, on the one hand, and law enforcement, the United States Attorney, or the FBI, on the other hand.  In that regard, during the January 6, 2023 telephone call with Mr. Reynolds referred to in paragraph 22 above, Mr. Reynolds informed the undersigned that all communication with law enforcement was through counsel.  With that new information, I personally searched "all documents" (with no limiting date criteria), and "Gavin Bruce." Everlaw did not identify any documents to or from Mr. Bruce.  I also searched "all documents" and "FBI" under "date sent" criteria for the period January 1, 2018 through February 6, 2023.  Everlaw identified seven documents, none having anything to do with communications from Claimants, Endeavor, or their counsel with an agency of law enforcement.  I also searched "all documents" and "AUSA" under "date sent" criteria for the period January 1, 2018 through February 6, 2023.  Everlaw identified 11 documents, none having anything to do with communications from Claimants, Endeavor, or their counsel with an agency of law enforcement.  I also searched "all documents" and "Jeremiah Reynolds" (with no limiting date criteria). Everlaw did not identify any documents.  I also searched "all documents" and the search term "Kalmanson" (with no limiting date criteria). Everlaw did not identify any documents.  Based on the Chernick Ruling limiting search parameters for Claimants and Endeavor's document production, it is possible that the production search would not include Mr. Reynolds or Mr. Kalmanson's office servers or communications from either of them or their law firms to law enforcement;

b.     I did not locate any communications to or from Exiger and anyone at Claimants, Endeavor, or their counsel dated after February 22, 2019 regarding Exiger's investigation of claims against Ms. Hankins. Using Everlaw, I personally searched "all

documents" using the search term "Exiger" under "date sent" criteria for the period of February 23, 2019 to July 31, 2021, the final date of the responsive period under the Chernick Ruling. That search revealed no documents. Also, presumably because of the limited time-frame of the search Arbitrator Chernick ordered, Claimants and Endeavor did not produce any documents relating to the investigation of Ms. Hankins after July 31, 2021. Out of an abundance of caution, I also searched "all documents" using the search term "Exiger" under "date sent" criteria for the period February 23, 2019 to February 7, 2023. That search also revealed no documents; and

c.      Claimants and Endeavor did produce two early discussion draft reports from Exiger, and a proposal for further investigative work as follows:

i.      A three-page "Summary of Unexplained Financial Discrepancies Between January 2017 and September 2018" noted as a "Draft-Subject to Change" dated October 31, 2018 (Bates: WME-00014187-00014189);

ii.      A three-page undated "high-level summary of Exiger's observations" captioned as "Draft-Subject to Change" "For Discussion Purposes Only," that appears to be prepared as of October 2, 2018 (Bates: WME-00014266-00014268); and

iii.      An undated six-page recommendation for "Phase 2 approach" that included "objectives", "steps completed", "proposed next steps" and "estimated budgets." (Bates: WME 00014270-00014275).

The Everlaw search did not locate or identify any retention agreements with Exiger, any other Exiger draft reports, any final reports, or any post-February 22, 2019 inquiries, reviews, analysis, status reports, summaries, or conclusions.

25.      In the Exiger "Phase 2 approach," discussed in paragraph 24(iii) above, Exiger recommends that Endeavor retain Exiger to do extensive additional work with budgeted fees

running in excess of $100,000. We did not locate any other budgets, proposals, or approaches for additional work, agreements to engage Exiger for the additional work, or any follow-up to the Phase 2 approach.

26.    On page 4 of Endeavor's Victim Impact Statement dated January 16, 2023, Matthew Kalmanson states that Endeavor retained Exiger, LLC in September 2018 to investigate claims against Ms. Hankins. In the July 30, 2021 Demand for Arbitration that Claimants (WCMC, LLC and WCMC Holdings, LLC) filed with JAMS, they asserted in paragraph 26 that Claimants paid $668,885 "in investigating Ms. Hankins's fraud."

27.    However, despite the nearly 3-year period between September 2018 when Endeavor retained Exiger, and July 30, 2021 when the Arbitration Demand was filed, based on our review of the Exiger documents produced, it appears the only documents Endeavor produced that contained any form of report or analysis relating to Exiger's investigation of Ms. Hankins were from October 2018 (less than two months after Exiger was retained), and as identified above, they were only "discussion drafts" "subject to change."

28.    On page 8 of the Non-Parties (1) WCMC Holdings, LLC; (2) William Morris Endeavor Entertainment, LLC; (3) WME IME, LLC; and (4) WCMC, LLC's Opposition to Hankins' Request for Rule 17(c) Subpoenas (ECF No. 41), Endeavor states in the fifth bullet point:

> Section 1(B)(vi) describes Exiger's investigation into missing cash and unauthorized payments. Victims produced the documents that Exiger provided to Victims on its 2019 investigation, including the cash collection sheets from the 2018 festivals and the vendor receipts believed to be false, as well as communications between Victims and Exiger.

29.     Based on our review of the documents produced involving Exiger, we did not locate any documents regarding a 2019 investigation, nor communications after February 22, 2019 between Endeavor and Exiger.

30.     On page 12 of the  January 16, 2023 Victim Impact Statement, Mr. Kalmanson argues that Endeavor incurred $135,070.93 "directly related to the criminal investigation," including costs and legal fees incurred in connection with, among other things "the production of close to a million pages of documents to the federal document [sic] at the government's request." Based on our review through Everlaw of the documents produced, we did not locate any documents supporting these charges.

31.     On  November 4, 2022, Arbitrator Chernick issued Procedural Order No. 10 ordering the parties to "exchange all documentary evidence, including reports of experts the intend to offer at the hearing, excepting only documents to be offered solely for impeachment, not later than January 27, 2023.  These documents designations may be supplemented by February 3, 2023."  The order also required the parties to identify "non-rebuttal percipient and expert witnesses expect to testify at the Hearing." A copy of Procedural Order No. 10 is attached as Exhibit 4.

32.     Even though the Arbitration hearing was taken off calendar, Arbitrator Chernick did not vacate Procedural Order No. 10, so Respondents attempted to comply with Arbitrator Chernick's directive as best possible, even though the parties still had ongoing discovery disputes, objections to Claimants' privilege logs were not resolved, discovery was not complete, and Respondents had not had the opportunity to depose any witnesses. Given the foregoing, Respondents' counsel did not represent to Claimants' counsel, and would not have represented to Claimants' counsel, that Respondent have received sufficient discovery to proceed with the

arbitration, or that Respondents were ready for the Arbitration hearing. Respondents were not then, and are not now, ready for trial.

33.     Claimants did not exchange any documents, exchange any expert reports, or identify any witnesses, either on January 27, 2023, or through supplemental disclosures on February 3, 2023.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: February 9, 2023

*/s/ Howard M. Levine*

_____

Howard M. Levine

**\*25022-004\LEVINE DECLARATION (04177336);2**



**EISNER, LLP**

July 5, 2022

*Via Electronic Mail Only*

Howard M. Levine                                 Gregory M. Bergman
Sussman Shank LLP                             Richard A. Fond
1000 S.W. Broadway, Suite 1400          BDG Law Group
Portland, OR 97205                              10880 Wilshire Blvd., Suite 1015
E-Mail: hlevine@sussmanshank.com     Los Angeles, CA 90024
                                                          E-Mail: gbergman@bdgfirm.com
                                                          E-Mail: rfond@bdgfirm.com

    **Re:**    *WCMC Holdings, LLC, et al. v. Anne Hankins, et al. - JAMS Reference No. 1220070904*

Counsel:

      We write to discuss the requests for production served by Respondents Anne Hankins and Willamette Country Music Concerts, Inc. ("Respondents") on Claimants WCMC Holdings, LLC and WCMC, LLC ("Claimants" and collectively with Respondents, the "Parties") on June 13, 2022 (the "RFPs").

      We enclose herewith Claimants' written responses to the RFPs. Most of Respondents' numerous RFPs are compound, wildly overbroad, seek irrelevant documents, and are in many cases incomprehensible. However, rather than just objecting, and in an effort to keep this proceeding moving forward, Claimants used the RFPs to create a list of search terms that we believe capture the documents that Respondents seek through their requests.

      Concurrently with this letter, our vendor also is sending you a hard drive containing Claimants' document production based on searches using the below-listed terms. The password to the hard drive is: nxrXgBVwJzKErNEMxxsx. The hard drive contains 195 gigabytes of data, consisting of a production of 558,856 documents. The document production bears Bates numbers CLAIMANTS_0001569 through CLAIMANTS_1290151, and it is marked "Confidential" pursuant to the Protective Order. After you review the document production, you may let us know if you believe there are categories of documents missing from the production that you believe are relevant and not covered by the existing search terms. We will then discuss with you whether additional searches are in order based on your requests.

**Search Terms for Document Production:**

- "Employment agreement" and Hankins
- "Willamette Country Music Festival"
- (crime OR criminal OR investigat*) AND Hankins
- (duty OR duties) AND Hankins
- (fire OR terminat* OR remov*) AND Hankins
- (property OR belongings) AND Hankins
- Aldean
- Appraisal
- Bank

Exhibit 1
Page 1 of 4

- Bank statement
- Bernstein
- Billick
- Board
- Booking curve
- Cameron
- Cape Blanco
- CBMF
- CCMF
- Chapman
- City National Bank
- Collateral
- Cook and Hankins
- Country Crossings
- Credit agreement
- Dan W/2 Hill
- Debt
- Employment AND agreement
- Endeavor
- Exiger
- Financial statement
- Fleitell
- Fraud
- fraud AND Hankins
- Front W/2 Gate
- Frontgate
- Funding
- Gallina
- Gibson
- Grimmett and Hankins
- Harper
- Holdings
- Hurst
- IMG
- inquiries@countrymusicconcerts.com
- inquiries@willamettecountrymusicfestival.com
- Insurance
- Jocelyn W/2 Ringer
- John W/2 Fisher

Exhibit 1
Page 2 of 4

9601 Wilshire Blvd. | 7th Floor | Beverly Hills, CA 90210
T 310.855.3200 | F 310.855.3201          www.eisnerlaw.com          152 West 57th Street | 48th Floor | New York, NY 10019
T 646.876.2600 | F 212.600.5020

July 5, 2022
Page 3 of 4

- Layton
- Leininger
- Loan
- Loan application
- Lublin
- McQueary
- Member* W/2 interests
- Membership interest
- MHCMF
- Mountain Home
- Note
- Orton
- Pacific Continental
- Pantry
- Promissory note
- Reporting pack*
- Ringer
- Selco
- Settlement
- Sheriff
- Smid
- Storage unit
- TAK
- Technical W/2 termination
- Terminat*
- Troutberry
- Ulrich
- Walter
- WCMF
- Whitesell
- Wire
- WME
- working W/2 capital
- Zussman

Finally, it appears from the improper definitions in the RFPs that you intended the RFPs to require William Morris Endeavor Entertainment, LLC, WME IMG LLC, and its employees to produce internal communications and documents in response to the RFPs.  As you know, these entities are not parties to this arbitration and are not

Exhibit 1
Page 3 of 4

9601 Wilshire Blvd. | 7th Floor | Beverly Hills, CA 90210
T 310.855.3200 | F 310.855.3201

www.eisnerlaw.com

152 West 57th Street | 48th Floor | New York, NY 10019
T 646.876.2600 | F 212.600.5020

required to respond to the RFPs.  We are willing to accept a subpoena to these entities and respond to narrowly-tailored requests to these entities.

All rights reserved.

Very truly yours,

Jeremiah Reynolds

JTR/ea

Exhibit 1
Page 4 of 4

## JAMS ARBITRATION
## No. 1220070904

**WCMC HOLDINGS, LLC; WCMC, LLC,**
       **Claimants and Respondents by Counterclaim,**

       **and**

**ANNE HANKINS, WILLAMETTE COUNTRY MUSIC CONCERTS, INC.,**
       **Respondents and Counterclaimants.**
_____

## <u>RULINGS ON MOTIONS TO COMPEL DOCUMENTS</u>
## <u>(ORDER NO. 9)</u>

       Respondents seek further documents in response to their Requests for Documents (Set 1) and subpoenas to entities affiliated with Claimants. A hearing was conducted on November 3, 2022, and a second hearing on November 9, 2022. Counsel exchanged letters on November 10 and 11, 2022.

<u>Appearances</u>

       Jeremiah Reynolds, Esq.
       Eisner, LLP
       9601 Wilshire Boulevard, 7th Floor
       Beverly Hills, CA 90210
       310/855-3200
       jreynolds@eisnerlaw.com

       Matthew J. Kalmanson, Esq.
       Hart Wagner LLP
       1000 S.W. Broadway, 20th Floor
       Portland, OR 97205
       503/222-2301
       MJK@hartwagner.com
       Counsel for Claimants

       Gregory M. Bergman, Esq.
       BDG Law Group
       10880 Wilshire Boulevard, Suite 1015
       Los Angeles, CA 90024
       310/470-6110

Exhibit 2
Page 1 of 8

gbergman@bdgfirm.com

Howard M. Levine, Esq.
Joshua G. Flood, Esq.
Sussman Shank LLP
1000 S.W. Broadway, Suite 1400
Portland, OR 97205-3089
503/227-1111
hlevine@sussmanshank.com
Counsel for Respondents

1.  **Subpoenas to Affiliated WME entities ("WME") (summons issued on October 3, 2022, served October 7, 2022); response to summons on October 17, 2022**

Request No. 1: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email; Ex. B to Application). Those documents shall be produced subject to the following limitation per JAMS Discovery Protocols. Document requests

- should be limited to documents that are directly relevant to significant issues in the case or to the case's outcome;
- should be restricted in terms of time frame, subject matter and persons or entities to which the requests pertain; and
- should not include broad phraseology such as "all documents directly or indirectly related to."

The overbreadth of the phrase "all documents" can be cured by the substitution of the formulation "documents sufficient to show . . ."

The issue of broader search terms presented in response by Respondents (*see* 9/13/22 (Ex. B to Application) and 9/18/22 email (Ex. C to Application): The search terms suggested by Claimants comply with the Discovery Protocols (documents directly related to significant issues in the case; Respondents' reformulation generally does not.

WME agreed to produce certain responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited above.

Time frame of Responsive Documents: Claimants' proposed search terms (Ex. B to Application) are reasonable and shall apply except as indicated below.

To the extent Respondents believe that not all responsive documents have been produced, all counsel are cautioned that the Arbitrator will expect complete

2

Exhibit 2
Page 2 of 8

production of responsive, non-privileged documents; such documents not produced in discovery will not be admitted at the hearing, and the Arbitrator may impose sanctions on a party violating this order including the drawing of adverse inferences. *See* JAMS Rule 29.

Request No. 2: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1.

Request No. 3: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1.

Request No. 4: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1.

Request No. 5: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1 (documents "sufficient to show" as to each loan or advance).

Request No. 6: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1 (documents "sufficient to show" as to each loan or advance).

Request No. 7: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1 (documents "sufficient to show" as to each loan or advance).

Request No. 8: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1 (documents sufficient to show each loan or advance).

Request No. 9:  Objections overruled; production required as limited by the order regarding Request No. 1.

Request No. 10:  Objections overruled; production required as limited by the order regarding Request No. 1

Request No. 11:  Objection re overbreadth and burden sustained without prejudice to issuance of a narrower formulation focused on issue in dispute.

Exhibit 2
Page 3 of 8

Request No. 12:  Objection re overbreadth and burden sustained without prejudice to issuance of a narrower formulation to documents directly relevant to significant issues in dispute (proposed reformulation in November 10, 2022, letter is still overbroad).

Request No. 13: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1. Timeframe of responsive documents – expand end date to the date of the filing of this arbitration on July 31, 2021.

Request No. 14: This request primarily seeks documents supporting Respondents' counterclaims. To the extent it is relevant to Claimants' damage claims, responsive documents would be expected to be provided in response to requests that address that subject directly.  Objections are therefore sustained based on the provisions of JAMS Rule 31(b) ("The Arbitrator may preclude a party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative defense.")  This ruling is without prejudice to Respondents' anticipated motion concerning the effect of Rule 31(b) on their requests for documents or subpoenas to third parties.

Request No. 15: This request primarily seeks documents supporting Respondents' counterclaims. To the extent it is relevant to Claimants' damage claims, responsive documents would be expected to be provided in response to requests that address that subject directly.  Objections are therefore sustained based on the provisions of JAMS Rule 31(b) ("The Arbitrator may preclude a party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative defense.")  This ruling is without prejudice to Respondents' anticipated motion concerning the effect of Rule 31(b) on their requests for documents or subpoenas to third parties.

Request No. 16: This request primarily seeks documents supporting Respondents' counterclaims. To the extent it is relevant to Claimants' damage claims, responsive documents would be expected to be provided in response to requests that address that subject directly.  Objections are therefore sustained based on the provisions of JAMS Rule 31(b) ("The Arbitrator may preclude a party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative defense.")  This ruling is without prejudice to Respondents' anticipated motion concerning the effect of Rule 31(b) on their requests for documents or subpoenas to third parties.

Request No. 17: This request primarily seeks documents supporting Respondents' counterclaims. To the extent it is relevant to Claimants' damage claims, responsive documents would be expected to be provided in response to requests that address that subject directly.  Objections are therefore sustained based on the provisions of JAMS Rule 31(b) ("The Arbitrator may preclude a party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from

Exhibit 2
Page 4 of 8

offering evidence of any affirmative defense.")  This ruling is without prejudice to Respondents' anticipated motion concerning the effect of Rule 31(b) on their requests for documents or subpoenas to third parties.

<u>Request No. 18</u>: This request primarily seeks documents supporting Respondents' counterclaims. To the extent it is relevant to Claimants' damage claims, responsive documents would be expected to be provided in response to requests that address that subject directly.  Objections are therefore sustained based on the provisions of JAMS Rule 31(b) ("The Arbitrator may preclude a party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative defense.")  This ruling is without prejudice to Respondents' anticipated motion concerning the effect of Rule 31(b) on their requests for documents or subpoenas to third parties.

<u>Request No. 19</u>: This request primarily seeks documents supporting Respondents' counterclaims. To the extent it is relevant to Claimants' damage claims, responsive documents would be expected to be provided in response to requests that address that subject directly.  Objections are therefore sustained based on the provisions of JAMS Rule 31(b) ("The Arbitrator may preclude a party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative defense.")  This ruling is without prejudice to Respondents' anticipated motion concerning the effect of Rule 31(b) on their requests for documents or subpoenas to third parties.

<u>Request No. 20</u>: This request primarily seeks documents supporting Respondents' counterclaims. To the extent it is relevant to Claimants' damage claims, responsive documents would be expected to be provided in response to requests that address that subject directly.  Objections are therefore sustained based on the provisions of JAMS Rule 31(b) ("The Arbitrator may preclude a party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative defense.")  This ruling is without prejudice to Respondents' anticipated motion concerning the effect of Rule 31(b) on their requests for documents or subpoenas to third parties.

<u>Request No. 21</u>: This request primarily seeks documents supporting Respondents' counterclaims. To the extent it is relevant to Claimants' damage claims, responsive documents would be expected to be provided in response to requests that address that subject directly.  Objections are therefore sustained based on the provisions of JAMS Rule 31(b) ("The Arbitrator may preclude a party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative defense.")  This ruling is without prejudice to Respondents' anticipated motion concerning the effect of Rule 31(b) on their requests for documents or subpoenas to third parties.

Exhibit 2
Page 5 of 8

<u>Request No. 22</u>: Objections overruled; production required as limited by the order regarding Request No. 1.  Timeframe of responsive documents – expand "to the present."

<u>Request No. 23</u>: Objections overruled; production required as limited by the order regarding Request No. 1. Timeframe of responsive documents – expand "to the present."

<u>Request No. 24</u>: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1. Timeframe of responsive documents – expand "to the present."

<u>Request No. 25</u>: Objections overruled; production required as limited by the order regarding Request No. 1. Timeframe of responsive documents – expand "to the present."

<u>Request No. 26</u>: Objections overruled; production required as limited by the order regarding Request No. 1. *See Block v. Sacramento Clinical Labs, Inc.,* 131 Cal. App. 3d 386, 389 (1982) (Civ. Code § 47 privilege "unlike" other privileges which function by the exclusion of evidence); *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157,1159 (1986) (Section 47 does not bar evidentiary use of otherwise privileged statements). The cases relied on by Claimants are distinguishable – they assert (correctly) that the § 47 privilege may bar claims but do not address the discovery of such statements in litigation. *Hagberg v. California Fed. Bank*, 32 Cal. 4th 350 (2004); *Jacob B. v. Cnty. of Shasta*, 40 Cal. 4th 948, 955 (2007).

The cases cited on counsel's November 11, 2022, letter (*Campbell* and *McSorley*) that suggest a party may not seek documents in one case for use in another, particularly where the other case is a criminal proceeding where discovery may be more limited, should be distinguished from circumstances where the documents sought in the first case are in fact directly relevant to significant issues in that case. The limitation imposed by reference to Request No.1 should be sufficient to focus on responsive communications directly relevant to significant issues in this case.

<u>Request No. 27</u>: Objections sustained; request is overbroad and seeks documents not directly relevant to significant issues in dispute.

<u>Request No. 28</u>: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1.

<u>Request No. 29</u>: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by

Exhibit 2
Page 6 of 8

the order regarding Request No. 1.  Claimants are not obligated to copy such documents as are in their physical possession for Respondents, and their offer to allow inspection and copying is sufficient.

<u>Request No. 30</u>: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1. Timeframe of responsive documents – expand "to the present."

<u>Request No. 31</u>: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1.

<u>Request No. 32</u>: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1.

<u>Request No. 33</u>: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1.

<u>Request No. 34</u>: WME agreed to produce responsive documents per search terms it presented (*see* 9/13/22 email). Those documents shall be produced as limited by the order regarding Request No. 1.

2. **RFPs served on Claimants (served June 13, 2022, response dated July 1, 2022).  Responses consisted of about 600,000 documents in two tranches (including Rule 17(a) production) (July 5, 2022, and August 5, 2022).**

Categories of documents in dispute:

o   Documents concerning discovery of the claims

o   Documents concerning investigation of the claims

o   Documents concerning analysis of the claims

o   Documents concerning quantification of damages as stated in the Demand (Demand, ¶ 27(7); RFP No. 1)

o   Identification of location(s) where search(es) occurred

As addressed in Section 1, above, the scope of document requests is limited by principles reflected in JAMS Discovery Protocols. These requests may overlap requests contained in the subpoena, and if so, separate additional production is not

Exhibit 2
Page 7 of 8

required.  Otherwise, documents that meet the limited scope of the Discovery Protocols shall be produced if that has not previously been accomplished.

o  Documents regarding communications with law enforcement (RFP No. 38) – *See* Request No. 26 in the subpoenas which covers this same topic.  *See* ruling regarding that Request which is incorporated by this reference.

o  Documents re insurance coverage – Request No. 30 in the subpoenas covers this topic and production is required to the same extent as reflected in the order re that Request (above).

o  Documents re WCMC Holdings, LLC's grant of third-party collateral in violation of WCMC, LLC (*see* Agreement (¶ 8.01(a) which prohibits transfer of any interest in WCMC, LLC): this request appears to relate to Respondents' counterclaims which are barred by JAMS Rule 31(b). Objections sustained without prejudice to Respondents 'pending motion relating to this issue.

o  Documents reflecting investigative reports and related documents; *see* Demand, ¶¶ 26, 27: Request No. 13 in the subpoenas covers this topic and production is required to the same extent as reflected in the order re that Request (above).

o  Responsive documents in counsel's office- 9th and 10th counterclaims – wrongful possession of documents and personal property of Hankins (*e.g*., laptop, personal books and records) (RFP No. 9).  This request appears to relate to Respondents' counterclaims which are barred by JAMS Rule 31(b). Objections sustained.

    Refusal to produce a privilege log: Claimants say they produced a privilege log. It shall be supplemented to the extent the production ordered above includes responsive documents which are withheld on grounds of privilege.  The Arbitrator defers any decision regarding the requirements for a complaint privilege log or its adequacy in the circumstances until it is actually before me.

    Date of Further Production:  December 15, 2022

    Date of Production of supplemental Privilege Log: December 22, 2022.

    DATED:        November 11, 2022

                                                    _____
                                                    Richard Chernick
                                                    Arbitrator

| | |
|---|---|
| **From:** | Howard M. Levine |
| **To:** | Jeremiah Reynolds; "Alexandra Achamallah"; Matthew Kalmanson; eaguilar@eisnerlaw.com |
| **Cc:** | W.S. Tab Wood; Janine E. Hume; Majesta P. Racanelli; Joshua G. Flood |
| **Subject:** | FW: WCMC Holdings, LLC, et al v. Anne Hankins, et al.; JAMS Ref #1220070904--Draft to review |
| **Date:** | Wednesday, January 4, 2023 4:27:19 PM |

Jeremiah,

Thanks for your email.

Friday will work for me, but 1 p.m. would be better. Please confirm.

My responses to your questions are as follows:

I do not know if Ms. Hankins will testify at the February 2nd sentencing hearing.  I have not said one way or another that she would or would not testify at the sentencing hearing

I do not believe Ms. Hankins' responses to the RFP's were inadequate. How are they inadequate in your view?

I provided PMK deposition topics to you on December 8, 2022.  Other than generally saying the topics are "overly broad or irrelevant in light of rulings by the Arbitrator," you have not identified a specific topic you oppose.  As I look at the topics, with the possible exception of items 5, 6, and 25, I don't see anything that would be implicated by any of the Arbitrator's rulings. Also, I am going to add a topic relating to document production "The facts relating to and the process by which Claimants, William Morris Endeavor Entertainment, LLC, WME IMG, LLC and WME IMG Holdings, LLC searched for and produced documents in discovery."  We believe many documents the Arbitrator ordered your clients and the subpoenaed entities to produce, expected to be helpful to Ms. Hankins' defense, have been withheld and not produced.  Also, despite my December 1, 2022 request, you have not identified the locations searched for production.

I reject your statement that "Ms. Hankins must be deposed before Claimants."  Your clients have spent more than $668,000 investigating Ms. Hankins since 2018.  There is no legal basis to deny Ms. Hankins' right to depose Claimants' witnesses until after you depose her. Ms. Hankins is entitled to exercise her constitutional 5th Amendment rights.  Ms. Hankins is also entitled to take depositions of Claimants and third-party witnesses regardless of whether she might testify.  In that regard, I want to confirm deposition dates between January 12-19 to depose the PMK witnesses, Mr. Lublin, Ms. Grimmett, and Mr. Gallina.

With respect to the two privilege logs you have provided, they fail to comply with California law.  *Catalina Island Yacht Club v Superior Court 242 Cal.App.4th 1116 (2015)* lists the specific requirements for the privilege log as:

- "the identity and capacity of all of the individuals who authored , sent or received each allegedly privileged document"

- "the document's date"

- "a brief description of the document and its contents or subject matter sufficient to determine whether the privilege applies" and

Exhibit 3
Page 1 of 6

- "the precise privilege or protection asserted"

In most cases, the privilege log your office provided on December 22, 2022 does not contain "a brief description of the document and its contents or subject matter sufficient to determine whether the privilege applies."  In almost all cases, the description is nothing more than a copy of the "re" line, which describes nothing.  Many entries do not even involve an attorney, so no privilege would apply.

The privilege log your office provided on November 1, 2022 is even more deficient.  Among other things, it does not include the basis of the privilege, and does not contain "a brief description of the document and its contents or subject matter sufficient to determine whether the privilege applies."  By way of example only,  a description of "Chop Chop info" (item 210) or "office Bills (item 201), 17-18 Country Crossings (Boots N Beach LLC).pdf (item 331),  or "17-18 Country Crossings (Boots N Beach LLC).pdf" (item 1983) are not compliant as they describe nothing.  In addition multiple entries do not show the withheld documents even involve an attorney (see e.g. items 604-605, 612-614, 1984, 2068-2073). When will you provide corrected privilege logs?

With respect to document production, we believe at least the following production in response to RFP's directed to Claimants and to third parties are deficient.  Only your clients and their related entities know what documents exist and what documents they withheld.  We have listed some examples of documents below that we believe should exist, but our list is not intended to be a complete list of responsive documents not produced. They are for illustration purposes only.

If you have fully complied with the Arbitrator's orders and produced all responsive documents, please confirm. If not, please immediately produce all responsive documents that have not been produced.

Request No. 1.

No production. WME did not produce any communications or any other documents relating to hiring Ms. Hankins.  The ordered (and agreed) search terms include the period of approximately two months prior to the time she was hired.

Request No. 2.

No production. WME did not produce any documents relating to the pre-suspension investigation of Ms. Hankins. WME did not produce any produce any communications or any other documents relating to suspension Ms. Hankins.  The ordered (and agreed) search terms include the period of approximately six weeks  prior to the time she was suspended.

Request No. 3.

No production. WME did not produce any documents relating to the pre-termination investigation of Ms. Hankins. WME did not produce any produce any communications or any other documents relating to the termination of  Ms. Hankins' employment . The ordered (and agreed) search terms cover the period of approximately more than two months  prior to the time her employment was terminated.

Exhibit 3
Page 2 of 6

Request No. 4.

No production.  WME did not produce any documents relating to "Membership interest" in WCMC, LLC or  WCMC  Holdings, LLC for the 4.5 year period covered by the Arbitrator's order and WME's agreed search terms.

Requests Nos. 5-8

Please confirm production is complete.

Requests Nos. 9-10.

Please confirm production is complete.

Request No. 12.

Production Incomplete.  You agreed to produce Account agreements and account statements, from July 2016 through March 30, 2018 inclusive for WCMC, LLC's accounts at City National Bank (account nos. 00127314535 and 127314535). None were produced.

Request No. 13.

Production Incomplete.  The only Exiger report produced was a draft dated October 31, 2018 (WME00014187). No subsequent draft reports or final reports were produced. No internal communications or other documents  regarding the Exiger draft report, including requests for additional information, responses to requests, discussions regarding the report,  or other related documents  were produced.  Note the timeframe covering production goes to July 31, 2021. No documents were produced relating to law enforcement.

Requests No. 22-26, 28.

No documents produced.

Request No. 30.

Production Incomplete.  Numerous Certificates of Insurance were produced. Some communications regarding insurance were produced (e.g. WME00000674-679, and 684-703, WME 00013555, WME 0011560, WME 00000674, WME00011901, WME00013817). However, documents and other communications relating to claims actually made, analysis of claims internally or by insurers or adjusters, carrier or adjuster communications regarding claims, coverage disputes, legal counsel involvement, response to claims, recoveries on claims, abandonment of claims, or settlement of claims were not produced.

Request No. 31.

Production Incomplete. No documentation as to evidence of debt, amount of advances, terms of repayment, when advances received and withholding percentages from sales as repayment, dates and amounts of repayment were produced.

Request Nos. 32-33.

Exhibit 3
Page 3 of 6

Production Incomplete.  Other than scores of copies of the 2013 Employment Agreement, 2013 Transaction Agreement, 2018 Employment Agreement, no documents were produced responsive this request.

RFP No. 38 to Claimants.

No documents produced.

Each of the deficiencies described above are prejudicing Ms. Hankins and impeding her ability to defend this case.

Respondents reserve all rights.

Thank you.


**Howard M. Levine**
Special Counsel
Sussman Shank LLP
1000 SW Broadway, Suite 1400 | Portland, OR 97205
O:  503.227.1111 | D:  503.243.1637
**Email** | **Bio** | **Web** | **vCard**

---

**From:** Jeremiah Reynolds <jreynolds@eisnerlaw.com>
**Sent:** Tuesday, January 3, 2023 1:23 PM
**To:** Howard M. Levine <hlevine@sussmanshank.com>; Alexandra Achamallah <AAchamallah@eisnerlaw.com>; Joshua G. Flood <jflood@sussmanshank.com>; W.S. Tab Wood <twood@sussmanshank.com>; janet@jhoffman.com; katie@jhoffman.com; gbergman@bdgfirm.com
**Cc:** Matthew Kalmanson <MJK@hartwagner.com>; Michael Glickman <MAG@hartwagner.com>; Niall Reynolds <nreynolds@eisnerlaw.com>
**Subject:** RE: WCMC Holdings, LLC, et al v. Anne Hankins, et al.; JAMS Ref #1220070904

Hi Howard, let's plan to speak on Friday at 11:00 a.m. PT if that works for you.  The only immediate issue I see is that Hankins has not paid the $62,750.00 deposit requested by JAMS despite the final request.  We have discussed this in the past, but I am assuming she will not be paying this amount even with the sentencing on February 3.  I will go ahead and inform JAMS and speak with my client about the issue unless I hear something different from you.

Here is what I would like to cover in the call on Friday.  I would appreciate if you could give me a more specific agenda on your side:

- We need confirmation that Hankins will be testifying after her sentencing on February 3 and no longer asserting the 5th. I believe you mentioned in the past that she would likely testify

Exhibit 3
Page 4 of 6

but needed to confirm.

- If she is testifying, we need some dates for her deposition which we have been seeking since the beginning of the case.  It is our position that Ms. Hankins must be deposed before Claimants are deposed since we have been prejudiced in the delay in taking her deposition and obtaining documents from her.

- Hankins has never properly responded to our RFPs on 5th Amendment grounds.  If she is going to participate and testify in the arbitration, we need to know if she intends to supplement her response and when.  We would like to have her supplemental written responses and documents at least 10 days in advance of any depositions in this case.

- We need to meet and confer about the deposition topics you previously sent, many of which are overly broad or irrelevant in light of rulings by the Arbitrator.




# EISNER, LLP

Jeremiah T. Reynolds
Partner

9601 Wilshire Blvd. | 7th Floor | Beverly Hills, CA 90210
T 310.855.3200 | D 310.888.4119 | F 310.855.3201
jreynolds@eisnerlaw.com | www.eisnerlaw.com

---

**From:** Howard M. Levine <hlevine@sussmanshank.com>
**Sent:** Monday, January 2, 2023 5:36 PM
**To:** Alexandra Achamallah <AAchamallah@eisnerlaw.com>; Joshua G. Flood <jflood@sussmanshank.com>; W.S. Tab Wood <twood@sussmanshank.com>; janet@jhoffman.com; katie@jhoffman.com; gbergman@bdgfirm.com
**Cc:** Matthew Kalmanson <MJK@hartwagner.com>; Michael Glickman <MAG@hartwagner.com>; Jeremiah Reynolds <jreynolds@eisnerlaw.com>; Niall Reynolds <nreynolds@eisnerlaw.com>
**Subject:** RE: WCMC Holdings, LLC, et al v. Anne Hankins, et al.; JAMS Ref #1220070904

Jeremiah,

I would like to schedule a call with you on Wednesday, Thursday, or Friday to discuss deposition scheduling, discovery, and other matters pertinent to the case.

Please let me know some times available and we can have a conversation.

Thank you.

**Howard M. Levine**
Special Counsel
Sussman Shank LLP
1000 SW Broadway, Suite 1400 | Portland, OR 97205
O:  503.227.1111 | D:  503.243.1637

Exhibit 3
Page 5 of 6

**Email | Bio | Web | vCard**

---

**From:** Alexandra Achamallah <AChamallah@eisnerlaw.com>
**Sent:** Thursday, December 22, 2022 4:42 PM
**To:** Howard M. Levine <hlevine@sussmanshank.com>; Joshua G. Flood
<jflood@sussmanshank.com>; W.S. Tab Wood <twood@sussmanshank.com>; janet@jhoffman.com;
katie@jhoffman.com; gbergman@bdgfirm.com
**Cc:** Matthew Kalmanson <MJK@hartwagner.com>; Michael Glickman <MAG@hartwagner.com>;
Jeremiah Reynolds <jreynolds@eisnerlaw.com>; Niall Reynolds <nreynolds@eisnerlaw.com>
**Subject:** WCMC Holdings, LLC, et al v. Anne Hankins, et al.; JAMS Ref #1220070904

Counsel,

Please find attached a privilege log for the December 15, 2022 document production by third parties
William Morris Endeavor Entertainment, LLC, WME ING, LLC, and WME IMG Holdings, LLC
(collectively, "WME").  Additionally, please find below a link to a small supplemental production of
documents by WME bearing Bates nos. WME00016878–WME00016959, which were inadvertently
not included in the December 15 production.  All documents are designated as "CONFIDENTIAL"
pursuant to the Protective Order.

- **Link:** https://ftpus.consilio.com/public/file/CCE6e8NZfkW6piT42X7hlQ/WME003.zip
- **Password:**  To be provided in a separate email.

Thanks,
Alex



**EISNER**, LLP

Alexandra Achamallah

9601 Wilshire Blvd. | 7th Floor | Beverly Hills, CA 90210
T 310.855.3200 | F 310.855.3201
aachamallah@eisnerlaw.com | www.eisnerlaw.com

Exhibit 3
Page 6 of 6

JAMS ARBITRATION
No. 1220070904

**WCMC HOLDINGS, LLC; WCMC, LLC,**
**Claimants,**

**and**

**ANNE HANKINS, WILLAMETTE COUNTRY MUSIC CONCERTS, INC.,**
**Respondents.**

## PROCEDURAL ORDER NO. 10

In Order No. 8, the Arbitrator granted a limited stay which the parties agreed could be entered so long as the hearing dates were changed to accommodate Respondent Hankins's criminal sentencing.[1] This order shall govern the further conduct of this proceeding.

1.    Exchange of Information.

(a)    The parties shall exchange all documentary evidence, including reports of experts they intend to offer at the Hearing, excepting only documents to be offered solely for impeachment, not later than January 27, 2023. These document designations may be supplemented by February 3, 2023.

(b)    Counsel shall identify all non-rebuttal percipient and expert witnesses expected to testify at the Hearing and shall indicate the manner in which each witness is expected to testify (in-person, telephonically or by video conference or by affidavit or declaration), not later than January 27, 2023. These witness designations may be supplemented by February 3, 2023.

(c)    Counsel shall file on the first hearing day a Joint Witness List including all witnesses expected to testify at the Hearing, in the approximate order in which they are anticipated to be called.

(d)    The purpose of the exchanges in this paragraph is to provide fair notice to the parties of documents and witnesses expected to be offered at the Hearing. Witnesses or documents not identified in accordance with these provisions will not be permitted to

---

[1] Certain other proposed motions in this case an in the criminal proceeding caused Order No. 8 to be issued on a "without prejudice" basis to account for further procedural developments.

Exhibit 4
Page 1 of 3

be offered at the hearing except on a showing of good cause, and particularly a showing as to why they were not so identified.

      2.    <u>Hearing Procedure</u>.

      (a)    The Hearing shall be conducted on February 27 and 28, 2023 and March 1-3, 2023, at the Century City Resolution Center of JAMS.  Hearings shall commence each day at 9:00 a.m.  The parties are encouraged to stipulate to agreed or uncontested facts and shall provide any stipulation to the Arbitrator at the commencement of the hearing in hard copy and electronic form (formatted to "Word").

      (b)    A Final Status Conference shall be conducted telephonically on February 17, 2023, at 8:00 a.m.  An agenda for the conference shall be provided a few days in advance of that date.

      (c)    <u>Bifurcation of Issues</u>.  The issues of the amount of attorney's fees and costs or punitive damages to which any party may be entitled pursuant to the Transaction Agreement or applicable law shall be bifurcated and determined subsequent to the Hearing.  The entitlement, if any, to either such award  shall be determined as part of the Hearing.

      (d)    Prehearing briefs may be filed not later than February 20, 2023.

      (e)    Hearing exhibits shall be pre-marked with consecutive Arabic numerals and a Joint Exhibit List shall be prepared not later than the first day of the Hearing.  The parties shall indicate on the Joint Exhibit List any objection to the introduction of any exhibit.  The Joint Exhibit List and objections shall be furnished to the Arbitrator at the commencement of the hearing.  Exhibits not objected to shall be deemed admitted at the commencement of the hearing.  One set of exhibits shall be prepared for the Arbitrator and one for the witnesses in addition to copies for counsel.  The Arbitrator also prefers to receive a copy of all exhibits in electronic form as described below.  All exhibits will be discarded 30 days after the issuance of the Final Award unless a party requests, in writing, that the exhibits be retained or returned.

      (f)    <u>Form of electronically submitted Exhibits</u>:  Exhibits shall be provided to the Arbitrator on flash drive(s) in the following .pdf format:

- Adobe Acrobat XI Standard (or later version)
- Searchable multi-page .pdf files,
- No password restrictions to access the document(s),
- Document Restriction for 'Printing' is set to 'Allowed,'
- Document Restriction for 'Changing the Document' is set to 'Allowed,'
- Document Restriction for 'Document Assembly' is set to ''Allowed,'
- Document Restriction for 'Content Copying or Extraction' is set to 'Allowed,'
- Document Restriction for 'Content Extraction for Accessibility' is set to

2

Exhibit 4
Page 2 of 3

'Allowed,'
- Document Restriction for 'Commenting' is set to 'Allowed.'

    (g)    If a party intends to utilize the services of a court reporter at the hearing, notice of that intention shall be given to the other side not later than January 7, 2023.

    (h)    <u>Award</u>. The Interim and Final Awards shall be prepared in accordance with the Agreement, the California Arbitration Act and the Rules and may be served by regular mail.

    (i)    All deadlines herein shall be strictly enforced. This Order shall continue in effect unless and until amended by subsequent order of the Arbitrator.

    DATED:    November 4, 2022

Richard Chernick
Arbitrator

3

Exhibit 4
Page 3 of 3