IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**UNITED STATES OF AMERICA**,

          Plaintiff,

  v.

**ANNE HANKINS**,

          Defendant.

      Case No. 6:22-cr-00317-MC-01

      **OPINION AND ORDER**

**MCSHANE, Judge:**

        Pending before the Court are Defendant's Motion to for Authorization to issue Rule 17(c) Subpoenas, ECF No. 33, and the Government's corresponding Motion to Quash, ECF No. 43. On September 28, 2022, the Court accepted Defendant's guilty plea to Wire Fraud and Money Laundering. ECF No. 11. In that petition, Defendant admitted the following facts as true:

> I was president of Willamette Country Music Concerts, LLC ("WCMC"), located in Eugene, Oregon. Hankins' sole-member limited liability company, WCMC, Inc., owned 49% of WCMC. William Morris Endeavor Entertainment, LLC and/or its related entities (hereinafter referred to as "Endeavor"), owned a 51% controlling interest in WCMC.
>
> As president of WCMC, I was responsible for preparing monthly financial statements, which I provided to Endeavor by email.
>
> Starting on or around September 2016, and continuing until on or around March 1, 2018, I began providing altered bank statements and false financial summaries. These altered bank statements and false financial summaries concealed the true

1 – OPINION AND ORDER

> financial condition of WCMC. I admit that I intended to defraud Endeavor as to the accurate financial condition of WCMC.
>
> On or around November 2017, Endeavor approached me about purchasing WCMC Inc.'s 49% interest in WCMC and having me continue to serve as WCMC's president.
>
> On or about February 7, 2019, I sent an email to Endeavor that contained a financial summary of WCMC as of January 30, 2018. The summary falsely reported that WCMC had approximately $1.1 million in cash in its operating account, when, in reality, there was approximately $16,000 in the account. I admit that the statement was capable of influencing Endeavor's decision to purchase my interest in WCMC.
>
> On March 1, 2018, Endeavor purchased my remaining 49% interest in WCMC. As part of that transaction, Endeavor paid me $1,500,000. The false financial statement provided on February 7, 2018, was a material factor in Endeavor's decision to purchase my remaining interest in WCMC.
>
> Following receipt of the $1,500,000 payment from Endeavor, on March 26, 2018, I knowingly engaged in a monetary transaction with the proceeds of the fraud, causing SELCO Community Credit Union to issue a $251,444.70 cashier's check from my account in Oregon to the Clerk of Court for the U.S. District Court for the District of Oregon, to satisfy restitution in Case No. 6:01-CR-600100.

ECF No. 11, 7-8.

Defendant maintains that during settlement negotiations, from her "perspective, the Government did not argue that she misappropriated loan proceeds or that she used festival funds from her personal benefit." Reply 4, ECF No. 45. Apparently based on her understanding of the Government's position during earlier discussions, the Victim impact statement "thus came as a significant surprise to the defense." *Id.* at 5. According to Defendant, the Victim's statement:

> Marked the first introduction in the criminal case of allegations that Ms. Hankins personally misappropriated money from WCMC. It also marked the first introduction of allegations that Ms. Hankins's scheme extended beyond the March 2018 sale of her remaining interest, as the Victim Impact Statement claimed that Ms. Hankins misstated vendor and other festival obligations. Ms. Hankins was unprepared to refute these claims. Based on the Government's representations and the procedural history of the case, Ms. Hankins had no reason to believe that she would have to build a defense to Endeavor's claims of theft

2 – OPINION AND ORDER

> and embezzlement. Nor did she anticipate that she would have to respond to claims of fraud with respect to the payment of vendors.

*Id.*

Defendant moved for authorization to issue subpoenas to obtain certain information from the Government and the Victim. Defendant sought information from the investigator Endeavor (i.e., the Victim) hired to look into Defendant's fraud. Specifically, Defendant sought draft reports, final reports, and documents the investigator relied upon, as well as any communications regarding the scope and terms of the investigator's engagement. Defendant sought materials the investigator relied upon to support its conclusion that Defendant's caused the music festival to take out $7 million in loans from third parties, and why the report assumes Defendant took $2.64 million of the proceeds "for her own purposes." *Id.* at 6. Defendant sought information the Victim relied on to support the allegation Defendant misrepresented vendor obligations to the Victim's detriment. Defendant sought materials the Victim used to support its allegation that Defendant paid herself $385,000 without authorization. Defendant sought materials the Victim relied upon in support of the allegations that Defendant was responsible for $250,000 missing in cash from the 2018 festivals.

In response, rather than engage in "protracted litigation" with Defendant over the requested information, the Victim offered to withdraw its victim impact statement. Defendant's motion presents interesting questions regarding a Defendant's right to identify the bases for a victim's opinions and conclusions offered in a presentence statement and the victim's rights under the Crime Victims' Rights Act to, amongst other things, be heard while also be protected from harassment by a Defendant. However, the Court need not resolve those questions. The Victim's offer to withdraw its Victim Impact Statement moots Defendant's motion for

3 – OPINION AND ORDER

authorization to issue the subpoenas. As the Court noted in earlier orders, Defendant and the Government will be permitted to present evidence regarding its theory of the case and any factors influencing, in their views, the Court's analysis of § 3553(a). As the Victim voluntarily withdrew its own right to be heard under the CVRA, any materials it used to form its own opinions and conclusions, which the Court will no longer hear, are no longer relevant.[1]

## CONCLUSION

Defendant's Motion to for Authorization to Issue Subpoenas, ECF No. 33, and the corresponding Motion to Quash, ECF Nos. 43, are DENIED as moot.[2]

DATED this 24th day of February, 2023.

/s/ Michael McShane
**Michael J. McShane**
**United States District Judge**

---

[1] Although the motions are moot, the Court notes that Defendant's requests under paragraph 26, seeking any communications between the Government and the Victim regarding the prosecution, status of plea negotiations, wording of public statements, and information regarding positions taken by the Government relating to Defendant, intrude on the Government's obligations under the CVRA to maintain communications with a Victim regarding the status of the investigation and prosecution. Ordering the Government to release such a wide-variety of communications with a Victim would chill future communications in other cases between the Government and future victims. Granting such a request would push many future victims to surrender their rights under the CVRA rather than be dragged into discovery disputes between future Defendants and the Government.

[2] It is the Court's understanding that to the extent there are any disputes regarding restitution, the Government will rely only on documents previously produced to Defendant. Specifically, that the Government will not argue for restitution greater than $2,766,070.90 as detailed in the Victim's response. *See* ECF No. 41 at 13 (outlining $1,500,000 in payments Endeavor made to Defendant, $800,000 paid in 2013, settlements with note-holders of $331,000, and costs incurred due to the investigation of $135,070.93. The Court presumes Defendant has documentation supporting such amounts. If the Court is mistaken in this regard, the Court will reconsider its conclusion that Defendant's motion to issue subpoenas is moot.

4 – OPINION AND ORDER