JANET LEE HOFFMAN, OSB No. 781145
E-mail: janet@jhoffman.com
KATHERINE MARCHANT, OSB NO. 161147
E-mail: katie@jhoffman.com
Janet Hoffman & Associates LLC
1000 SW Broadway, Ste. 1500
Portland, OR 97205
Telephone: (503) 222-1125

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ANNE HANKINS,<br><br>　　　　　　Defendant. | Case No. 6:22-cr-00317-MC<br><br>**DEFENDANT ANNE HANKINS' MOTION TO SET RESTITUTION HEARING** |

Defendant Anne Hankins ("Ms. Hankins"), through counsel, respectfully moves the Court to set a restitution hearing in the above-captioned matter for a date following the sentencing hearing, which is currently set for March 14, 2023. Under 18 U.S.C. § 3664(d), the Court has the authority to set a restitution hearing to determine a victim's losses after a sentencing hearing. *See id.* (d)(4) ("[T]he court may require additional documentation or hear testimony."); (d)(5) (authorizing courts to set a date for final determination of restitution within 90 days after sentencing); *Dolan v. United States*, 560 U.S. 605, 608 (2010) (permitting final determination of restitution more than 90 days after sentencing where defendant on notice that restitution would be sought).

PAGE 1 — MOTION TO SET RESTITUTION HEARING
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

In order to prepare for a contested restitution hearing, Ms. Hankins needs the supporting documents outlined below. Pursuant to footnote 2 of the Court's Opinion and Order issued February 24, 2023 (ECF No. 52), Ms. Hankins seeks to clarify that she has not received the necessary supporting documents, from either Endeavor or the Government, for two of the three remaining restitution claims, which are further described below.

On February 25 and February 28, 2023, Ms. Hankins attempted to confer with the Government regarding setting a restitution hearing. On March 3, the Government notified the defense that it objects to setting out restitution. The Government stated that it believed both restitution and sentencing could be handled in the time allotted on March 14. That hearing is currently set for two hours, which Ms. Hankins does not believe is a sufficient amount of time to resolve both the contested sentencing and contested restitution issues.[1]

The Government informed defense counsel that it intends to seek $1,500,000 in restitution and that it would notify the Court that Endeavor "believes it is also entitled" to the $800,000 that it paid Ms. Hankins in 2013 and the $331,000 in settlements that it paid to two noteholders. The Government further informed counsel for the first time, that Endeavor withdrew its claim for approximately $135,000 in legal fees incurred in connection with its participation in the criminal investigation. Ms. Hankins was never provided with the underlying documents supporting Endeavor's request for reimbursement of legal and investigative fees, which were described in the Victim Impact Statement. Accordingly, based on the Government's

---

[1] In prior correspondence to the Court and Government, Ms. Hankins anticipated needing two hours for sentencing, exclusive of restitution, particularly in light of the relevant issues raised in her prior Motion to Dismiss. It is Ms. Hankins' position that two hours is insufficient to address both sentencing and contested restitution matters. If both sentencing and restitution are to be addressed in one hearing, Ms. Hankins does not object to a set over of the March 14 sentencing date following resolution of the document production issues. Ms. Hankins anticipates that a combined sentencing and restitution hearing would need approximately four to five hours.

representation, Ms. Hankins believes that document requests related to this specific restitution claim are moot.

I.      **Relevant procedural history**

On January 17, legal counsel for WCMC Holdings, LLC, William Morris Endeavor Entertainment, LLC, and WME IME, LLC (collectively "Endeavor") submitted a Victim Impact Statement ("VIS"), on behalf of Endeavor and WCMC, LLC ("WCMC"). The VIS requested $13,173,871.08 in restitution.[2] The VIS is not a sworn statement and the VIS did not include any documentation supporting its requests. Counsel for Endeavor and WCMC did not submit the VIS until after objections to the draft presentence report were due. The draft presentence report stated that the "government advised the probation office that it will be requesting restitution in the amount of $1,500,000," and, in addition, that the government "had not yet received any victim impact statements or specified restitution amounts from the victim." In her written objections, Ms. Hankins stated that she objected to restitution in the amount of $1,500,000. She did not, however, have an opportunity to submit a written objection to Endeavor's additional restitution requests during the presentence investigation. This is important because Endeavor's belated claims raise both factual and legal issues that the Court will have to resolve. For example, whether, as a threshold matter, the conduct to which Ms. Hankins pleaded guilty was the direct and proximate cause of Endeavor's claimed losses of $800,000 and $331,000.

On February 24, the Court issued an Order and Opinion, which stated, "It is the Court's understanding that to the extent there are any disputes regarding restitution, the Government will rely only on documents previously produced to the Defendant. Specifically, that the Government will not argue for restitution greater than $2,766,979.90, as detailed in the Victim's response." ECF No. 52 at 4, n.2. Furthermore, "[t]he Court presumes Defendant has documentation

---

[2] The VIS also included a number of factual allegations that Endeavor argued were relevant to the Court's assessment of the factors set forth in 18 U.S.C. 3553(a) and supported a sentence of 27 months incarceration. Ms. Hankins subsequently filed a Motion for Authorization to Issue 17(c) Subpoenas, which sought documents related to some, but not all, of the VIS' factual allegations, as those allegations pertained to sentencing. Ms. Hankins' subpoena requests did not encompass the restitution claims at issue here.

supporting such amounts. If the Court is mistaken in this regard, the Court will reconsider its conclusion that Defendant's motion to issue subpoenas is moot." *Id.*

Ms. Hankins was provided with the documents supporting the Government's claim for $1,500,000 in restitution Presumably this amount represents what Endeavor paid to Ms. Hankins on March 1, 2018, when it purchased her minority interest in WCMC. This is the only request factually connected to the plea agreement, and it is the only restitution claim that Ms. Hankins was aware of prior to submission of the VIS. Ms. Hankins has sufficient information regarding the $1,500,000 to develop evidence to rebut this claim. However, as addressed below, with respect to the other three areas which the Court cited in footnote 2 of the February 24 Opinion and Order, Ms. Hankins lacks sufficient evidence to prepare for the restitution hearing.

### II.   Ms. Hankins does not have the documents supporting Endeavor's three other restitution claims

The burden is on the Government (or Endeavor, if the Court so designates) to establish "the amount of loss sustained by a victim as a result of the offense[.]" 18 U.S.C. 3664(e) (so stating); *United States v. Gamma Tech Industries, Inc.*, 265 F.3d 917, 924 (9th Cir. 2001) ("[s]o long as the district court orders defendants to pay restitution only after *someone* proves the amount by a preponderance of the evidence, there is no reason a non-party . . . can't carry the burden.") (emphasis in original). To do so, the Government (or victim) must prove that the losses sustained were "directly and proximately caused by the commission of the offense." *See* 18 U.S.C. 3663(a)(1)(so stating); *United States v. May,* 706 F.3d 1209, 1214 (9th Cir. 2013) ("In this regard, "a court may award restitution under the MVRA only for loss that flows directly from 'the specific conduct that is the basis of the offense of conviction.'") (internal quotation omitted). Evidence supporting any restitution order must be specific and reliable. *United States v. Hai Waknine*, 543 F.3d 546, 556-57 (9th Cir. 2008) ("summary" and "conclusory" affidavits from victims did not reliably establish restitution amount); *United States v. Tsosie*, 639 F.3d 1213, 1221 (9th Cir. 2011) (unauthenticated spreadsheet lacking specific explanation for claimed

restitution amount insufficient). Moreover, Ms. Hankins has a right to respond to requests for restitution. *See* § 18 U.S.C. 3664(e) ("Any dispute as to type or amount of restitution shall be resolved by the court by a preponderance of the evidence."); *United States v. Andrews*, 600 F.3d 1167, 1172 (9th Cir. 2010) (district court erred in deciding that restitution was properly attributable to the defendant's conduct when it relied exclusively on the victim's testimony and did not allow the defendant's expert witness to testify). *See United States v. Gushlak*, 728 F.3d 184, 193 (2d Cir. 2013) (noting that defendants have a due process right to pay restitution only for victims' actual losses) (citation omitted).

  Here, Ms. Hankins has not been provided with the materials supporting three of Endeavor's restitution claims. The first of the three is a claim for $800,000. This represents the amount of money that Endeavor paid to Ms. Hankins in April 2013, in connection with the parties' creation of WCMC, of which Endeavor owned 51 percent. According to the VIS, the 2013 transaction agreement required that Ms. Hankins "disclose any legal actions against her, including any criminal actions" and that she "affirmatively represented that there had been none." The VIS further claims that it "would not have trusted Hankins to run WCMC had it known that she had pleaded guilty to fraud." The factual basis for this claim is not part of the plea agreement and predates it by more than three years.

  Although Ms. Hankins has the 2013 purchase agreement, that document does not definitively establish that Ms. Hankins had a duty to disclose her then-twelve-year old conviction. To the extent that Endeavor has evidence supporting its claim to the contrary, it has not produced it to Ms. Hankins. Nor has the Government. Ms. Hankins also does not have the materials supporting the contention that Endeavor would not have partnered with her had it known about her prior conviction. The materials that Ms. Hankins does have appear to indicate otherwise. For example, as further explained in her objections to the draft presentence report, in the early 2010s, Endeavor was actively seeking to expand its presence in the country music

festival arena and targeted the quickly growing Willamette Country Music Festival.[3]

The second claim is for $331,000. The VIS states that this amount represents what Endeavor and/or WCMC paid to two individuals who had loaned money to WCMC and later sued for non-payment. The first suit was brought by an individual named Bonnie Layton, who loaned money to WCMC in 2016. Ms. Hankins, in her capacity as president, had arranged for the loan, and, under the terms of the note, both she and WCMC were joint and severally liable. In December 2018, Ms. Layton filed suit against WME IMG, Endeavor LLC and Endeavor Holdings LLC (not Ms. Hankins or WCMC), and settled with the defendants for $240,000.

However, none of these entities were signatories of the note, and Ms. Hankins does not have the documents reflecting the business decisions that led to WME IMG, Endeavor LLC and Endeavor Holdings deciding to repay the note on WCMC's behalf. Moreover, the documents that Ms. Hankins was provided show that Ms. Hankins had the authority, as president, to take out loans on WCMC's behalf, and that the loan proceeds were used for business purposes. To the extent that Endeavor has evidence to the contrary, such that Ms. Hankins' conduct could be found to have directly and proximately caused the $240,000 payment, it has not yet produced it to Ms. Hankins.

Ms. Hankins is entitled to the evidence that demonstrates the liability of the particular entity that paid the funds, evidence that the loan proceeds were not used for a proper business purpose and the records that demonstrate the business purpose for the entity that was not obligated on the valid business loan to pay that loan. In addition, Ms. Hankins is further entitled to the evidence showing what amounts made up the $240,000 settlement. Ms. Layton's civil complaint alleges that Ms. Hankins and WCMC failed to repay two loans: one for $126,000 and the other for $64,000. *See Bonnie Layton et. al., v. WME, IMG LLC, et. al.,* Case No. 1:18-cv-00551-DCN (D. Idaho, Dec. 12, 2018) (ECF No. 1). Ms. Layton's complaint demands

---

[3] See Billboard, "WME Partnering for Six Country Festivals," (Feb. 20, 2014), <https://www.billboard.com/music/music-news/wme-partnering-for-six-country-festivals-5915467> (last accessed Feb. 28, 2023).

repayment of both loans plus an unspecified amount of "interest and fees," together with "reasonable attorney's fees and costs incurred in this action[.]" *See id.* (so requesting). The settlement agreement does not itemize WME IMG's payment. The $240,000 payment appears to represent $190,000 in total loan principle plus an unspecified $50,000. Ms. Hankins does not have documents showing the breakdown of that $50,000 payment. *See United States v. Brock-Davis*, 504 F.3d 991, 1002 (9th Cir. 2007) ("The government must provide the district court with more than just… general invoices… ostensibly identifying the amount of their losses."). Nor has she been provided with the payment records, such as bank statements or wire transfer receipts, showing that the $240,000 was paid.

This evidence is specifically necessary here because the settlement agreement, which the Government previously produced, indicates that the $240,000 payment may have been made to secure Ms. Layton's cooperation in Endeavor's own investigation and litigation against Ms. Hankins. *See Lagos v. United States*, 138 S. Ct. 1684, 1687 (2018) (holding that the MVRA does not cover costs of a private investigation nor does it cover costs incurred before a victim's participation in the government's investigation began). An unusual term of the settlement agreement required that Ms. Layton provide (and make reasonable efforts to obtain) emails and text messages, among other items, and submit to multiple interviews regarding Ms. Hankins in general.[4] Notably, this provision did not limit Ms. Layton's cooperation to issues connected to her litigation or further collection efforts. Rather, the terms of the Settlement Agreement appear

---

[4] Section 3.2 of the Settlement Agreement provides that, in exchange for the $240,000 payment:

> "Layton agrees to provide Endeavor, within 15 days of Layton's receipt of the Settlement Payment, with any and all <u>documents, emails, text messages, and other written, video, and audio materials in Layton's possession or reasonably obtainable by Layton related to WCMC, LLC, Anne Hankins, Dale Hurst, **and/or** Layton's allegation in the Litigation. Layton also agrees to a reasonable number of informational interviews, not to exceed three (3) interviews, in which Endeavor and/or representatives of Endeavor may interview Layton concerning information related to WCMC, LLC, Anne Hankins</u>, Dale Hurst, and/or Layton's allegations in the Litigation, and Layton will provide fully truthful and accurate responses."

The settlement agreement states that Ms. Layton "shall be in default of her settlement obligations if she fails to make a good-faith effort to comply with any portion of Sections 3.2 or 3.3 [Ms. Layton's agreement to dismiss the litigation] of the Agreement."

to expressly expand beyond issues connected to the litigation and collection of Ms. Layton's unpaid notes.[5]

The second suit was brought by an individual named Ryan Ringer, who loaned WCMC $300,000 on August 18, 2018 — after the indictment period and after Ms. Hankins sold her remaining interest in WCMC. Ms. Hankins, in her capacity as president, arranged for the loan for business purposes and made herself (even as a non-owner) and WCMC joint and severally liable. In September 2020, Mr. Ringer sued WCMC and Ms. Hankins for non-payment. In November 2021, WCMC settled with Mr. Ringer for $91,000. The Court entered judgment against Ms. Hankins, and Mr. Ringer obtained a lien against Ms. Hankins' primary residence for $210,000. Again, the documents provided to Ms. Hankins thus far demonstrate that she was authorized to take out this loan and that the proceeds were used for business purposes. Endeavor has not provided its materials that purportedly show otherwise, nor has Endeavor provided Ms. Hankins with its materials to support its claim that the conduct to which Ms. Hankins pleaded guilty caused this purported loss.

Finally, Ms. Hankins does not have the documents supporting Endeavor's claim for $135,070.93, which the VIS described as "legal and related costs directly related to the criminal investigation." The VIS cited the following bills and invoices supporting this amount: (1) legal fees associated with meetings and communications with the government; (2) legal fees associated with a federal search warrant executed on WCMC, LLC; (3) legal fees associated with the production of "close to a million pages of documents" to the government "at the government's request"; (4) $69,639.43 in costs of third-party vendors to host and process the documents produced; and (5) legal fees associated with the interviews of WCMC and Endeavor witnesses "at the government's request." As noted above, however, it is Ms. Hankins

---

[5] Any information that Ms. Layton provided to Endeavor pursuant to this Agreement has not been provided to Ms. Hankins.

understanding that requests for production of these documents are now moot in light of the Government's notice that Endeavor has withdrawn this request.

### III. Conclusion

Ms. Hankins does not have all of the documents supporting the requests for restitution. She objects to all four requests and respectfully requests that the Court set a restitution hearing after the resolution of the document production issues left open in footnote 23 of the February 24 Opinion and Order. Counsel intends to file a supplemental Motion for Authorization to Issue 17(c) Subpoenas tailored to the restitution issues left open, following submission of sentencing materials.

//

DATED this 3rd day of March, 2023.

Respectfully submitted,

s/*Janet Hoffman*
JANET HOFFMAN, OSB No. 781145
KATHERINE MARCHANT, No. 161147
ETHAN HAZEL, OSB No. 215406
Janet Hoffman & Associates LLC
1000 SW Broadway, Ste. 1500
Portland, OR 97205
Phone: (503) 222-1125
Email: janet@jhoffman.com
Attorneys for Defendant Anne Hankins