JANET LEE HOFFMAN, OSB No. 781145
E-mail: janet@jhoffman.com
KATHERINE MARCHANT, OSB NO. 161147
E-mail: katie@jhoffman.com
Janet Hoffman & Associates LLC
1000 SW Broadway, Ste. 1500
Portland, OR 97205
Telephone: (503) 222-1125

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>ANNE HANKINS,<br><br>                Defendant. | Case No. 6:22-cr-00317-MC<br><br>**DEFENDANT ANNE HANKINS'S AMENDED MOTION TO COMPEL DISCOVERY** |

Defendant Anne Hankins ("Ms. Hankins"), through her undersigned counsel of record, hereby moves this Court for an Order compelling the production of evidence within the possession, custody, or control of the Government, and in particular, the United States Attorney's Office for the District of Oregon. Through this filing, Ms. Hankins requests that the Court order the Government to comply with its discovery obligations under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, including the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. This motion is made in addition to any subsequent requests directed at the complainant for materials that support its requests for restitution in this case.

DEFENDANT ANNE HANKINS'S AMENDED MOTION TO COMPEL DISCOVERY– 1
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

I.       **Legal Standard for Production of Discovery**

Under *Brady v. Maryland*, "prosecutors are constitutionally obligated to disclose 'evidence favorable to an accused … [that] is material either to guilt or to punishment.'" *Amado v. Gonzalez*, 758 F.3d 1119, 1134 (9th Cir. 2014) (alterations in original) (quoting *Brady*, 373 U.S. at 87). *Brady* material necessarily includes impeachment and exculpatory evidence in the Government's possession, custody or control, *Kyles v. Whitley*, 514 U.S. 419, 433 (1995), as well as evidence adversely affecting the credibility of government witnesses, *Giglio*, 405 U.S. at 154-55. "*Brady v. Maryland* unambiguously applies at sentencing." *United States v. Gaston*, 2021 U.S. Dist. LEXIS 173657, *3 (E.D. Cal. Sept. 10, 2021) (internal citation omitted); *see also United States v. Nikrasch*, 25 Fed. App'x. 570, 573 (9th Cir. 2001) ("The government's *Brady* obligations continue through the time of the sentencing hearing." ) (citing *East v. Scott*, 55 F.3d 996, 1002-04 (5th Cir. 1995) (discussing a claimed *Brady* violation during the sentencing phase).

The prosecution's duty to provide the defense with *Brady* material exists "regardless of whether the defense made any request of the prosecution; the prosecution is required to provide material, favorable information even 'where the defendant does not make a *Brady* request.'" *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 680-82 (1985)). Further, this duty "to disclose information includes a duty to disclose information known to other agents of the government." *United States v. Fort*, 478 F.3d 1099, 1103 (9th Cir. 2007) (citing *Giglio*, 405 U.S. at 154). Finally, "where doubt exists as to the usefulness of evidence," the government "should resolve such doubts in favor of full disclosure …." *United States v. Van Brandy*, 726 F.2d 548, 552 (9th Cir. 1984) (citations omitted). Thus, the prosecution has a "broad obligation" on due process grounds to disclose information under *Brady*. *Amado*, 758 F.3d at 1133.

///

///

///

II.   **Specific Discovery Requests**

Through this motion to compel, Ms. Hankins, by and through her attorneys, hereby requests that the Court compel the disclosure and production of the following documents, information, or material within the Government's possession, custody, or control:

(1)   Communications between WCMC Holdings, LLC; William Morris Endeavor Entertainment, LLC; and WME IME, LLC; (collectively, "Endeavor"); and/or WCMC, LLC ("WCMC");[1] and the Government concerning Endeavor and/or WCMC's restitution requests, and any materials provided to the Government by Endeavor to support its restitution requests.

(2)   Communications between Endeavor and/or WCMC, and the Government discussing Endeavor's allegations that Ms. Hankins embezzled or otherwise misappropriated funds, including discussion of the Government's decision to provide Ms. Hankins a 3-point reduction under the Sentencing Guidelines based on the fact that her conduct was dissimilar from other wire fraud defendants because her conduct did not include theft of misappropriation of funds from WCMC, LLC; any communications between Endeavor and Government regarding the wording of the press release issued by the Government following Ms. Hankins's guilty plea; and any documents or material generated by the Government that would impeach Endeavor's allegations of embezzlement or misappropriation of WCMC funds.

III.   **Ms. Hankins Is Entitled to the Requested Materials Under *Brady* and Its Progeny Notwithstanding the Crime Victims' Rights Act.**

Ms. Hankins's requests herein represent a significant narrowing of the requests for communications set forth in her prior Motion for 17(c) subpoenas directed at Endeavor. The defense understands the Court's footnote, ECF No. 52 at 4 n.1, expressing concern that such a broad request could chill future victim-government communications. This motion does not

---

[1] Together, these four entities were alleged to be the victims in Endeavor's victim impact statement.

DEFENDANT ANNE HANKINS'S AMENDED MOTION TO COMPEL DISCOVERY– 3
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

implicate these concerns because the present requests are narrowed to encompass only materials the Government is constitutionally required to produce. A defendant's constitutional due process right to be provided with all materials that are exculpatory and material to punishment takes precedence over a victim's statutory rights under the Crime Victims' Rights Act (CVRA) where they conflict. *See Gray v. Mississippi*, 481 U.S. 648, 663 (1987) ("In a situation such as this where a constitutional right comes into conflict with a statutory right, the former prevails.").

Additionally, though the defense has not identified any federal court opinions analyzing the interplay between a defendant's *Brady* right and a crime victim's rights under the CVRA, in an analogous situation, a district court in this Circuit ordered the production of reports and interviews created by a defendant's employer pursuant to an internal investigation even though the government had agreed to keep the materials confidential. *See United States v. Bergonzi*, 216 F.R.D. 487, 499-500 (N.D. Cal. 2003). Because, as detailed below, the communications requested by Ms. Hankins are likely to contain exculpatory information that bears on the punishment that will be imposed against her, Ms. Hankins asks the Court to act similarly to the *Bergonzi* court and compel the Government to act in accordance with its constitutional duties.

Here, Ms. Hankins seeks disclosure of narrow categories of communications between the Government and Endeavor that are in the possession or control of the Government, likely to be exculpatory, and are material to punishment. *See Brady* 373 U.S. at 87 (prosecutors have duty to disclose to the defense "evidence favorable to an accused . . . [that] is material either to guilt or to punishment"). For these reasons and those that follow, the Government should be compelled to produce them now, prior to sentencing, so that Ms. Hankins can make meaningful use of them. *See United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985) (*Brady* disclosure "must be made at a time when disclosure would be of value to the accused").

///

///

///

A.  ***Brady* Requires Production of Communications and Documents Related to Endeavor's Requested Restitution.**

As further described in Ms. Hankins Motion to Set Restitution Hearing, ECF No. 53, it is her understanding that the Government intends to request $1,500,000 in restitution, as the Government stated in the draft presentence report. Based on the Government's prior productions, Ms. Hankins understands the Government to have complied with its discovery obligations as to the $1,500,000 claim.[2] Therefore the current request primarily focuses on Endeavor's two additional claims for restitution: one for the $800,000 that it paid to Ms. Hankins in April 2013, and the other for $331,000, which represents the total amount that Endeavor alleges that it or WCMC, LLC paid in settlement agreements with noteholders. The factual basis of these claims, as Ms. Hankins understands them, is further set forth in Motion to Set Restitution Hearing, ECF No. 53. That motion further explains that Ms. Hankins does not have all of the necessary documents to respond to those requests.

Here, Ms. Hankins seeks communications between Endeavor and the Government regarding Endeavor's requested restitution amounts, as well as the supporting materials that Endeavor provided to the Government to support its restitution claims. It is the government's burden to prove the amount of loss for restitution purposes by a preponderance of the evidence. 18 U.S.C. § 3664(e). An order of restitution, however, may only compensate victims "for actual losses caused by the defendant's criminal conduct." *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 926 (9th Cir. 2001). It is therefore not enough to show that, but for the defendant's conduct, the loss would not have occurred; instead, the government must also demonstrate proximate causation. *Id.* at 928 (citing *United States v. Vaknin*, 112 F.3d 579, 590 (1st Cir. 1997) ("The government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally).").

---

[2] However, if the Government in fact locates additional materials relevant to the $1,500,000 claim, this motion applies to those materials as well.

The documents relevant to restitution that Ms. Hankins has not been provided are further outlined in the Motion to Set a Restitution Hearing, and those requests are incorporated herein. These include, for example, materials that establish that the conduct that Ms. Hankins pleaded guilty to was the direct and proximate cause of the alleged losses. *See* 18 U.S.C. § 3663A(2) (defining "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered").

In addition to materials discussed in the Motion to Set a Restitution Hearing, this request further includes communications related to the Government's assessment of the viability of Endeavor's restitution claims. Considering that the Government had a statutory duty to confer with Endeavor as to its restitution claims, as well as the terms of the plea agreement, such communications most likely exist. It is difficult to believe that Endeavor would not have raised its additional claimed losses to the Government and provided supporting documentation. Indeed, the claim for $800,000 and one claim for funds paid to note holders, representing $240,000 of the $331,000 sought by Endeavor as restitution, were part of Endeavor's Demand for Arbitration and the initial civil complaint filed in Lane County on July 31, 2020, before the criminal investigation began. However, since the Government did not insist that these additional losses be reflected in the plea agreement—and nor are the loses included in the governments factual theory of the case, as reflected by the three-level downward variance from the Guidelines—it stands to reason that the Government would have communicated to Endeavor that its investigation did not support these losses. These communications are therefore likely to contain exculpatory information that Ms. Hankins can use to rebut Endeavor's claims for additional restitution.

Ms. Hankins' request also includes any other materials in the Government's possession, custody, or control that would impeach Endeavor's additional restitution claims. For instance, if the Government has materials showing that Ms. Hankins's conduct did not directly or proximally cause Endeavor's claimed losses, it would impeach the restitution claims and should be produced under *Brady*. Similarly, if the Government has evidence that Endeavor would have entered into

its partnership with Ms. Hankins in 2013 notwithstanding her prior conviction—such as evidence that Endeavor wanted to run WCMC, LLC because it believed that the company would be a valuable way to expand Endeavor's reach into the country music business to attract more talent for its agents or earn valuable commissions—that would also impeach Endeavor's claims of loss and should be produced. Further, any evidence the Government has with respect to Endeavor's repayment of Bonnie Layton's loan, part of Endeavor's $331,000 claim, and whether Endeavor was motivated to pay it in order to ensure her cooperation in its investigation into Ms. Hankins—as further explained in Ms. Hankins's Motion to Set a Restitution Hearing, ECF No. 53—such evidence also must be produced. Evidence relevant to Ms. Layton' claim would include any information that Ms. Layton provided to Endeavor about Ms. Hankins pursuant to the settlement agreement, such as texts, emails and interview reports. If the Government is in possession of any of the above-described communications or documents, *Brady* requires the Government to produce them to Ms. Hankins.

    **B.**    **The Government Must Also Produce Communications between the Government and Endeavor Regarding Endeavor's Allegations that Ms. Hankins Embezzled or Otherwise Misappropriated WCMC, LLC Funds and Other Materials in the Government's Possession Relating to the Same.**

Materials related to Endeavor's allegations that Ms. Hankins embezzled or otherwise misappropriated WCMC's funds, and the results of Government's investigation, if any, into the same are relevant and material to sentencing. First, Ms. Hankins is entitled to put forth evidence at sentencing that her conduct falls outside the heartland of typical wire fraud cases because she never embezzled or otherwise misappropriated WCMC funds. *See* 18 U.S. Code § 3553(a)(1) (requiring sentencing court to consider the "nature and circumstances of the offense"). A cornerstone of Ms. Hankins's mitigation evidence, as the Government is aware, is her commitment to the festivals; she worked hard to build the festivals into nationally recognized events and poured her own financial resources into WCMC, LLC to do so. She went so far as to

make herself personally liable on WCMC's debts, even after she sold her remaining ownership stake. And she—alone—is currently liable for more than $5 million in WCMC's debts.

It is likely that the Government and Endeavor communicated regarding Endeavor's claims of embezzlement and that the Government investigated them. These claims of embezzlement are hugely important to Endeavor. It put Ms. Hankins on leave in September 2018 following the festival's significant losses rendering the festival unable to pay its debts—losses due to forces outside of anyone's control, including smoke from forest fires and depressed ticket sales following the 2017 shooting at a music festival in Las Vesgas. Shortly thereafter, Endeavor retained the forensic accounting firm Exiger, with instructions to find that Ms. Hankins embezzled funds, so that Endeavor could save its reputation. *See* Exhibit A (Emails between Endeavor and Exiger Employees).

Before Exiger reported back any findings, Endeavor made public statements to the media in the fall of 2018 that Ms. Hankins's misappropriation of funds caused the festival not to have the cash to pay vendors. *See, e.g.,* Jonathan Brines, *Hankins defends herself, files against IMG attorney*, KTVL (Nov. 28, 2018, 6:06 PM), https://ktvl.com/news/local/hankins-defends-herself-files-against-img-attorney. These allegations were also part of Endeavor's civil suit and repeated throughout the now-withdrawn victim impact statement, which purports to rely on findings by Exiger that Endeavor has never produced to Ms. Hankins. In short, proving that Ms. Hankins embezzled or misappropriated was very important to Endeavor, and Endeavor presumably brought these issues to the Government's attention during the course of the Government's investigation.

It is also reasonable to believe that the Government duly investigated these claims. During plea negotiations, the Government informed defense counsel that its case did not involve embezzlement or misallocation of funds by Ms. Hankins. *See* ECF No. 49. And, after the issuance of its press release, the Government again affirmed this statement. *See id.* Even more significantly, on this basis, the Government agreed to a three-point downward variance from the

Guidelines and left open for Ms. Hankins to argue at sentencing that, because she acted in the best interests of WCMC and did not misuse festival funds, her conduct was significantly different than other wire fraud defendants to such a degree that a more lenient sentence is warranted. *See id.*

It is therefore Ms. Hankins's understanding that the Government did not find evidence corroborating Endeavor's claims. Accordingly, the Government had a duty to convey this to Endeavor when it notified Endeavor of the plea agreement. Therefore, the Government's explanations as to why it was not charging Ms. Hankins with embezzlement, theft, or the like, and why it was recommending a 3-level downward variance, would be relevant to show why Ms. Hankins's conduct was distinct from a typical wire fraud case, as would any materials generated by the Government evidencing an inability to corroborate Endeavor's claims.

Additionally, the Government presumably asked Endeavor for the Exiger report, given Endeavor's heavy reliance on the report and its insinuations in the victim impact statement that Exiger found evidence of embezzlement. Accordingly, materials showing that Endeavor never produced this report—and therefore lacked expert evidence of embezzlement—would also be relevant to show that Ms. Hankins did not misuse festival funds.

The second reason that the requested materials must be produced is due to the issues left open following Ms. Hankins's motion to dismiss. In an order following that motion, the Court wrote, "Defendant will be permitted to present evidence at sentencing regarding prejudice from the Government's press release and the impact on the relevant sentencing factors." ECF No. 24. Prosecutorial misconduct is relevant to a court's sentencing determination and assessment of the factors set forth in 18 U.S.C. 3553(a). Where the government has engaged in prejudicial misconduct, courts have granted downward variances or departures. *See, e.g., United States v. Lopez*, 106 F.3d 309, 311 (9th Cir. 1997) (affirming three-level downward departure where prosecutor's misconduct in dealing with defendant without his counsel prejudiced his opportunity to possibly obtain better plea bargain); *United States v. Dicus*, 579 F.Supp.2d 1142

(N.D. Iowa 2008) (suitable remedy for government's misconduct in breaching plea agreement was reduction of defendant's sentence). The Government even acknowledged Ms. Hankins's right to make this argument in its communications with defense counsel. *See* ECF No. 15, Ex. 10, at 2.

As detailed in Ms. Hankins's Motion to Dismiss, *see* ECF No. 14. the Government's press release created the impression that Ms. Hankins embezzled or misallocated money from WCMC, LLC for her own use. There is great difference, however, between pocketing money for one's own personal enrichment and hiding the poor financial performance of a company to allow it to be run without interference. The defense has not been provided with any evidence that Ms. Hankins embezzled or misallocated festival funds for her own personal enrichment, and previous efforts to obtain the evidence that Endeavor was relying upon for its allegations that Ms. Hankins did so were met by withdrawal of Endeavor's victim impact statement. Moreover, as discussed in Ms. Hankins's prior pleadings—*see* ECF Nos. 14, 18—the Government's misconduct has severely prejudiced Ms. Hankins by poisoning potential witnesses against Ms. Hankins and depriving her of favorable testimony for sentencing.

The Government has a duty to ensure its statements to media are accurate and not to disparage a defendant's character, and an abrogation of that duty could constitute prosecutorial misconduct. Documents and communications, including those described above, indicating that the Government had materials in its possession showing—implicitly or explicitly—that Ms. Hankins did not misuse WCMC, LLC funds would be relevant to show that the Government recklessly or knowingly disregarded its ethical and statutory duties. Therefore, the Government is obligated under *Brady* to produce any such documents and communications in its possession, custody, or control.

That such documents and communications exist and are in the possession, custody, and control of the Government is corroborated by Endeavor's victim impact statement. To wit, Endeavor requested "legal fees associated with the production of close to a million pages of

documents to the federal document at the government's request, which required privilege review and several productions to accomplish." *See* Victim Impact Statement at 12. This request indicates that the Government affirmatively sought, and Endeavor provided, voluminous documents concerning Ms. Hankins. Presumably, the Government's request came after Endeavor informed it of Endeavor's allegations against Ms. Hankins, including its still unproven, unsupported, and untested claims that Ms. Hankins embezzled or misappropriated money from WCMC, LLC for her own personal enrichment. Considering that these allegations were not pursued by the Government, and the Government represented to defense counsel that it had not uncovered such evidence, *see* ECF No. 49, the Government's request for these documents and the communications that followed are relevant to show that the Government attempted to obtain evidence that Ms. Hankins embezzled or misallocated festival funds but could not do so.

Finally, any communications between Endeavor and the Government regarding the press release also must be produced to Ms. Hankins. The similarity between Endeavor's claims in its victim impact statement and the statements in the Government's press release suggests that the Government may have conferred with Endeavor prior to issuing the press release. If the Government, for instance, requested from Endeavor evidence that Ms. Hankins embezzled or misallocated funds to support the Government's press release, and Endeavor could not or did not provide them, such communications would be exculpatory and relevant to sentencing for the reasons discussed above.

## IV.    Conclusion

For the foregoing reasons, Ms. Hankins respectfully requests that the Court enter an Order compelling the Government to abide by its constitutional obligations and produce the requested materials.

///

///

///

DATED this 7th day of March, 2023.

                          Respectfully submitted,

                          s/Janet Hoffman
                          JANET HOFFMAN, OSB No. 781145
                          KATHERINE MARCHANT, OSB No. 161147
                          ETHAN HAZEL, OSB No. 215406
                          Janet Hoffman & Associates LLC
                          1000 SW Broadway, Ste. 1500
                          Portland, OR 97205
                          Phone: (503) 222-1125
                          Email: janet@jhoffman.com
                          Attorneys for Defendant Anne Hankins

## CERTIFCATE OF SERVICE

I, Janet Hoffman, undersigned counsel hereby certifies that a copy of this DEFENDANT ANNE HANKINS AMENDED MOTION TO COMPEL DISCOVERY was filed electronically on March 7th, 2023, through the CM/ECF service for the United States District Court, District of Oregon and thereby served on all parties of record in this matter.

*/s/ Janet Hoffman*
Janet Hoffman, OSB No. 781145
Janet Hoffman & Associates LLC
1000 SW Broadway, Suite 1500
Portland, OR 97205
janet@jhoffman.com
(503) 222-1125

DEFENDANT ANNE HANKINS'S AMENDED MOTION TO COMPEL DISCOVERY– 13
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC