JANET LEE HOFFMAN, OSB No. 781145
E-mail: janet@jhoffman.com
KATHERINE MARCHANT, OSB NO. 161147
E-mail: katie@jhoffman.com
Janet Hoffman & Associates LLC
1000 SW Broadway, Ste. 1500
Portland, OR 97205
Telephone: (503) 222-1125

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANNE HANKINS,<br><br>Defendant. | Case No. 6:22-cr-00317-MC<br><br>**DEFENDANT ANNE HANKINS'S MOTION FOR RELEASE PENDING APPEAL AND MEMORANDUM IN SUPPORT; AND, IN THE ALTERNATIVE, MOTION TO EXTEND SELF-SURRENDER DATE**<br><br>*Oral Argument Requested* |

## MOTION

Defendant Anne Hankins ("Ms. Hankins"), through counsel, respectfully moves this Court for an order permitting her to remain on release pending appeal pursuant to 18 U.S.C. § 3134(b) and Federal Rule of Criminal Procedure 38(b).  In the alternative, Ms. Hankins requests that the Court extend her self-surrender date from June 30, 2023 to two weeks following the conclusion of this Court's restitution hearing, which was recently continued from May 30 to August 28, 2023.  As further explained below, Ms. Hankins' assistance is necessary in responding to the Government's restitution claim. Her ability to provide that assistance would be significantly impaired if she were incarcerated.

MOTION FOR RELEASE PENDING APPEAL                                          1
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

On March 30, 2023, Ms. Hankins was sentenced by this Court to 12-months and a day of incarceration and three (3) years of supervised release following her guilty plea on September 28, 2022, to one count of Wire Fraud, in violation of 18 U.S.C. § 1343, and one count of Money Laundering, in violation of 18 U.S.C. § 1957. ECF Nos. 71, 72. At the time of sentencing, the Court set a restitution hearing for May 30, 2030. The Court also authorized Ms. Hankins to remain on pretrial release and self-surrender at the designated federal correctional facility on June 30, 2023. ECF No. 71.

Ms. Hankins filed a notice of appeal on April 5, 2023. ECF No. 73. The Court is already well informed about the issues on appeal and Ms. Hankins' history and characteristics. As addressed below in more detail, Ms. Hankins is entitled to remain on her current conditions of release pending her appeal pursuant to the Bail Reform Act of 1984, as she satisfies the requirements of Section 3143 of the Act: (1) she is not a flight risk; (2) her appeal is not for the purposes of delay; and (3) Ms. Hankins presents "substantial questions" for appeal. *United States v. Handy*, 761 F.2d 1279, 1281 (9th Cir. 1985). Accordingly, Ms. Hankins respectfully requests that the Court stay her self-surrender date and allow her to remain on release pending the conclusion of her recently filed appeal. Alternatively, at a minimum, Ms. Hankins requests that the Court extend her surrender date to allow her to assist in restitution proceedings currently set for August 28, 2023.

## MEMORANDUM IN SUPPORT

### I.  INTRODUCTION

Ms. Hankins merits bail pending her appeal because she satisfies the requirements of the Bail Reform Act, 18 U.S.C. § 3143(b). For more than two years, during the pendency of the Government's investigation and this subsequent criminal action, Ms. Hankins has demonstrated

that she is not a flight risk and does not pose any danger to the safety of the community. Further, as explained below, Ms. Hankins appeals not for the purpose of delay, but, rather, to address substantial questions of law and fact which, if successful, would likely result in a favorable appellate outcome, including resentencing and a non-custodial sentence.

This Court need not determine that its own rulings were incorrect in order to grant Ms. Hankins' motion and grant her release pending appeal. Nor must the Court find or even determine that Ms. Hankins presents "an appeal that will likely be successful[.]" *United States v. Garcia*, 340 F.3d 1013, 1021 n.5 (9th Cir. 2003). Rather, the Court need only determine that her appeal presents "a non-frivolous issue" that, if decided in her favor, would likely result in reversal on some issue or in a sentence of probation. *Id*. Ms. Hankins, as explained below, presents two separate, but equally important issues for appeal that are, at the very least, non-frivolous and fairly debatable; the Court need only find one of the issues meets the standard in order to grant this motion and release Ms. Hankins pending her appeal.

Additionally, although not enumerated in Section 3143(b), the duration of Ms. Hankins' sentence is another factor considered by the Ninth Circuit warranting release pending appeal. In determining whether to grant bail pending appeal, the Ninth Circuit has regularly considered whether "the defendant could be forced to serve most or all of his sentence before his appeal has been decided" because incarcerating such a defendant "could substantially diminish the benefit he would ordinarily receive from an appeal." *Garcia*, 340 F.3d at 1019 (citing *United States v. McManus*, 651 F. Supp. 382, 384 (D. Md. 1987) ("There seems to be little point to an appeal if the defendant will serve his time before a decision is rendered.")).

Here, Ms. Hankins' relatively short sentence —effectively 366 days —means that she is in the unique position where she could serve out the entirety of her sentence before her appeal is

decided.  Recent statistics from the Ninth Circuit indicates that at the end of 2022 there were over 7,000 pending appeals and that the current median length of time from filing of the notice of appeal to a final disposition of the Appellate Court was over 13.4 months, having increased over a months' time from prior years.  *See* U.S. Court of Appeals – Federal Circuit Management Statistics (March 31, 2023), *available at* https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables (last accessed May 6, 2023).  Maintaining the current self-surrender date and incarcerating Ms. Hankins would substantially diminish the benefit she would receive from her appeal in the event her appeal is successful as she would be almost guaranteed to have served the entirety of her sentence.  Thus, it would be contrary to the interests of justice for Ms. Hankins to serve her entire sentence and be released, only then to learn that an alternative sentence of probation or dismissal was granted.

## II.    LEGAL STANDARD

Under the Bail Reform Act, an individual found guilty of an offense and sentenced to a term of imprisonment merits release pending appeal if she establishes that she meets the following elements: (1) that the defendant "is not likely to flee or pose a danger to the safety of any other person or the community if released"; (2) that "the appeal is not for the purpose of delay"; (3) that "the appeal raises a substantial question of law or fact"; and (4) that if the question is answered in the defendant's favor on appeal, that the decision is likely to result in reversal, a new trial, or a sentence that does not include a term of imprisonment.  18 U.S.C. § 3143(b); *see also, Handy*, 761 F.2d at 1283.

The burden is on a defendant to demonstrate eligibility for bail pending appeal.  *Id*.  With respect to the first factor, the defendant must show the Court that she is not likely to flee or pose a danger to the community by "clear and convincing evidence."  18 U.S.C. § 3143(b)(1)(A).

MOTION FOR RELEASE PENDING APPEAL                                              4
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

However, as to the remaining factors, including the substantial question factor and likely to result in a favorable outcome factor, a defendant must only show they have met these factors by a preponderance of the evidence. *Cf.* 18 U.S.C. § 3143(b)(1)(B) and § 3143(b)(1)(A).

In the Ninth Circuit, a "substantial question" for purposes of Section 3143(b) has been interpreted to mean a "fairly debatable question that calls into question the validity of the judgment." *Handy*, 761 F.2d at 1282-83. In *Handy*, the Ninth Circuit specifically rejected the Government's contention that the "substantial question" standard limits bail pending appeal only to defendants who can demonstrate that they will *probably* prevail on appeal. Instead, the Ninth Circuit wrote: "[W]e reject the government's proposed construction of the statute … we find that the word 'substantial' defines the level of merit required in the question raised on appeal, while the phrase 'likely to result in reversal' defines the type of question that must be presented." *Id*. at 1281. The Ninth Circuit recognized that a question "may be 'substantial' even though the judge or justice hearing the application for bail would affirm the merits of the appeal." *Id*. Moreover, a district court is not required to assess the merits of the defendant's claim or his likelihood of success on appeal. *Id.* at 1280. According to the Ninth Circuit, "Congress did not intend to limit bail pending appeal to cases in which the defendant can demonstrate at the outset of appellate proceedings that the appeal will probably result in reversal or an order for a new trial." *Id*.

There are no blanket categories for what questions do or do not constitute "substantial" ones, and whether a question is substantial is determined on a case-by-case basis. *See Handy*, 761 F.2d at 1282, n. 2 (9th Cir. 1985). Importantly, an issue may be "substantial" even if the district court previously resolved (and denied) it on the merits. In *United States v. Abad*, the district court determined that the defendant presented a "substantial question," even though the defendant had already raised (and the court had already denied) the same issue on multiple

occasions, including in connection with his motion to dismiss, motions of judgment of acquittal

and motion for a new trial.  *See* No. 12-cr-54-4-JSW, 2014 U.S. Dist. LEXIS 198311, *2 (N.D.

Cal., Aug. 6, 2014). As the district court explained, "[a]lthough the Court has considered and

rejected those arguments when it resolved Abad's motions, the Court is not required to 'certify

that it believes its ruling[s] to be erroneous' to grant Abad's motion."  *See id.* (quoting *Handy*,

761, F.2d at 1281).  Similarly, in *United States v. Winsor*, where the court granted release

pending appeal, the defendant sought appellate review of the district court's finding of good faith

in upholding the search warrant of his residence.  890 F. Supp. 2d 1257, 1259 (D. Or. 2012).  In

determining that the defendant raised a "substantial question," the court stated, "While I am

confident in my decision, it is possible the Ninth Circuit may disagree and I find his appeal raises

a substantial question of law or fact."  *See id.*

Following *Handy*, the Ninth Circuit further addressed the showing a defendant must

make under Section 3143(b) in *Garcia*.  In *Garcia*, the Ninth Circuit emphasized that

the defendant "need not, under *Handy*, present an appeal that will likely be successful, only

a *non-frivolous issue* that, *if decided in the defendant's favor*, would likely result in reversal

or could satisfy one of the other conditions." 340 F.3d at 1021 n.5.  This is a low standard, and a

court "need not find that defendant will probably prevail on appeal to find that a substantial

question of law or fact exists[.]" *See United States v. Swigert,* No. 1:13-cr-00065-BLW, 2014

U.S. Dist. LEXIS 71239, *2 (D. Id., May 22, 2014); *see also Handy*, 761 F.2d at 1280-81

(explaining that "a showing that the chance of reversal is substantial is, of course, very different

from a showing that the reversal is more likely than not.").   Rather, a district court need only

determine that the remedy for defendant's claims on appeal could include a reversal, a new trial,

or a sentence that does not include a term of incarceration.  *See United States v. Fisher*, 2015

U.S. Dist. LEXIS 190220, at *3-4 (C.D. Cal. Aug. 17, 2015) (granting bail pending appeal for a defendant and determining that the fourth element was satisfied because "reversal and remand for a new trial are possible" if the Ninth Circuit held that defendants' claim that a *Bruton v. United States* violation occurred).

     In evaluating motions for bail pending appeal under this relatively low standard, courts in this District and throughout the Ninth Circuit regularly grant bail pending appeal to defendants in similar circumstances as Ms. Hankins.  *See e.g., United States v. Pollock*, 2016 U.S. Dist. LEXIS 186187, at *4 (D. Or. Sept. 16, 2016) (granting bail pending appeal where a defendant entered a guilty plea to making false statements to a bank, and was sentenced to 18 months, on the basis that defendant's appeal on the amount of loss was "fairly debatable" and that if the Ninth Circuit agreed with defendant, defendant's sentence would like be reversed); *United States v. Fisher*, 2015 U.S. Dist. LEXIS 190220, at *3-4 (C.D. Cal. Aug. 17, 2015) (granting bail pending appeal for a defendant in a mail fraud case sentenced to 41 months where defendant raised an argument that her Confrontation Clause rights were violated when the court admitted evidence of the confession of a non-testifying co-defendant); *Abad*, 2014 U.S. Dist. LEXIS 198311, at *3 (granting bail pending appeal even though defendant raised the same issues he raised in connection with his motions for judgment of acquittal and new trial which had been considered and rejected by the court); *United States v. Aceves*, 2018 U.S. App. LEXIS 5097, at *1 (9th Cir. Feb. 27, 2018) (reversing district court's denial of bail pending appeal in white collar case); *United States v. Yates*, No. 18-30183, at *2 (9th Cir. Sept. 28, 2018) (reversing district court's denial of bail pending appeal to two defendants sentenced to 18 months and 24 months incarceration on the basis that their appeal raised substantial questions that, if favorable, were likely to result in a reversal).

Thus, in sum, to merit release pending appeal, an individual need only show that she is not a flight risk and does not pose a danger to the public safety; that she is not appealing for purposes of delay; and that she presents a non-frivolous issue, the appellate remedy for which could include reversal, a new trial, or a sentence of probation.

### III.   ANALYSIS

#### A.  Ms. Hankins is not a flight risk

As has already been repeatedly recognized by the Court and the Government in this action by prior pretrial release rulings, Ms. Hankins is neither a flight risk nor a danger to the community if released pending appeal.  At sentencing, the Court implicitly recognized that Ms. Hankins was not a flight risk in continuing her on her pretrial conditions and allowing her 90-days to self-surrender.  Further, Ms. Hankins has been aware of the Government's criminal investigation since March of 2021, when she received a target letter stating that the U.S. Attorney's Office had probable cause to charge her with Wire Fraud.  The Government's charging Information in this case was not filed until September 12, 2022, over a year and a half later.  ECF No. 1.  During that time, Ms. Hankins retained present counsel to engage with the Government, waived indictment (ECF No. 6), pleaded guilty (ECF No. 11), and was released on limited conditions (ECF No. 12). Since that time, Ms. Hankins has attended all hearings and complied with all of her release conditions.  Based on the above, the record is replete with clear and convincing evidence that Ms. Hankins is not a flight risk.

Further, the length of Ms. Hankins' sentence, a year and a day, is not the kind of sentence that would provide incentive for a defendant to flee, especially to someone with Ms. Hankins' age, well-established ties to the community, family involvement, and mental health treatment needs which were established at sentencing.  *See e.g., Fisher*, 2015 U.S. Dist. LEXIS 190220, at

*2 (holding that a 41-month sentence of incarceration, "although not insubstantial, does not provide the kind of incentive that would lead to Defendant Fisher's flight."); *see also, Pollock*, 2016 U.S. Dist. LEXIS 186187, *2 (holding defendant not a flight risk and noting that an 18-month sentence does not create an incentive to flee, particularly given the consequences of doing so). Indeed, there is no basis to believe that Ms. Hankins would abandon her husband and children – and subject herself to another prosecution, conviction, and significantly more prison time – to avoid service just over a year.

Finally, Ms. Hankins is not a danger to the community. In the over two years that Ms. Hankins has been aware of the Government's investigation and this matter she has not engaged in any other offenses. She has been on pretrial release and was granted voluntary surrender. The nature of her offenses and the underlying facts are well known by this Court and are limited to a unique set of circumstances involving her corporate partner and not random victims or members of her community. And, as discussed at length at her sentencing, the motivations behind her conduct were to be left alone to run the festivals as she had in the past, not to hurt or harm members of the very community in which she lived and worked. Moreover, Ms. Hankins has a very limited criminal history. She has one conviction from more than 20 years ago. And, as explained in her sentencing materials, that offense conduct occurred against the backdrop of domestic abuse and was a deviation from an otherwise upstanding and law-abiding life. Accordingly, there is more than clear and convincing evidence to establish that Ms. Hankins is not a flight risk or a danger to the community.

### B. Ms. Hankins' appeal is not for purposes of delay

Ms. Hankins' arguments on appeal are meritorious and not made for the purpose of delay. As explained below, there are two separate legal and factual questions that warrant Ninth Circuit

review.  In light of the substantial questions discussed below, this second factor is met.  Further, this factor is rarely unsatisfied and only in extreme circumstances not present here.  For example, in *United States v. Karmann,* the district court denied defendant's motion for bail pending appeal and concluded, among other things, that the appeal was for the purpose of delay. *See* 471 F. Supp. 1021, 1022 (C.D. Cal., June 8, 1979).  After being found guilty on multiple tax fraud-related counts and sentenced to a term of imprisonment, the defendant made it clear to the court that he intended to continue violating the tax laws and related regulations if he was released.  *See id.* ("[T]he defendant by reason of his conduct has made a mockery of the income tax laws and the regulations issued thereunder and has indicated he will continue to do so in defiance of the law[.]").

    In the instant case, Ms. Hankins' conduct is the opposite.  Even before she was under investigation she made substantial steps to return the money at issue in current matter, and personally assumed over five million dollars of debt that otherwise was a joint and several liability between herself and the corporation for which she worked. Moreover, as further described below, she has set forth non-frivolous claims that, if successful, could result in a non-custodial sentence. In short, unlike the defendant in *Karmann*, there is no evidence that Ms. Hankins seeks appellate review solely to abuse the court system or for any other improper purpose.

### C. Ms. Hankins' appeal will raise substantial questions of law and fact of the type that, if decided in her favor, would likely result in a sentence that does not include a term of incarceration

    Ms. Hankins will present at least two substantial questions of law and fact in her appeal. First, that the Court abused its discretion in failing to hold an evidentiary hearing as to whether the Government's professional misconduct in issuing its false and inflammatory press release

was flagrant and whether Ms. Hankins' was prejudiced by it before denying Ms. Hankins' Motion to Dismiss.  Second, that the Court erred in failing to consider the effect of a one-year term of incarceration on Ms. Hankins' ability to receive and maintain necessary mental health treatment "in the most effective manner," as required by 18 U.S.C. § 3553(a)(2)(D).  Either of these two issues, if resolved in Ms. Hankins' favor on appeal, could result in either a reversal or a non-prison sentence.

There is an additional issue, which may not be ripe until resolution of the restitution proceeding, but also relates to the sentencing process. During the sentencing hearing, the Court determined that had Ms. Hankins disclosed her conduct to her business partners prior to their $1,500,000 payment, then her business partners could have brought a derivative action against her and divested her of her shares in the festivals. *See* Decl. of Counsel, Ex. 1 at 61 (sentencing transcript) [hereinafter "Sen. Tran."]. It is Ms. Hankins' position that this is incorrect as a matter of corporate law, and that it negated the mitigation evidence she presented regarding her belief in the inherent value in the festivals, including her desire to buy out her partners' ownership interest. Ms. Hankins never believed that she was conveying a worthless asset when she sold her shares, and this intent was relevant in assessing her overall culpability under the sentencing factors set forth in 18 U.S.C. § 3553(a). As this issue involves a valuation of the festivals, it will be further developed in the restitution proceedings.

While Ms. Hankins presents at least two non-frivolous questions for appeal, the Court need only find that one of these issues satisfies the requirements of Section 3143(b)(1) in order to release Ms. Hankins pending appeal. *See e.g., Fisher*, 2015 U.S. Dist. LEXIS 190220, at *5 n.3 ("Having found one substantial question of law, the Court does not consider the remaining points raised by Defendant Fisher.").

MOTION FOR RELEASE PENDING APPEAL                                                    11
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

**1. It is a fairly debatable question as to whether the Court abused its discretion in failing to hold an evidentiary hearing in response to Ms. Hankins' motion to dismiss for prosecutorial misconduct**

The Court is already well informed about the underlying issue and its decision to issue a ruling without holding an evidentiary hearing and only granting Ms. Hankins the opportunity to present evidence and information about the impact of the Government's press release at her sentencing hearing. As such, Ms. Hankins incorporates the following motions and memorandum that previously addresses the issue raised here: Ms. Hankins' motion to dismiss for prosecutorial misconduct and related pleadings (ECF Nos. 14, 15, 18 and 19) and Ms. Hankins' motion to reconsider the denial of an evidentiary hearing and related pleadings (ECF Nos. 21 and 22).

Ms. Hankins recognizes that the Court ruled against her both on the initial motion to dismiss (ECF No. 14) and on her subsequent motion for reconsideration to hold an evidentiary hearing (ECF No. 21). *See* ECF Nos. 20, 24. However, as described above, the Court need not determine that its rulings were incorrect in order to grant Ms. Hankins' motion. *See Handy*, 761 F.2d at 1281. Rather, the Court need only find that the question raised by Ms. Hankins is fairly debatable and that the issue is non-frivolous. Courts routinely find that "substantial questions" exist, even where they have previously rejected defendant's claim on the merits. *See e.g., United States v. Abad,* No. 12-cr-54-4-JSW, 2014 U.S. Dist. LEXIS 198311, at *2 (N.D. Cal., Aug. 6, 2014) (finding a "substantial question" even though the defendant had already raised, and the court denied, the same issue on multiple occasions, including in a motion to dismiss, motion for judgment of acquittal and motion for new trial); *United States v. Winsor,* 890 F. Supp. 2d 1257, 1259 (D. Or. 2012) (explaining that while the court is "confident" in [its] decision denying defendant's motion to suppress, a "substantial question" existed because its decision rested on numerous factors that the appellate court might interpret differently).

By way of background, following Ms. Hankins' guilty plea, the Government issued a sensationalized press release that gratuitously maligned Ms. Hankins' character and claimed that she engaged in criminal conduct for which there was no factual basis in her plea. The press release created the false impression that Ms. Hankins stole money from the festivals and unfairly characterized her as a "serial fraudster" on the basis of a single conviction that was more than 20-years old. As raised in the underlying motion, and the accompanying expert report, the Government's misconduct in issuing the salacious press release poisoned the minds and perceptions of previously favorable community witnesses who could have testified at sentencing on Ms. Hankins' behalf.

Ms. Hankins was entitled to an evidentiary hearing on the effect and ultimate impact of the Government's press release on previously favorable witnesses. Ms. Hankins was entitled to a full and fair opportunity to present evidence at sentencing that would have mitigated her conduct, affirmed her standing in the community, and justified a probationary sentence. *See e.g.*, *United States v. Ranun*, 353 F. Supp. 2d 984 (E.D. Wis. 2005) (noting that a defendant's motive for committing an offense is an important factor for consideration by the Court).

As further described in the underlying pleadings and supporting declarations, the defense had a baseline understanding of witness attitudes toward Ms. Hankins prior to issuance of the press release. Following its publication, the defense investigation revealed that multiple witnesses, who had previously been willing to speak with the defense, were no longer willing to do so. This included, for example, a high-profile and long-time sponsor of the festivals who could have corroborated Ms. Hankins' desire to purchase Endeavor's share of the festivals and who could have provided evidence regarding the positive impact the festivals had on the community and the fact that Ms. Hankins used her own money to repay company debts.

Indeed, his testimony would have been helpful during the sentencing hearing itself in addressing some of the issues raised by the Court. For example, there were questions regarding the underlying value of the festivals themselves (separate from Ms. Hankins' employment) and whether Endeavor would have purchased Ms. Hankins' minority stake had it known the accurate financial condition. *See* Sen. Trans. at 14-7, 23-5 and 34. In explaining that the festivals still held value, counsel for Ms. Hankins noted that testimony from this long-time sponsor would have been able to corroborate the value that Ms. Hankins saw in the festivals and the strategic value of the festivals to her business partners.

In her reply brief to the motion, Ms. Hankins had requested an evidentiary hearing on the basis that such a hearing was necessary in order to establish the government's motive and intent in publishing the press release, as well as the harm it caused with respect to Ms. Hankins' ability to present mitigation evidence at sentencing. Ms. Hankins also intended to present witness testimony to demonstrate the impact of the government's statements and the loss of likely favorable evidence along with supporting expert testimony. However, the Court denied her initial request for an evidentiary hearing and instead allowed Ms. Hankins the unattractive option of presenting such evidence at sentencing. *See* ECF No. 20 (holding that "[n]othing prevents Defendant from presenting any evidence she feels is relevant to sentencing. Although Defendant requests a hearing on this motion, all of the evidence she seeks to present at such a hearing may be presented at sentencing.").

The Court's rejection of an evidentiary hearing separate from her sentencing precluded Ms. Hankins from the opportunity to have a full sentencing hearing and constituted an abuse of discretion. Where, as here, a defendant has made a *prima facie* showing of prosecutorial misconduct, a defendant is entitled to an evidentiary hearing, and thus Ms. Hankins' appeal on

this issue is at least fairly debatable, as the underlying issue related to a valid claim of

prosecutorial misconduct. *See United States v. Oaks*, 508 F.2d 1403, 1404 (9th Cir. 1974)

(holding that a district court is required to hold an evidentiary hearing on a defendant's claim of

prosecutorial misconduct "when enough facts are alleged to take the question past the frivolous

stage"). The Court's Order issued on December 28, 2022, stated that Ms. Hankins was not a

"serial fraudster." ECF No. 24 ("Despite the government's assertion in a press release, the court

does not believe that a twenty-year-old fraud conviction, unrelated to this offense, makes Ms.

Hankins a 'serial fraudster.'"). And even the Government acknowledged that its choice of

language was "unfortunate." Such findings provide support for Ms. Hankins' position that the

claim of government misconduct was not frivolous. Moreover, as noted in the related pleadings,

the evidentiary hearing would have provided the Court with direct evidence and testimony that

would have allowed the Court to resolve the still-open question about the degree of prejudice

Ms. Hankins suffered as a result of the Government's prosecutorial misconduct in this matter.

Additionally, it is fairly debatable whether the Court's alternative to the evidentiary

hearing — allowing Ms. Hankins to present such evidence at sentencing — was a reasonable and

appropriate alternative.  As noted in the motion, the evidence necessary to establish Ms.

Hankins' claim of government misconduct and the impact on Ms. Hankins' due process right to

present mitigating evidence on her behalf could not be reasonably presented at the sentencing

hearing itself.  Much of this was established by way of declaration in support of the defense's

request for a hearing, However, the absence of evidence is not the same as evidence.   As a

practical matter, it was not feasible for Ms. Hankins to introduce, at sentencing, that potentially

favorable sentencing witnesses were improperly influenced by the Government's misconduct.

To do this, Ms. Hankins would have had to call witnesses who harbored unfavorable attitudes

towards her, elicit such unhelpful testimony at her sentencing, and then impeach that testimony

with arguments or extrinsic evidence that their testimony is not credible in light of the undue

government influence.  This alternative provided by the Court put Ms. Hankins in the untenable

position of either having to choose to introduce testimony to support her Motion to Dismiss,

which would likely be unhelpful to her sentencing presentation, or she could ignore the harm

created by the Government, which would deprive her of the ability to fill in gaps in the

evidentiary record.  As will be raised on appeal, because of the untenable position she was placed

in, Ms. Hankins was unable to create the evidentiary record necessary to establish prejudice in

support of her motion to dismiss, or to fully present exculpatory evidence for sentencing

> **2. It is a fairly debatable question as to whether the Court erred in sentencing Ms. Hankins to a term of incarceration without taking into consideration the need to provide her with ongoing mental health care in the most effective manner in violation of 18 U.S.C. § 3553(a)(2)(D)**

In imposing any sentence against a defendant, the court "shall impose a sentence

sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)"

of 18 U.S.C. § 3553.  Paragraph 2 specifically provides that the court "shall consider … the need

for the sentence imposed … (D) to provide the defendant with needed … medical care, or other

correctional treatment in the most effective manner[.]"  18 U.S.C. § 3553(a)(2)(D).

At Ms. Hankins' sentencing, the Court failed to address whether Ms. Hankins would

receive more effective and necessary mental health treatment with an out-of-custody sentence in

contrast to the sentence of incarceration imposed.  This was a significant factor of Ms. Hankins'

sentencing presentation and materials.  Ms. Hankins presented substantial evidence of the need

for continuity of mental health care, including maintaining necessary prescriptions that are not

available at Bureau of Prison facilities.

Ms. Hankins is appealing the Court's failure to properly exercise its sentencing discretion in evaluating Ms. Hankins' need for continued mental health treatment and whether a sentence of incarceration would provide her "treatment in the most effective manner". 18 U.S.C. § 3553(a)(2)(D). This question before the Ninth Circuit is a "substantial question" that has a likelihood, if decided in Ms. Hankins' favor, of leading to a reversal or sentence that does not include incarceration. Accordingly, Ms. Hankins is entitled to bail pending appeal.

Ms. Hankins submitted a number of confidential mental health reports along with her confidential sentencing letter of March 9, 2023, for the Court's review and consideration at her sentencing. As noted in those confidential materials, Ms. Hankins suffers from serious mental health disorders for which has been receiving ongoing treatment since 1998. Ms. Hankins presently undergoes psychotherapeutic and medication management care treatment including the prescription of a number of pharmacological drugs in an effort to manage and treat her symptoms. Ms. Hankins' treatment includes nine separate medications, some of which she has to take three times per day. Ms. Hankins presented at sentencing the need for continuing her mental health treatment out of custody and presented evidence that the vast majority of the medications she was taking are not available at Bureau of Prisons facilities. All of this information supported Ms. Hankins' argument at sentencing that she could not receive the treatment in the most effective manner to manage and treat her mental health issues and symptoms with a sentence of incarceration.

At sentencing, the Court failed to specifically address Ms. Hankins' need for continued mental health treatment and the type and kind of treatment, and particularly treatment "in the most effective manner," as required under Section 3553(a)(2)(D). The Court did not address whether BOP regulations can provide the mental health care treatment Ms. Hankins is presently

receiving and currently needs.  BOP regulations provide that it will provide continuity of care for those with pre-existing conditions when applicable, but this does not guarantee that Ms. Hankins will receive any treatment during her presently sentenced term of incarceration.  Under BOP policy, it is the BOP who makes the final determination as to who will receive psychological care and the nature of the care they will receive.  *See* U.S. Dep't of Justice, Fed. Bureau of Prisons, Program statement p5310.17, Psychology Services Manual, at 4–5 (Aug. 25, 2016), https://www.bop.gov/policy/progstat/5310_017.pdf.  The responsibilities of BOP psychologists are ranked by priority, with first priority going to the most emergent mental health issues, including suicide prevention, as well as initial screenings and treatment for BOP employees.  Treatment for all other inmates is contingent upon a number of factors, including department staffing levels and priorities.  *Id*. at 19.  Only those inmates with the most serious of mental health issues receive any form of regular treatment.  According to The Marshall Project, only three percent of inmates are classified as having a mental illness serious enough to require regular treatment.  Christine Thompson and Taylor Elizabeth Eldridge, Treatment Denied: The Mental Health Crisis in Federal Prisons, The Marshall Project, Nov. 21, 2018, https://www.themarshallproject.org/2018/11/21/treatment-denied-the-mental-health-crisis-in-federal-prisons.  Moreover, an inmate's sentence must be sufficiently long enough to qualify for any type of treatment beyond emergency care.  Inmates who are sentenced to lower terms of incarceration, like Ms. Hankins, are only eligible for treatment of conditions that the BOP considers "of an immediate, acute, or emergent nature, which without care would cause rapid deterioration of the inmate's health[.]"  *See* U.S. Dep't of Justice, Fed. Bureau of Prisons, Program statement p5310.17, Psychology Services Manual, at 5-6 (Aug. 25, 2016), https://www.bop.gov/policy/progstat/5310_017.pdf.

MOTION FOR RELEASE PENDING APPEAL                                                          18
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

Ms. Hankins was entitled to specific consideration of her treatment at sentencing. 18 U.S.C. § 3582(a) explicitly provides that "imprisonment is not an appropriate means of promoting correction and rehabilitation." *See also Tapia v. United States*, 564 U.S. 319 (reversing lower court's sentence, which the court lengthened to allow the defendant to receive drug treatment); *United States v. Manzella*, 475 F.3d 152, 158 (3d Cir. 2007) ("[C]ourts must consider a defendant's need for rehabilitation when devising an appropriate sentence (pursuant to § 3553(a)(2)(D)), but may not carry out that goal by imprisonment.") (emphasis in original); *United States v. Autrey,* 555 F.3d 864, 867 (9th Cir. 2009) (defendant sentenced to probation based, in part, on finding he would receive most effective treatment out of custody). The term of incarceration she received will disrupt not only her therapeutic mental health treatment, but also her drug therapy.  It is unlikely that Ms. Hankins would be able to continue her current drug therapy in custody.  The BOP's National Formulary, which identifies all prescription medications available to federal inmates, does not include eight of Ms. Hankins' nine medications. But as further described in the Ms. Hankins' confidential sentencing materials, the medications are necessary to the management of Ms. Hankins' serious mental health conditions.

The Court's limited recognition of her mental health treatment needs was relegated to comments that BOP would not find her mental health issues "any more remarkable than the other 80 percent of their population that they're serving."  Sen. Trans. at 67.  The Court remarked that it understood in-custody treatment was different and that it would recommend a BOP facility that may be able to maintain the current prescription regiment that Ms. Hankins is presently on. *Id.* However, it also acknowledged that such a recommendation might carry no weight.  *Id.*  But the Court did not address, as required under Section 3553(a)(2)(D), whether a term of incarceration or a term of probation would provide Ms. Hankins with mental health care in the most effective

manner. If the Ninth Circuit agrees favorably with Ms. Hankins' substantial question on appeal
as to whether the Court abused its discretion in not specifically considering the most effective
manner of treatment in fashioning its sentence, there is a likelihood that Ms. Hankins could be
resentenced and receive a sentence that does not include incarceration.

### IV.   ALTERNATIVELY, MS. HANKINS REQUESTS AN EXTENSION OF HER SELF-SURRENDER DATE FROM JUNE 30 TO TWO WEEKS FOLLOWING THE CONCLUSION OF THE RESTITUTION HEARING

In the event her Motion for Bail Pending Appeal is denied, Ms. Hankins requests that this
Court reset her surrender date for two weeks following the conclusion of this Court's restitution
hearing. The additional two-week period is necessary to provide Ms. Hankins an adequate
opportunity to make travel arrangements to whichever federal facility she will be designated.

On March 30, 2023, this Court ordered Ms. Hankins to self-surrender to the Bureau of
Prisons on June 30, 2023. At that time, the restitution hearing was set for May 30, 2023. On May
23, the Court reset the restitution hearing for August 28, following defense counsel's
continuance request and to accommodate a court scheduling conflict.  The Government has
submitted a restitution claim for $1,500,000.

A stay of Ms. Hankins' self-surrender date is warranted in the interest of justice so that Ms.
Hankins is able to assist counsel and the Court as to the restitution proceeding while out of
custody. District courts have the inherent authority to modify their surrender orders and, in
extending self-surrender dates, have recognized that a defendant's assistance is necessary in
assessing restitution claims and the ability to provide that assistance is significantly impaired
when a defendant is incarcerated. *See e.g., United States v. Gallagher,* No. 3:13- CR-564-JO,
Dkt. 36 (D. Or. June 15, 2015) (granting motion to extend self-surrender date); *United States v.
Greenwood,* No. 3:13-CR-00040-KI, Dkt. 76 (D. Or. April 14, 2014) (same); *United States v
Winsor,* No. 08 000990KI, Dkt. 47 (Nov. 11, 2009) (same).

Ms. Hankins' out-of-custody assistance is necessary in preparing for the upcoming restitution
proceeding. The Government's restitution claim raises significant factual issues that require her

ongoing consultation. The Government's request, for example, fails to account for the money that Ms. Hankins previously returned. It also assumes that there was no value to Ms. Hankins' shares in Willamette Country Music Concerts ("WCMC"). Ms. Hankins assistance is needed in reviewing the necessary banking and financial records to support her claim for offsets, as well as in developing evidence related to WCMC's valuation. Moreover, in setting the manner and schedule of any restitution payments ordered, the Court must assess Ms. Hankins financial resources, assets, projected income and financial obligations – in short, the type of information that requires consultation with Ms. Hankins. Furthermore, time and taxpayer expense will be saved if Ms. Hankins does not have to be transported from out of state back to Eugene to participate in the evidentiary hearing on August 28.

Further, permitting Ms. Hankins to remain on release to assist with restitution does not prejudice the Government. If Ms. Hankins is granted release pending her appeal, then she would necessarily be permitted to remain on release in any event. If her Motion is denied, the relatively short extension of her surrender date would not undermine the Governmental interest in deterrence. For the reasons described above, it is undisputed that Ms. Hankins is not a flight risk nor a danger to the community. Moreover, the fact that there is a need to extend the surrender date to afford Ms. Hankins an opportunity to participate in restitution is due to reasons outside of Ms. Hankins' control and she should not be penalized for it. In sum, the interests of justice warrant an extension of Ms. Hankins' surrender date.

### V.    CONCLUSION

In sum, although Ms. Hankins has presented two separate and independent issues that are, at a minimum, "fairly debatable" and, if successful, likely to result in reversal or a sentence that does not include incarceration, the Court need only find one substantial question in order to grant Ms. Hankins' release pending appeal.  For the reasons stated above, Ms. Hankins respectfully requests that the Court allow her to remain on release with conditions pending appeal.

MOTION FOR RELEASE PENDING APPEAL                                              21
*UNITED STATES V. ANNE HANKINS*, Case No. 6:22-cr-00317-MC

DATED: May 27, 2023

Respectfully submitted,

_s/Janet Hoffman_____

JANET HOFFMAN, OSB No. 781145
KATHERINE MARCHANT, OSB No. 161147
Janet Hoffman & Associates LLC
1000 SW Broadway, Ste. 1500
Portland, OR 97205
Phone: (503) 222-1125
Email:  janet@jhoffman.com
Attorneys for Defendant Anne Hankins